| | |
|---|---|
| 01. **Mr. Vamsidhar R Vurimindi** | ) |
| 313 Arch Street, Unit 607, Philadelphia, PA 19106 | ) |
| **Plaintiff,** | ) |
| **Vs.** | ) |
| 01. **Mr. Dan Achek** | ) |
| 1009 Jones Road, Gulph Mills , PA 19428 | ) |
| 02. **Mrs. Maya Maha Elkansa** | ) |
| 1009 Jones Road, Gulph Mills , PA 19428 | ) |
| 03. **Achek Design & Construction Co, Inc** | ) |
| 1009 Jones Road, Gulph Mills , PA 19428 | ) |
| 04. **Mr. Alex Lopez** | ) |
| 239 – 265 West Bristol Street, | ) |
| Philadelphia, PA 19140 | ) |
| 05. **ALX General Construction LLC** | ) |
| 5071 Whitaker Avenue , Philadelphia PA 19140 | ) |
| 06. **Mr. Henry I. Langsam** | ) |
| 1616 Walnut Street, Suite 1700, | ) |
| Philadelphia, PA 19103 | ) |
| 07. **Mr. Bart Sacks** | ) |
| 199 West Johnson Highway , East Norriton, PA 19401 | ) |

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**Civil Case No. 09-CV5976**

**Complaint for Negligence
Complaint for Fraud, Intentional
Misrepresentation and Non-Disclosure
Complaint for Gross Negligence
Complaint for Emotional Distress
Complaint for Professional Negligence
Complaint for Fraud
Complaint for Conspiracy to Interfere with Civil Rights
Complaint for Conspiracy against Rights of Citizens
Complaint Tortious Interference**

**Defendants .......continued in next page**

---

<table>
<tr><td>

**N O T I C E**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the **Plaintiff.** You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer, go to or telephone the office set forth below. This office can provide you with information about hiring a Lawyer. If you cannot afford to hire a lawyer, this office may be able to provide you with information about agencies that may offer legal services to eligible persons at a reduced fee or no fee.

**Philadelphia Bar Association**
Lawyer Referral and Information Services
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

</td><td>

**A V I S O**

USTED HA SIDO DEMANDADO/A EN CORTE. Si usted desea defenderse de las demandas que se presentan más adelante en las siguientes páginas, debe tomar acción dentro de los próximos veinte (20) días después de la notificación de esta demanda y aviso radicando personalmente o por medio de un abogado una comparecencia escrita y radicando en la corte por escrito sus defensas de, y objecciones a, las demandas presentadas aquí en contra suya. Se le advierte de que Si usted falla de tomar acción como se describe anteriormente, el caso puede proceder sin usted y un fallo por cualquier suma de dinero reclamada en la demanda o cualquier otra reclamación o remedio solicitado por el demandante puede ser dictado en contra suya por la corte sin más aviso adicional. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

Usted debe llevar este documento a su abogado inmediatamente. Si usted no tiene un abogado, llame o vaya a la siguiente oficina. Esta oficina puede proveerle informacion a cerca de como conseguir un abogado. Si usted no puede pagar por los servicios de un abogado, es posible que esta oficina le pueda proveer informacion sobre agencias que ofrezcan servicios legales sin cargo o bajo costo a personas que cualifican.

**Associacion de Licenciados de Filadelfia**
Servicio de Referencis e
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

</td></tr>
</table>

08. **S&L Investments** )
    307 Florence Avenue, Apt. 107 Jenkintown PA 19046 )
09. **Mrs. Juliet Whelan** )
    813 S 4th Street, Philadelphia, PA 19147 )
10. **Mr. James Gabriel** ,Plans Examiner , )
    Department of Licenses & Inspections, )
    1401 JFK Blvd, Philadelphia , PA 19102 )
11. **Mr. Edward Devlin,** Inspector Trainee, )
    Department License & Inspections, North District , )
    601 W Lehigh , Philadelphia, PA 19133 )
12. **Mrs. Frances Burns** ,Commissioner, )
    Department License & Inspections, )
    1401 JFK Blvd, 11th Floor, Philadelphia , PA 19102 )
13. **City of Philadelphia,** C/o City Solicitor's Office, )
    One Parkway, 1515 Arch St., 15th Fl., )
    Philadelphia , PA 19102 )
    )
    )
    )
    )
    )
**Defendants** )
_____ )

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### Civil Case No. 09-CV5976

---

**N O T I C E**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the **Plaintiff**. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer, go to or telephone the office set forth below. This office can provide you with information about hiring a Lawyer. If you cannot afford to hire a lawyer, this office may be able to provide you with information about agencies that may offer legal services to eligible persons at a reduced fee or no fee.

**Philadelphia Bar Association**
Lawyer Referral and Information Services
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

**A V I S O**

USTED HA SIDO DEMANDADO/A EN CORTE. Si usted desea defenderse de las demandas que se presentan más adelante en las siguientes páginas, debe tomar acción dentro de los próximos veinte (20) días después de la notificación de esta demanda y aviso radicando personalmente o por medio de un abogado una comparecencia escrita y radicando en la corte por escrito sus defensas de, y objecciones a, las demandas presentadas aquí en contra suya. Se le advierte de que Si usted falla de tomar acción como se describe anteriormente, el caso puede proceder sin usted y un fallo por cualquier suma de dinero reclamada en la demanda o cualquier otra reclamación o remedio solicitado por el demandante puede ser dictado en contra suya por la corte sin más aviso adicional. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

Usted debe llevar este documento a su abogado inmediatamente. Si usted no tiene un abogado, llame o vaya a la siguiente oficina. Esta oficina puede proveerle informacion a cerca de como conseguir un abogado. Si usted no puede pagar por los servicios de un abogado, es posible que esta oficina le pueda proveer informacion sobre agencias que ofrezcan servicios legales sin cargo o bajo costo a personas que cualifican.

**Associacion de Licenciados de Filadelfia**
Servicio de Referencis e
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

## (I)   **AMENDED COMPLAINT**

01.   **Plaintiff**, Vamsidhar R Vurimindi sues Defendants **Dan Achek** , Maya Maha Elkansa, Achek Design & Construction Co, Inc, **Alex Lopez** , ALX General Construction LLC, Henry I. Langsam, Bart Sacks, S & L Investments, Juliet Whelan, James Gabriel, Edward Devlin, Frances Burns and City of Philadelphia and in support states as follows:

## (II)  **THE PARTIES**

02.   **Defndant** Mr. **Dan Achek** is the resident of 1009 Jones Road, Gulph Mills, PA 19428. Mr. Achek is the President of Achek Design & Construction Co Inc and operated the real estate investment, development and general contracting business in the name of Achek Design & Construction Co Inc, from the address 1009 Jones Road, Gulph Mills, PA 19428.  Hereafter Defendant Mr. **Dan Achek** referred as **Dan Achek .**

03.   **Defendant** Mrs. Maya Maha Elkansa, is the resident of 1009 Jones Road, Gulph Mills, PA 19428. Mrs. **Maya Maha Elkansa** is the owner of the 1778 Frankford Avenue, Philadelphia, PA 19125 and wife of **Dan Achek** . Hereafter Defendant Mrs. **Maya Maha Elkansa** referred as **Maya Maha Elkansa,** and 1778 Frankford Avenue, Philadelphia, PA 19125 property referred as **1778 Frankford Avenue**.

04.   **Defendant** Achek Design & Construction Co, Inc located at 1009 Jones Road, Gulph Mills, PA 19428. Achek Design & Construction Co, Inc engaged in real estate investment, development and general contracting business. **Dan Achek**  and **Maya Maha Elkansa** are the dominant partners in Achek Design & Construction Co, Inc. Hereafter Defendant Achek Design & Construction Co, Inc referred as **ADC.**

05.     **Defendant** Mr. **Alex Lopez** is the resident of 239 – 265 West Bristol Street, Philadelphia, PA 19140. Mr. Lopez operated the general construction business in the name of in the name of ALX General Construction LLC. Mr. **Alex Lopez** is the President, ALX General Construction LLC. Hereafter Defendant Mr. **Alex Lopez** referred as **Alex Lopez.**

06.     **Defendant** ALX General Construction LLC located at 239 – 265 West Bristol Street, Philadelphia, PA 19140. **Alex Lopez** is a dominant partner in ALX General Construction LLC. Hereafter Defendant ALX General Construction LLC referred as **ALX-GC.**

07.     **Defendant** Mr. Henry I. Langsam worked at 1616 Walnut Street, Suite 1700, Philadelphia, PA 19103. Mr. Langsam is an attorney and a partner in law firm Langsam Stevens & Silver LLP. Mr. Langsam is a dominant partner in S & L Investments, Inc, which is engaged in real estate investment business. Hereafter Defendant Mr. Henry I. Langsam referred as **Henry Langsam .**

08.     **Defendant** Mr. Bart Sacks resided at 199 West Johnson Highway, East Norriton, PA 19401. Mr. Bart Sacks is a dominant partner in S & L Investments, Inc, which is engaged in real estate investments business. Hereafter Defendant Mr. Bart Sacks referred as **Bart Sacks.**

09.     **Defendant** S & L Investments, Inc located at 1616 Walnut Street, Suite 1700, Philadelphia, PA 19103. **S&L Investments** engaged in real estate business and the owner of the 1780 Frankford Avenue, Philadelphia PA 19125. **Henry Langsam** and **Bart Sacks** are dominant partners in S & L Investments, Inc. Hereafter Defendant S & L Investments, Inc referred as **S&L Investments** and 1780 Frankford Avenue, Philadelphia PA 19125 referred as **1780 Frankford Avenue.**

10. **Defendant** Mrs. Juliet Whelan is the resident of 813 S 4th Street, Philadelphia, PA 19147. Mrs. Juliet Whelan is an Architect and worked as architectural design consultant and the owner of the Jibe Design. Mrs. Juliet Whelan is the Architect on record for **1778 Frankford Avenue.** Hereafter Defendant Mrs. Juliet Whelan referred as **Juliet Whelan.**

11. **Defendant** Mr. James Gabriel worked as Plans Examiner at City of Philadelphia, Department of Licenses & Inspections, 1401 JFK Blvd, Philadelphia, PA 19102. Mr. Gabriel, as Plans Examiner administer and enforce the City's code requirements including building, plumbing, electrical, mechanical, fire, property maintenance, business, and zoning regulations to enhance the public safety. As Plans Examiner Mr. Gabriel issued a Zoning Use Permit, bearing the number 165814 dated 31st August 2008 to construct Seven (7) residential dwelling units at **1778 Frankford Avenue**. Hereafter Defendant Mr. James Gabriel referred as **James Gabriel.**

12. **Defendant** Mr. Edward Devlin worked as Inspector Trainee at City of Philadelphia, Department License & Inspections, North District , 601 W Lehigh , Philadelphia, PA 19133. Mr. Devlin, as Building Inspector administer and enforce the City's code requirements including building, plumbing, electrical, mechanical, fire, property maintenance, business, and zoning regulations to enhance the public safety. Mr. Devlin is the Building Inspector for **1778 Frankford Avenue**. Hereafter Defendant Mr. Edward Devlin referred as **Edward Devlin.**

13. **Defendant** Mrs. Frances Burns worked as Commissioner for Department License & Inspections at City of Philadelphia, MSB 11th Floor, and 1401 JFK Blvd, Philadelphia, PA 19102. Hereafter Defendant Mrs. Frances Burns referred as **Frances Burns.**

14. **Defendant** City of Philadelphia C/o City Solicitor's Office, One Parkway, 15th Floor, 1515 Arch Street, Philadelphia, PA 19102. Pursuant to Section 1 of Article XV of the Constitution and the Act of the General Assembly, approved April 21, 1949, P.L. 665, of the Commonwealth of Pennsylvania, have and can exercise all powers and authority of local self-government and have complete powers of legislation and administration in relation to its municipal functions. The City of Philadelphia have the power to enact ordinances and to make rules and regulations necessary and proper for carrying into execution its powers; and such ordinances, rules and regulations may be made enforceable by the imposition of fines, forfeitures and penalties. Hereafter Defendant City of Philadelphia referred as **City of Philadelphia.**

15. **Plaintiff** Mr. Vamsidhar R Vurimindi, resident of 313 Arch Street, Unit # 607, Philadelphia, PA 19106. Mr. Vurimindi belongs to protected class defined Civil Rights Act of 1964. Mr. Vurimindi is a male, and practice Hindu religion, born and brought up in India. Mr. Vurimindi purchased a vacant lot on 27th April 2006 for $70,000 located at 1782 Frankford **Avenue** Philadelphia, PA 19125. Mr. Vurimindi obtained a $346,000 construction loan from Wachovia Mortgage FSB in November 2007 and agreed to complete the construction by November 2008, in order to convert the construction loan into a permanent mortgage by Wachovia Mortgage FSB. Mr. Vurimindi started the construction work in December 2007 to build multifamily residential building consists of a basement and three floors at 1782 Frankford **Avenue** Philadelphia, PA 19125. Mr. Vurimindi's General Contractor M/s. Rising Construction LLC claimed that the construction of multifamily residential building is substantial completed by 18th August 2008. Mr. Vurimindi incurred a total expense of $420,000 amount by 18th August 2008, and waiting to receive a Certificate of Occupancy (CO) from City of Philadelphia. Hereafter 1782 Frankford **Avenue** Philadelphia, PA 19125 referred as **1782 Frankford Avenue**. Hereafter **Plaintiff** Vamsidhar R Vurimindi referred as **Plaintiff**.

16. **Plaintiff** is informed and believes **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez, ALX-GC , Henry Langsam , Bart Sacks, S & L Investments, Juliet Whelan, James Gabriel, Edward Devlin**, **Frances Burns** and **City of Philadelphia** thereon alleges that, at all times herein mentioned, each of the defendants sued herein at all times acting within the purpose and scope of such agency and employment.

## (III) <u>FACTUAL BACKGROUND</u>

17. On 15th September 2004, **Maya Maha Elkansa** purchased **1778 Frankford Avenue** for $51,000. **1778 Frankford Avenue** is a non-conforming structure and been discontinued in use for more than a period of three consecutive years by 10th July 2008.

18. **Dan Achek** and **Maya Maha Elkansa** proposed to build seven (7) residential dwellings at **1778 Frankford Avenue** and promoted the condominium development project at **1778 Frankford Avenue** for profit. **Dan Achek** drafted the floor plans for seven (7) residential units at **1778 Frankford Avenue.**

19. On 15th February 2008, **Dan Achek** and **Juliet Whelan** entered into an **"**Architectural Design and Structural Drawings Service Agreement" to prepare the required construction documents to obtain the Zoning Use and Building Permits on expedited basis for **1778 Frankford Avenue.**

20. **Juliet Whelan** agreed to provide the following services to **Dan Achek .** Copy of **"**Architectural Design and Structural Drawings Service Agreement" is attached hereto as **Exhibit – I** and made a part hereof.
    (a) Preparing Schematic Design Drawings
    (b) Design & Development of Permit Drawings
       (i) Site Plan
       (ii) Basement Plan
       (iii) 1st Floor Plan
       (iv) 2nd Floor Plan
       (v) 3rd Floor Plan

        (vi) Roof Plan
        (vii)  Structural Foundation Plan
        (viii)  Structural Framing Plans for Floors 1, 2, 3 and Roof
        (ix) Building Section
        (x)  Exterior Building Elevations
    (c) Structural Drawings in consultation with Structural Engineer
    (d) Expediting the permits from City of Philadelphia

21.    On 21st July 2008, **Juliet Whelan** signed the proposed building elevation and plot plan. The building elevation and plot plans for **1778 Frankford Avenue** to build Seven (7) Residential dwellings at **1778 Frankford Avenue.** Copies of the proposed building elevation and plot plan drawings are attached hereto as **Exhibit – II** and made a part hereof.   As per Site Plan' general building data section, **Juliet Whelan** stated as follows:

- Applicable Codes           : International Building Code 2006;
                                        International Existing Building Code 2006
- Construction Materials     : Masonry
- Construction Classification  : Not legible from the printout
- Use                         : 7 Residential Condominiums
- Occupancy Group        : R2
- Fire Suppression         : Fully Sprinkled to NFPA 23R

22.    On 22nd July 2008, **Juliet Whelan** made an application for Zoning Use Permit for **1778 Frankford Avenue.** Copy of the Zoning Use Permit Application is attached hereto as **Exhibit – III** and made a part hereof.  **Juliet Whelan** stated in the zoning use permit application' "Proposed Use of Building"  section as follows:

- Basement   : Storage; 1 Residential Unit
- 1st Floor      : 2 Residential Units
- 2nd Floor    : 2 Residential Units
- 3rd Floor     : 2 Residential Units

23. Per the proposed building elevation drawings - Elevations A 2.1, **Juliet Whelan** proposed the height of the basement is 2 feet 6 inches above grade and 6 feet 10 inches below grade. The basement foundation and footings for **1778 Frankford Avenue** are further below the 6 feet 10 inches below grade.

24. **Dan Achek , Maya Maha Elkansa, ADC** and **Juliet Whelan** together agreed to construct a seven (7) family dwelling building not exceeding 35 feet in height two family dwellings on each floor above grade and one family dwelling in the basement at **1778 Frankford Avenue**

25. On 15th September 2004**, Maya Maha Elkansa** purchased the **1778 Frankford Avenue** and the building has been sealed since then. Hence, the **1778 Frankford Avenue** discontinued in use more than three consecutive until the Zoning Use Permit # 165814 issue date 12th August 2008.  The pictures in __Annexure VI -__ **Figure 9** to **Figure 12** depict the exterior condition of **1778 Frankford Avenue**.  The pictures in __Annexure VII -__ **Figure 13 to Figure 22** depict the interior condition of **1778 Frankford Avenue**.  The pictures depict that **1778 Frankford Avenue** abandoned more than three (3) consecutive years.

26. As per The Philadelphia Code, § 14-104. Non-Conforming Structures and Uses, Discontinued Use, **1778 Frankford Avenue** is a Non-Conforming Structure, discontinued in use more than three consecutive years, and abandoned and should not resumed to prior use. Any new Zoning Use Permit for **1778 Frankford Avenue** must comply with the use requirements of the district in which it is located.

27. However, ignoring the facts**,** on 12th August 2009, **James Gabriel** approved the Zoning Use Permit for **1778 Frankford Avenue, to** use **1778 Frankford Avenue** as a Seven (7) Residential dwellings property.

28. On 13th August 2009, **James Gabriel issued** a Zoning Use Permit # 165814 with that effect. Copy of the Zoning Use Permit is attached hereto as **Exhibit – IV** and made a part hereof.

29. On 27th August 2008**, ADC** and **ALX-GC** entered into a contract to perform the work stipulated by Contract Agreement between General Contractor and Sub-Contractor, "Work Exhibit A – Scope of the Contract. Contract Agreement between General Contractor and Sub-Contractor is attached hereto as **Exhibit – V** and made a part hereof.

30. In the last week of **August 2008, Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez,** and **ALX-GC** demolished the old structure at **1778 Frankford Avenue,** without notifying the neighbors' and without bracing or shoring to the party wall of **1780 Frankford Avenue** towards the **1778 Frankford Avenue**.

31. **Dan Achek , ADC, Alex Lopez,** and **ALX-GC ,** did not conduct the demolition work to minimize interference with adjacent structures. Further, did not sprinkle the demolition areas with water to minimize the dust. Further, did not follow the standard demolition practices laid out in **Annexure – I**. The pictures in **Annexure VII** - Figure 13 to Figure 21 depict the said violations to 2006 ICC Building Code, The Philadelphia code and OSHA regulations.

32. **Edward Devlin** neither inspected the demolition work nor issued violation notice(s) for violation to the 2006 ICC Building Code, The Philadelphia code and OSHA regulations by **Dan Achek , ADC, Alex Lopez,** and **ALX-GC .**

33. In the 1st week of September 2008, **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez,** and **ALX-GC** excavated the soil at **1778 Frankford Avenue** for the footings and foundation work.

34. **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez,** and **ALX-GC** neither follow the 2006 ICC Building Code, The Philadelphia code and OSHA regulations nor Shore (or) brace (or) underpin the **1778 Frankford Avenue** party wall and foundation as outlined in the **Annexure - I, Annexure - II, & Annexure – III.** The pictures in **Annexure VII** - Figure 13 to Figure 21 depict the said violations to 2006 ICC Building Code, The Philadelphia code and OSHA regulations.

35. **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez,** and **ALX-GC are** careless, negligent, reckless, and endanger to the public safety with malice aforethought to willfully violate and willfully non-compliant to the 2006 ICC Building Code, The Philadelphia code and OSHA regulations.

36. **Henry Langsam, Bart Sacks, S&L Investments** and / or **1780 Frankford Avenue** property management company neither object to the demolition and excavation work at 1778 Frankford Ave, nor take any precautionary measure to protect the **1780 Frankford Avenue** to avoid the collapse (or) take any precautionary measures to safe guard the safety of the residents of **1780 Frankford Avenue**.

37. **Edward Devlin** neither inspected the excavation work nor issued violation notices for violating the 2006 ICC Building Code, The Philadelphia code and OSHA regulations;

38. On 13th September 2008, **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez, ALX-GC** and **Juliet Whelan** together undermine the foundations of the **1780 Frankford Avenue** and subsequently caused the collapse of **1780 Frankford Avenue**. The pictures in **Annexure VIII** - Figure 1 and Figure 2 depict the collapse of **1780 Frankford Avenue** and **1782 Frankford Avenue.**

39. On 13th September 2008, **Edward Devlin** visited the **1778 Frankford Avenue** after the collapse of **1780 Frankford Avenue**. **Edward Devlin** didn't issue violation notices to **Dan Achek , Maya Maha Elkansa , ADC, Alex Lopez , ALX-GC** and **Juliet Whelan** for demolishing the **1778 Frankford Avenue** with reckless endangerment to public safety, negligence**,** carelessness**,** malice aforethought to willfully violate and willfully non-compliant to the 2006 ICC Building Code, The Philadelphia code and OSHA regulations.

40. **Edward Devlin** did not issue violation notices to **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez, ALX-GC** and **Juliet Whelan** for not bracing the **1780 Frankford Avenue; for** collapsing the **1780 Frankford Avenue**; for collapsing the **1782 Frankford Avenue;** The pictures in <u>**Annexure VIII**</u> - Figure 1 to Figure 2 depict that **1780 Frankford Avenue** did not braced.

41. On 13th September 2008, around 10:00 AM, **City of Philadelphia'** emergency rescue teams including but not limited to Department of Police, Departments of Fire and Department of L & I rushed to the **1778 Frankford Avenue** and rescued the residents of **1780 Frankford Avenue.** The pictures in <u>**Annexure VIII**</u> - Figure 3 to Figure 10 depict the emergency rescue teams are rescuing the residents of **1780 Frankford Avenue.**

42. On 13th September 2008, around 10:30 AM, PECO and PGW utility companies disconnected the electric and gas lines to **1782 Frankford Avenue** and other building on this block. The pictures in <u>**Annexure VIII**</u> - Figure 3 to Figure 10 depict the utility companies disconnecting the electric and gas supply lines.

43. On 13th September 2008, around 11:30 AM, **1780 Frankford Avenue** started to crumble down. The pictures in <u>**Annexure VIII**</u> - Figure 11 to Figure 18 depict the crumble down of **1780 Frankford Avenue**.

44. **City of Philadelphia'** Contractual services Unit, Department License & Inspections decided to demolish the partially collapsed **1780 Frankford Avenue.** Contractual services Unit, Department License & Inspections called for a curbside tender to demolish the partially collapsed **1780 Frankford Avenue.** Gamma Wrecking Company awarded the contract to demolish **1780 Frankford Avenue**, water proof the **1780 Frankford Avenue** party wall, backfill **1778 Frankford Avenue** and **1780 Frankford Avenue,** and stucco the **1780 Frankford Avenue** party wall. The approximate cost of the contract is US $ 60,000. The pictures in **Annexure VIII** - Figure 19 to Figure 30 depict the demolition work by **City of Philadelphia'** emergency rescue team and Gamma Wrecking Company.

45. During **City of Philadelphia'** emergency rescue team's operation, **1782 Frankford Avenue** damaged extensively to the roof, party wall, windows and sidewalk. The ground floor and basement of **1782 Frankford Avenue** filled with dust and broken glass**.** The pictures in **Annexure VIII** - Figure 31 to Figure 35 depict the damage to the **1782 Frankford Avenue** by **City of Philadelphia'** emergency rescue team and Gamma Wrecking Company.

46. On 14th September 2008, **Plaintiff** informed about damage to **1782 Frankford Avenue** to **Dan Achek , ADC, Alex Lopez, ALX-GC , Henry Langsam  Edward Devlin**  and **City of Philadelphia.**

47. On 14th September 2008, **City of Philadelphia'** demolition contractor Gamma Wrecking Company informed the **Plaintiff** that **City of Philadelphia** will stucco the exposed south side wall using the same stucco material that have been used on other sides of the **1782 Frankford Avenue**.

48. On 15th September 2008, **City of Philadelphia'** demolition contractor Gamma Wrecking Company informed **Plaintiff** that **City of Philadelphia'** budgeted would only allow to simply drive the stucco.

49.  **Plaintiff** immediately agreed and informed Gamma Wrecking Company that **Plaintiff** will pay the difference between the **City of Philadelphia'** contract price and cost of the stuccowork to look like the other side of the **1782 Frankford Avenue**.

50.  On 16th September 2008, **City of Philadelphia'** employee Mr. Michael Curran, Const Trades Inspector, Contractual services License & Inspections, City of Philadelphia, requested  **Plaintiff** to inspect the inside of **1782 Frankford Avenue.**

51.  On 17th September 2008, Mr. Michael Curran issued an UNSAFE notice to **1782 Frankford Avenue** without inspecting the inside **of 1782 Frankford Avenue.**

52.  On 17th September 2008, Mr. Michael Curran handed the UNSAFE notice bearing the case # 178785 to **Plaintiff** and stated, "**Here is a gift for you**".   Copy of the UNSAFE Violation notice attached hereto as **Exhibit – VI** and made a part hereof.

53.  **Plaintiff** questioned Mr. Michael Curran about the rational to issue an UNSAFE notice without inspecting the building. Mr. Michael Curran replied that, "**I am only a messenger**".

54.  On 17th September 2008, **Edward Devlin** issued an Inspection Report and made the following observations. "At site due to collapse at 1780 Frankford **Avenue**, party wall need to be stucco'ed. Corner (front) needs new brick on closing the front wall to the side party. Mr. Chao said he would handle. Need Engineers report on special inspection".  Copy of the Inspection Report attached hereto as **Exhibit – VII** and made a part hereof.

55.  On 18th September 2008, **City of Philadelphia'** demolition contractor M/s. Gamma Wrecking Company refused to perform the stuccowork and sealing the damaged roof for **1782 Frankford Avenue**.

56. **Plaintiff** pursued with **City of Philadelphia'** employees Mr. Scott Melderek and Mr. Michael Curran and **City of Philadelphia'** demolition contractor Gamma Wrecking Company to at least minimum seal the damaged portion of the roof of **1782 Frankford Avenue**, because September month is prone for rain.

57. **City of Philadelphia'** employees Mr. Scott Melderek and Mr. Michael Curran and **City of Philadelphia'** demolition contractor Gamma Wrecking Company didn't respond to the **Plaintiff's** requests.

58. On 19th September 2008, **Plaintiff** hired a contractor to seal the damaged portion of the **1782 Frankford Avenue** roof during **City of Philadelphia'** rescue operation at **1780 Frankford Avenue** and during **City of Philadelphia'** demolition contractor Gamma Wrecking Company demolition work at **1780 Frankford Avenue.**

59. On 21st September 2008, **Plaintiff** contracted with THE KACHELE GROUP, Consulting Structural Engineers to prepare the engineering drawing as per **Edward Devlin'** Inspection Report dated 17th September 2008 for **1780 Frankford Avenue**.

60. On 25th September 2008, THE KACHELE GROUP prepared an engineering drawing as per **Edward Devlin'** 17th September 2008 inspection report. Copy of the "THE KACHELE GROUP's" engineering drawing is attached hereto as **Exhibit – VIII** and made a part hereof.

61. **Plaintiff** submitted the copy of the "THE KACHELE GROUP's" engineering drawing as per **Edward Devlin'** Inspection Report  to Mr. Scott Melderek and Mr. Michael Curran and requested to suggest to **City of Philadelphia'** demolition contractor Gamma Wrecking Company to complete the work as per "THE KACHELE GROUP's" engineering drawing .  However, Mr. Scott Melderek and Mr. Michael Curran dodged the issue several months.

62. On 1st December 2008, Mr. Scott Melderek threatened the **Plaintiff** that he will issue another violation notice to the **1782 Frankford Avenue** party wall, if **Plaintiff** claims money towards the expenses to repair the damages for **1782 Frankford Avenue**.

63. **Plaintiff** submitted loss claim with insurance companies that insured **Dan Achek , ADC, Alex Lopez, ALX-GC , Henry Langsam , Bart Sacks** and **S & L Investments.** However, **Dan Achek , ADC, Alex Lopez, ALX-GC , Henry Langsam , Bart Sacks** and **S&L Investments** insurance companies refused to pay the expenses to repair the damages for **1782 Frankford Avenue.**

64. Under duress, **Plaintiff** used own resources to repair the damaged portion of the roof, windows, stucco the party wall and tie the front wall brick facing with brick work to the side wall of **1782 Frankford Avenue. Because, Dan Achek , ADC, Alex Lopez, ALX-GC , Henry Langsam , Bart Sacks, S & L Investments'** insurance underwriters and **City of Philadelphia refused** to pay for the damages to the **1782 Frankford Avenue.**

65. **Plaintiff** informed **Edward Devlin** and Mr. Scott Melderek and Mr. Michael Curran that structural repair work is completed as per "THE KACHELE GROUP's" engineering drawings and **Edward Devlin'** Inspection Report. Further, **Plaintiff** requested **Edward Devlin,** Mr. Scott Melderek**,** and Mr. Michael Curran to revoke the UNSAFE Violation Notice.

66. **Edward Devlin** and Mr. Scott Melderek and Mr. Michael Curran didn't revoke the UNSAFE Violation Notice even after completing the work as per **Edward Devlin'** Inspection Report until the end of February 2009 and caused inordinate delay to issue the Certificate of Occupancy (CO) for **1782 Frankford Avenue.**

67. **Plaintiff**, made several attempts to reach out **Edward Devlin, Frances Burns,** Mr. Scott Melderek and Mr. Michael Curran to resolve the UNSAFE Violation Notice and to seek a reimbursement towards the expenses to repair the damages for **1782 Frankford Avenue**.

68. **Plaintiff,** made several attempts to reach **Mayor Mr. Michael Nutter,** The Executive Public Official for **City of Philadelphia** and **5th District Councilman Mr. Darrel Clark.** However, **Edward Devlin, Frances Burns** and **City of Philadelphia,** did not responded for several weeks until March 2009.

69. **Frances Burns'** Executive Assistant Mr. Thomas McDade wrote a letter and refused to reimburse the expenses to repair the damages for **1782 Frankford Avenue**.

70. **Plaintiff** filed a claim with **City of Philadelphia' Risk Management Department and City of Philadelphia'** Risk Management Department refused to reimburse the expenses to repair the damages for **1782 Frankford Avenue** and suggested to file a claim against and **Maya Maha Elkansa** and **S & L Investments.** The Copy of Department of Risk Management letter is attached hereto as **Exhibit – VIII** and made a part hereof.

71. **Frances Burns** and **City of Philadelphia** conducted an enquiry into the collapse of **1780 Frankford Avenue** against **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez,** and **Juliet Whelan. Frances Burns** and **City of Philadelphia** closed the enquiry about the collapse of **1780 Frankford Avenue** and relieved **Juliet Whelan** from the enquiry.

72. **Frances Burns** and **City of Philadelphia** did not inform the **Plaintiff** about the **Frances Burns** and **City of Philadelphia** enquiry into the collapse of **1780 Frankford Avenue.**

73. The decision of **James Gabriel, Edward Devlin, Frances Burns,** and **City of Philadelphia'** employees caused an injury to **1782 Frankford Avenue.** Thus**, 1782 Frankford Avenue** violated the regulations of The Philadelphia Code, General Property and Structural Maintenance section PM-304.0 Exterior Structure.

74. The decision of **James Gabriel, Edward Devlin, Frances Burns,** and **City of Philadelphia's** employees caused an injury to **1782 Frankford Avenue.** However, **James Gabriel, Edward Devlin, Frances Burns,** and **City of Philadelphia's** employees burdened the **Plaintiff** to comply with The Philadelphia Code, General Property and Structural Maintenance section PM-304.0 Exterior Structure.

75. In regular practice whenever, **James Gabriel, Edward Devlin, Frances Burns,** and **City of Philadelphia's** employees decide to demolish an attached building**, City of Philadelphia'** demolition contractor performing the necessary work to fix the adjoining building and bring the property up to the code.

76. However, **James Gabriel, Edward Devlin, Frances Burns,** and **City of Philadelphia'** employees decide to not to follow their own standard of practice and discriminated the **Plaintiff** and deprived the **Plaintiff's** fundamental Civil Rights based on the basis of race, color, and national origin.

77. **Plaintiff** and **1782 Frankford Avenue** suffered injury, damage, severe financial loss and long-term health risks, due to the discrimination of **Plaintiff** based based on race, color, and national origin by the **James Gabriel, Edward Devlin, Frances Burns** and **City of Philadelphia.**

78. **Further, James Gabriel, Edward Devlin, Frances Burns** and **City of Philadelphia's** employees are vindictive and retaliatory to the Plaintiff**,** by withholding the Certificate of Occupancy (CO) to **1782 Frankford Avenue,** issued several petty nuisance citations.

79. As a direct result of **Dan Achek , Maya Maha Elkansa , ADC**, **Alex Lopez, ALX-GC , Henry Langsam , Bart Sacks, S & L Investments, Juliet Whelan, James Gabriel, Edward Devlin, Frances Burns** and **City of Philadelphia'** negligent, reckless and careless disregard to the public safety, malice aforethought to willfully violate and non-compliant to 2006 ICC Building Code, The Philadelphia code and OSHA regulations, **Plaintiff** an**d 1782 Frankford Avenue** sustained an injury, incur severe financial loss and experiencing long term health risks.

80. **Plaintiff** and **1782 Frankford Avenue** suffered tangible direct loss as follows:

| S. No | Loss Item | Amount |
|---|---|---|
| 1 | The cost to rectify the damages as per **Edward Devlin'** Inspection Report | $43,000 |
| 2 | Lost wages while working towards to rectify the damages | $50,000 |
| 3 | Interest paid to Wachovia Mortgage FSB | $25,000 |
| 4 | Revenue and Business Loss | $500,000 |
| | Total | $618,000 |

81. As a direct result of the **Dan Achek , Maya Maha Elkansa , ADC**, **Alex Lopez, ALX-GC , Henry Langsam , Bart Sacks, S & L Investments, Juliet Whelan, James Gabriel, Edward Devlin, Frances Burns** and **City of Philadelphia'** recklessness, endangerment to public safety, criminal negligence, carelessness, malice aforethought to willfully violate and willfully non-compliant per 2006 ICC Building Code, The Philadelphia code and OSHA regulations, **Plaintiff** an**d 1782 Frankford Avenue** suffered injury, damage, severe financial loss and long term health risks , **Plaintiff** lost his consulting job at a local pharmaceutical company, with a base pay of $120,000 per annum.

82. As a direct result of the **Dan Achek , Maya Maha Elkansa, ADC**, **Alex Lopez, ALX-GC ,** **Henry Langsam, Bart Sacks, S & L Investments, Juliet Whelan, James Gabriel, Edward Devlin, Frances Burns an**d **City of Philadelphia's** gross negligence and wanton, willful and reckless disregard for the safety of their neighbors' at **1778 Frankford Avenue**, **1782 Frankford Avenue** and **Plaintiff** has suffered actual damages. These damages include pain and suffering, continuing injury, bills and related costs to rectify the damages and lost work time and income. The long-term effects of **Plaintiff's** injuries continue to manifest themselves.

## (IV) <u>GENERAL ALLEGATIONS</u>

83. This matter presents common questions of law and fact arising out of collapse of **1780 Frankford Avenue** and **1782 Frankford Avenue** on 13th September 2008 that predominate over individual questions. Among the numerous predominating questions of law and fact are:

   i). The origin and cause for over exploiting the **1778 Frankford Avenue**.

   ii). The origin and cause for the collapse of **1780 Frankford Avenue**.

   iii). The origin and cause for the sustained damages to **1782 Frankford Avenue**.

   iv). The origin and cause for the sustained financial loss to **1782 Frankford Avenue**.

   v). Whether the **Defendants** failed to, among other things, to **properly adhere** to the requirements of applicable zoning & building codes, Philadelphia Code, together with federal and state Public Safety laws and standards;

   vi). Whether the **Defendants** failed to, among other things, to **properly enforce** the requirements of applicable zoning & building codes, Philadelphia Code, together with federal and state Public Safety laws and standards;

   vii). Whether **Defendants** knew or should have known that the failure among other things, to **properly adhere** to the requirements of applicable zoning & building codes, Philadelphia Code, together with federal and state Public Safety laws and standards, could cause grave and extensive harm to the **Plaintiff**.

viii). Whether **Defendants** knew or should have known that the failure among other things, to **properly enforce** the requirements of applicable zoning & building codes, Philadelphia Code, together with federal and state Public Safety laws and standards, could cause grave and extensive harm to the **Plaintiff**.

ix). Whether **Defendants** alleged failure to, among other things, to **properly adhere** to the requirements of applicable zoning & building codes, Philadelphia Code, together with federal and state Public Safety laws and standards, caused and contributed to the grave and extensive harm to the **Plaintiff**.

x). Whether Defendants alleged failure to, among other things, to **properly enforce** the requirements of applicable zoning & building codes, Philadelphia Code, together with federal and state Public Safety laws and standards, caused and contributed to the grave and extensive harm to the **Plaintiff**.

xi). Whether the **Plaintiff** suffered damages as a result of **Defendants'** conduct;

xii). Whether **Defendants** are liable to the **Plaintiff** for the harm **Plaintiff** suffered;

xiii). Whether **Defendants** acted outrageously or with reckless indifference to the rights of others in failing to among other things, to **properly adhere** to the requirements of applicable zoning & building codes, Philadelphia Code, together with federal and state Public Safety laws and standards;

xiv). Whether **Defendants** acted outrageously or with reckless indifference to the rights of others in failing to among other things, to **properly enforce** the requirements of applicable zoning & building codes, Philadelphia Code, together with federal and state Public Safety laws and standards;

# (V)   FIRST CAUSE OF ACTION – NEGLIGENCE AGAINST DAN ACHEK

84.   **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

85.   **Dan Achek**  is the dominant partner or shareholder of **ADC** and has personal liability for the actions or inactions as dominant partner or shareholder of Achek Design & Construction. **Dan Achek**  used **ADC** as a mere facade for his operations and is the dominant partner or shareholder in **ADC**.

86.   **Dan Achek**  is the Husband of **Maya Maha Elkansa** and **Maya Maha Elkansa** purchased the dilapidated and boarded **1778 Frankford Avenue** from **Henry Langsam , Bart Sacks** and **S & L Investments.  Dan Achek**  negotiated the transaction.

87.   **Dan Achek**   drafted the **1778 Frankford Avenue** building floor plans, and the promoter, developer and General Contractor for the **1778 Frankford Avenue** building project. As dominant partner or shareholder of **ADC**, **Dan Achek**   is the major beneficiary to enjoy the profits from successful development of the **1778 Frankford Avenue** building project.

88.   **Dan Achek**  having undertaken the design, development and supervision of the **1778 Frankford Avenue** construction site, owed a duty to the residents of the adjoining buildings on either side of **1778 Frankford Avenue**  to perform the construction work in a workman like manner, protect the safety of the neighbors' and  avoid injury to neighbors' property and neighbors.

89. **Dan Achek ,** having proposed seven (7) dwelling units at **1778 Frankford Avenue,** two (2) dwelling units on 1st, 2nd and 3rd floors and one (1) dwelling unit in the basement, knew should have known that the soil at the **1778 Frankford Avenue** needs to excavate deeper than the **1780 Frankford Avenue'** foundation footings.

90. **Dan Achek** knew or should have known the risk of collapse of **1780 Frankford Avenue** during the excavation at **1778 Frankford Avenue,** if excavation activity at **1778 Frankford Avenue** undermines the foundation of **1780 Frankford Avenue.**

91. **Dan Achek** knew or should have known that the risk of collapse of **1780 Frankford Avenue** increased, if the soil at **1778 Frankford Avenue** excavated without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue.**

92. **Dan Achek** knew or should have known that the **1778 Frankford Avenue** construction site should adequately inspect for hazardous and dangerous conditions. **Dan Achek** knew or should have known that to plan adequately, plot and supervise the construction work.

93. **Dan Achek** knew or should have known that to co-ordinate with other entities and subcontractors, including, but not limited to, **Alex Lopez, Juliet Whelan, Edward Devlin** and **City of Philadelphia.**

94. **Dan Achek** knew or should have known that to train properly his employees. **Dan Achek** knew or should have known that to properly train and instruct the employees of sub contractors on the construction site. **Dan Achek** knew or should have known that to hire competent employees, safety inspectors and sub contractors.

95.   **Dan Achek**  knew or should have known that to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans at **1778 Frankford Avenue** construction site.

96.   **Dan Achek**  knew or should have known that to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services delivered, supplied and furnished. **Dan Achek**  knew or should have known that to adopt, enact and enforce proper work rules and procedures.

97.   **Dan Achek**  knew or should have known that to supervise properly the construction work.  **Dan Achek**  knew or should have known that to perform safety task analysis.

98.   **Dan Achek**  knew or should have known that **1778 Frankford Avenue** construction site require a policy and **Dan Achek**  enforce such policy that required all workers to sign off on safety rules.  **Dan Achek**  knew or should have known that to implement and enforce an adequate protection and safety plan. **Dan Achek**  knew or should have known that to train properly employees and the employees of the sub contractors on construction safety.

99.   **Dan Achek**  and his respective agents, subcontractors, workers and /or employees knew or should have known that to carry the construction work in a safe manner at **1778 Frankford Avenue**.

100.  **Dan Achek**  knew or should have known that to obey the applicable OSHA regulations including the sections applicable to demolition. **Dan Achek**   knew or should have known that to comply with federal and state statues, local ordinances and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work.

101. **Dan Achek** knew or should have known that to comply with Uniform Building Code pertaining with the excavation of foundations. **Dan Achek** knew or should have known that to comply with association of general contractor's manual as it related to the excavation of foundations.

102. **Dan Achek** knew or should have known that to comply with national association of demolition contractors manual as it related to the excavation of foundations.

103. **Dan Achek** knew or should have known that to consider the implications of excavating adjacent to the rubble stone foundation of an approximately 80 to 90 year old three-story building. **Dan Achek** knew or should have known that excavating soil using heavy machinery would undermine the foundation of the party wall between **1778 Frankford Avenue** and **1780 Frankford Avenue**. **Dan Achek** knew or should have known that to hire prudent subcontractors.

104. **Dan Achek** failed to inspect the construction site adequately for hazardous and conditions. **Dan Achek** failed to plan adequately, plot and supervise the construction work.

105. **Dan Achek** failed to co-ordinate with other entities and subcontractors, including, but not limited to, **Alex Lopez, Juliet Whelan, Edward Devlin** and **City of Philadelphia. Dan Achek** failed to train properly his employees. **Dan Achek** failed to properly train and instruct the employees of sub contractors on the construction site. **Dan Achek** failed to hire competent employees, safety inspectors and sub contractors.

106. **Dan Achek** failed to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans.

107.   **Dan Achek** failed to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services supplied and furnished. **Dan Achek** failed to adopt, enact and enforce proper work rules and procedures. **Dan Achek** performed and furnished the construction services in a wholly inadequate and negligent manner.

108.   **Dan Achek** failed to supervise properly the construction work. **Dan Achek** failed to perform safety task analysis. **Dan Achek** failed to enforce a policy that required all workers to sign off on safety rules. **Dan Achek** failed to implement and or enforce an adequate safety and protection plan. **Dan Achek** failed to train properly the employees and the employees of the sub contractors on construction safety.

109.   **Dan Achek** and his respective agents, subcontractors, workers and /or employees failed to carry the construction work in a safe manner at **1778 Frankford Avenue**. **Dan Achek** violated applicable OSHA regulations including the sections applicable to demolition.

110.   **Dan Achek** violated and failed to comply with federal and state statues, local ordinances and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work. **Dan Achek** failed to hire prudent subcontractors.

111.   **Dan Achek** violated or failed to comply Uniform Building Code pertaining to the excavation of foundations. **Dan Achek** violated or failed to comply with association of general contractor's manual as it related to the excavation of foundations. **Dan Achek** violated or failed to comply with national association of demolition contractors manual as it related to the excavation of foundations.

112. **Dan Achek** failed to consider the implications of excavating adjacent to the rubble stone foundation of a approximately 80 to 90 year old three story building. **Dan Achek** permitted his employees, sub contractors to excavate the soil using heavy machinery and undermine the foundation of the party wall between **1778 Frankford Avenue** and **1780 Frankford Avenue**. **Dan Achek** failed to excavate the soil without undermine the foundation of **1780 Frankford Avenue** apartment building.

113. By the aforementioned **Dan Achek** ' carelessness and negligence, **Plaintiff** and **1782 Frankford Avenue** suffered damage, incurred significant expense to rectify the damage, paid additional interest charges towards construction loan, lost rental income, missed an opportunity to convert the construction loan into a permanent mortgage.

114. WHEREFORE, given that the **Dan Achek** breached the duty of care and such that negligence was the proximate cause of damage to the **Plaintiff**.

115. Because of **Dan Achek** ' negligence was wanton, willful and in reckless disregard to the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

116. WHEREFORE, **Plaintiff** prays this Honorable Court for the entry of a judgment in **Plaintiff**' favor and against **Dan Achek** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (VI) FIRST CAUSE OF ACTION – NEGLIGENCE AGAINST MAYA MAHA ELKANSA

117. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

118. **Maya Maha Elkansa** purchased the dilapidated and boarded **1778 Frankford Avenue** from **Henry Langsam , Bart Sacks** and **S & L Investments.** **Maya Maha Elkansa** contracted with her husband **Dan Achek** to draft the floor plans, to work as a general contractor, to promote, develop and finance the construction work at **1778 Frankford Avenue** property.

119. **Maya Maha Elkansa** has personal liability for the actions or inactions as legal owner of **1778 Frankford Avenue**, because , **Maya Maha Elkansa** is the dominant beneficiary to the profits generated from the sale of the proposed seven (7) condominiums at **1778 Frankford Avenue**.

120. As per common law duty, **Maya Maha Elkansa** as a legal owner of **1778 Frankford Avenue** owed a duty to the neighbors of **1778 Frankford Avenue** to execute the construction activity in a workman like manner, protect and avoid injury to neighbors and neighbors' property.

121. **Maya Maha Elkansa** authorized **Dan Achek** to apply for zoning use and building permit to construct seven (7) dwelling as two(2) dwelling units on each 1st, 2nd and 3rd floors and one (1) dwelling unit in the basement of **1778 Frankford Avenue.**

122. **Maya Maha Elkansa** knew or should have known that the soil at the **1778 Frankford Avenue** construction site should excavate deeper than the **1780 Frankford Avenue** foundation footings.

123. **Maya Maha Elkansa** knew or should have known of the risk of collapse of **1780 Frankford Avenue** during the demolition and excavation of soil at **1778 Frankford Avenue** by undermining the foundation of **1780 Frankford Avenue**.

124. **Maya Maha Elkansa** knew or should have known that the risk of collapse of **1780 Frankford Avenue** increased when excavating the soil without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue**.

125. **Maya Maha Elkansa** knew or should have known that to inspect adequately the construction site for hazardous and dangerous conditions. **Maya Maha Elkansa** knew or should have known that to co-ordinate with other entities and subcontractors, including, but not limited to, **Dan Achek** and **ADC**.

126. **Maya Maha Elkansa** knew or should have known that to adequately plan, plot and supervise the construction work. **Maya Maha Elkansa** knew or should have known that to obey the applicable OSHA regulations including the sections applicable to demolition. **Maya Maha Elkansa** knew or should have known that to train properly the **Dan Achek** and **ADC.**

127. **Maya Maha Elkansa** knew or should have known that to properly train and instruct the employees of sub contractors on the construction site. **Maya Maha Elkansa** knew or should have known that to hire competent employees, safety inspectors and sub contractors. **Maya Maha Elkansa** knew or should have known that to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans.

128. **Maya Maha Elkansa** knew or should have known that to comply with federal and state statues, local ordinances and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work.

129. **Maya Maha Elkansa** knew or should have known that to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services utilized.

130. **Maya Maha Elkansa** knew or should have known that to adopt, enact and enforce proper work rules and procedures. **Maya Maha Elkansa** knew or should have known that to supervise properly the construction work. **Maya Maha Elkansa** knew or should have known that to perform safety task analysis. **Maya Maha Elkansa** knew or should have known that to require or enforce a policy that required all workers to sign off on safety rules.

131. **Maya Maha Elkansa** knew or should have known that to implement and or enforce an adequate fire protection plan. **Maya Maha Elkansa** knew or should have known that to properly train employees and the employees of the sub contractors on construction safety.

132. **Maya Maha Elkansa** knew or should have known that to comply Uniform Building Code pertaining to the excavation of foundations. **Maya Maha Elkansa** knew or should have known that to hire prudent subcontractors.

133. **Maya Maha Elkansa** knew or should have known that to comply with association of general contractor's manual as it related to the excavation of foundations. **Maya Maha Elkansa** knew or should have known that to comply with national association of demolition contractors manual as it related to the excavation of foundations.

134. **Maya Maha Elkansa** knew or should have known that to consider the implications of excavating adjacent to the rubble stone foundation of an approximately 80 to 90 year old three-story building. **Maya Maha Elkansa** knew or should have known that excavate the soil using heavy machinery, undermine the foundation of the party wall between **1778 Frankford Avenue** and **1780 Frankford Avenue**.

135. **Maya Maha Elkansa** and her respective agents, servants, workmen and /or employees were irresponsible, incompetent, greedy, negligent, reckless, and careless and failed to carry the construction work in a safe manner at **1778 Frankford Avenue**.

136. **Maya Maha Elkansa** failed to adequately inspect the construction site for hazardous conditions. **Maya Maha Elkansa** failed to co-ordinate with other entities and subcontractors, including, but not limited to, **Dan Achek** and **ADC**.

137. **Maya Maha Elkansa** failed to adequately plan, plot and supervise the construction work. **Maya Maha Elkansa** failed to comply with the applicable OSHA regulations including the sections applicable to demolition. **Maya Maha Elkansa** failed to properly train **Dan Achek** and **ADC**. **Maya Maha Elkansa** failed to properly train and instruct the employees of sub contractors on the construction site. **Maya Maha Elkansa** failed to hire competent employees, safety inspectors and sub contractors. **Maya Maha Elkansa** failed to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans.

138. **Maya Maha Elkansa** violated and failed to comply with federal and state statues, local ordinances and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work.

139. **Maya Maha Elkansa** failed to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services supplied and furnished. **Maya Maha Elkansa** failed to adopt, enact and enforce proper work rules and procedures. **Maya Maha Elkansa** performed and furnished the construction services in a wholly inadequate and negligent manner.

140. **Maya Maha Elkansa** failed to properly supervise the construction work. **Maya Maha Elkansa** failed to perform safety task analysis. **Maya Maha Elkansa** failed to require or enforce a policy that required all workers to sign off on safety rules. **Maya Maha Elkansa** failed to implement and or enforce an adequate fire protection plan. **Maya Maha Elkansa** failed to properly train employees and the employees of the sub contractors on construction safety.

141. **Maya Maha Elkansa** violated or failed to comply Uniform Building Code pertaining to the excavation of foundations. **Maya Maha Elkansa** violated or failed to comply with association of general contractor's manual as it related to the excavation of foundations. **Maya Maha Elkansa** violated or failed to comply with national association of demolition contractors manual as it related to the excavation of foundations. **Maya Maha Elkansa** failed to hire prudent subcontractors.

142. **Maya Maha Elkansa** failed to consider the implications of excavating adjacent to the rubble stone foundation of a approximately 80 to 90 year old three story building. **Maya Maha Elkansa** permitted his employees, sub contractors to excavate the soil using heavy machinery and undermine the foundation of the party wall between **1778 Frankford Avenue** and **1780 Frankford Avenue**. **Maya Maha Elkansa** failed to excavate the soil without undermine the foundation of **1780 Frankford Avenue** apartment building.

143. By the aforementioned **Maya Maha Elkansa'** carelessness and negligence, **Plaintiff** and **1782 Frankford Avenue** suffered damage, incurred significant expense to rectify the damage, paid additional interest charges towards construction loan, lost rental income, missed an opportunity to convert the construction loan into a permanent mortgage.

144. WHEREFORE, given that the **Maya Maha Elkansa** breached the duty of care and such that negligence was the proximate cause of damage to the plaintiff.

145. Because **Maya Maha Elkansa** negligence was, wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

146. WHEREFORE, **Plaintiff** prays this Honorable Court for the entry of a judgment in **Plaintiff'** favor and against **Maya Maha Elkansa** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (VII) SECOND CAUSE OF ACTION– FRAUD, INTENTIONAL MISREPRESENTATION  AND NON-DISCLOSURE AGAINST DAN ACHEK AND MAYA MAHA ELKANSA

147. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

148. The essential elements of a claim of fraud by an intentional misrepresentation are:

(i) The defendant must have made a representation as to a past or existing material fact;

(ii) The representation must have been false;

(iii) The defendant must have known that the representation was false when made or must have made the representation recklessly without knowing whether it was true or false;

(iv) The defendant must have made the representation with an intent to defraud the plaintiff, that is, he she must have made the representation for the purpose of inducing the plaintiff to rely upon it and to act or to refrain from acting in reliance thereon;

(v) The plaintiff must have been unaware of the falsity of the representation; must have acted in reliance upon the truth of the representation and must have been justified in relying upon the representation;

(vi) And, finally, as a result of the reliance upon the truth of the representation, the plaintiff must have sustained damage. (See, Cal.Civ.Code § 1572; Stansfield v. Starkey (1990) 220 Cal.App.3d 59.)

149. The APPLICATION FOR ZONING/ USE REGISTRATION PERMIT made on behalf of **Dan Achek** and **Maya Maha Elkansa** for **1778 Frankford Ave** is full of fraud by an intentional misrepresentation as follows:

(i) In the section, TABULATION OF USES -CURRENT USE OF THE BUILDING/SPACE, **Dan Achek** and **Maya Maha Elkansa** just mentioned as "VACANT", instead as "NON-CONFORMING USE DISCONTINUED FOR A PERIOD OF MORE THAN THREE CONSECUTIVE YEARS".

(ii) In the section, STORIES AND HEIGHT FROM GROUND TO ROOF - EXISTING BUILDING – IN FEET, **Dan Achek** and **Maya Maha Elkansa** initially mentioned the heights of the building and strike out the heights to give represent as a vacant lot.

(iii) In the section, STORIES AND HEIGHT FROM GROUND TO ROOF - EXISTING BUILDING – IN STORIES, **Dan Achek** and **Maya Maha Elkansa** mentioned as vacant lot.

(iv) In the section, BRIEF DESCRIPTION OF WORK / CHANGE , TORIES AND HEIGHT FROM GROUND TO ROOF - EXISTING BUILDING, **Dan Achek** and **Maya Maha Elkansa** initially mentioned as "Demolishing existing building" and stroked out and mentioned as "Build new building. New Building consists of 7 residential condominiums" to give an impression that this is a vacant lot.

150.   The essential elements of fraud by an intentional misrepresentation by **Dan Achek** and **Maya Maha Elkansa** in the APPLICATION FOR ZONING/ USE REGISTRATION PERMIT for **1778 Frankford Ave** is as follows:

(i) **Dan Achek** and **Maya Maha Elkansa** made a representation about the past and existing material fact pertaining to **1778 Frankford Ave.**

(ii) **Dan Achek** and **Maya Maha Elkansa'** representation about **1778 Frankford Ave** is false.

(iii) **Dan Achek** and **Maya Maha Elkansa** know that the representation was false about **1778 Frankford Ave.**

(iv) **Dan Achek** and **Maya Maha Elkansa** have made the representation with an intent to defraud the City of Philadelphia and subsequently the Plaintiff.

(v) The City of Philadelphia unaware of the falsity of the representation and acted in reliance upon the truth of the representation and issued a Zoning Use Permit # 165814 on 13th August 2008 to construct seven (7) residential dwellings at 1778 Frankford Avenue, which is against The Philadelphia Code, § 14-104. (5) (b)  and § 14-104. (6) (c) .

151. And, finally, as a result of the reliance upon the truth of the representation, the City of Philadelphia issued the permit, **Dan Achek** and **Maya Maha Elkansa** excavated **1778 Frankford Ave** and subsequently Plaintiff sustained damage. (See, Cal.Civ.Code § 1572; Stansfield v. Starkey (1990) 220 Cal.App.3d 59.)

152. **Dan Achek** and **Maya Maha Elkansa** further committed fraud by concealment and suppression of known material fact about the **1778 Frankford Ave**. **Dan Achek** and **Maya Maha Elkansa** have been under a duty to disclose the fact to the **Plaintiff** and **City of Philadelphia**; **Dan Achek** and **Maya Maha Elkansa** intentionally concealed and suppressed the fact with the intent to defraud the **Plaintiff** and **City of Philadelphia**; The **Plaintiff** and **City of Philadelphia** are unaware of the fact and **City of Philadelphia** issued a Zoning Use Permit # 165814 on 13th August 2008; **Dan Achek** and **Maya Maha Elkansa** concealment or suppression of the facts caused the **Plaintiff** to sustain damage.

153. **Dan Achek** and **Maya Maha Elkansa** knew that, as per The Philadelphia Code, Non-Conforming Structures and Uses, Discontinued Use, § 14-104 (b), **1778 Frankford Avenue** is a Non-Conforming Structure and discontinued in use more than three consecutive years. **Dan Achek** and **Maya Maha Elkansa** knew that **1778 Frankford Avenue** is a Discontinued Use structure and abandoned. Further, **Dan Achek** and **Maya Maha Elkansa** knew that **1778 Frankford Avenue** should not be resuming to prior use. Further, **Dan Achek** and **Maya Maha Elkansa** knew that any new Zoning Use Permit for **1778 Frankford Avenue** must comply with the use requirements of the district in which it is located.

154. **Dan Achek** and **Maya Maha Elkansa** did not disclose the above-mentioned facts in the Zoning Use permit application.

155. **Dan Achek** and **Maya Maha Elkansa** fraudulently obtained Zoning Use permit to construct Seven (7) residential dwellings against the spirit of The Philadelphia Code, Non-Conforming Structures and Uses, Discontinued Use, § 14-104 (b).

156. **Dan Achek** and **Maya Maha Elkansa** were irresponsible and greedy; hence overexploited the **1778 Frankford Avenue** zoning use. **Dan Achek** and **Maya Maha Elkansa'** such overexploitation was the root cause to the recklessness and endangerment to public safety during the demolition and excavation at **1778 Frankford Avenue.**

157. Further, **Dan Achek** and **Maya Maha Elkansa'** such intentional misrepresentation, non-disclosure and overexploitation is a malice aforethought to willfully violate and willfully non-compliant per 2006 ICC Building Code, The Philadelphia code and OSHA regulations.

158. **Further,** aforementioned **Dan Achek** and **Maya Maha Elkansa'** fraud, intentional misrepresentation, non-disclosure and overexploitation caused **Plaintiff,** to pre occupy with the rectification of the damages to the **1782 Frankford Avenue.** As a result, issuance of the Certificate of Occupancy (CO) for **1782 Frankford Avenue** delayed, unable to convert the construction loan into permanent mortgage, unable to market the **1782 Frankford Avenue** property during 2008 real estate market season.

159. **Further, Dan Achek** and **Maya Maha Elkansa'** aforementioned such fraud, intentional misrepresentation, non-disclosure and overexploitation diminished the marketability of the **1782 Frankford Avenue** and as a result, **Plaintiff** incurred financial loss by paying additional expenses to fix the building, additional interest payments, lost revenue opportunity of $500,000. Further, **Plaintiff'** invested capital tied to the non-income generated and non-marketable property.

160. By the aforementioned **Dan Achek** and **Maya Maha Elkansa'** fraud, and overexploitation of **1778 Frankford Avenue**, **Plaintiff** suffered severe financial loss.

161. Therefore, **Dan Achek** and **Maya Maha Elkansa'** fraud, intentional misrepresentation, non-disclosure and overexploitation at **1778 Frankford Avenue** were the proximate cause of damage to the **1782 Frankford Avenue** and **Plaintiff.**

162. Because of **Dan Achek** and **Maya Maha Elkansa'** fraud, intentional misrepresentation, non-disclosure and overexploitation at **1778 Frankford Avenue** were wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

163. WHEREFORE, **Plaintiff** prays this Honorable Court for an entry of a judgment in **Plaintiff'** favor and against **Dan Achek** and **Maya Maha Elkansa** in the sum not less than 618,000 (Six hundred eighteen thousand dollars) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (VIII) <u>THIRD CAUSE OF ACTION - GROSS NEGLIGENCE AGAINST DAN ACHEK AND MAYA MAHA ELKANSA:</u>

164. Plaintiff incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

165.    **Dan Achek** and **Maya Maha Elkansa** applied for zoning use and building permit to construct seven (7) condominiums, two(2) dwelling units on each 1st, 2nd and 3rd floors and one (1) dwelling unit in the basement of 1778 Frankford Avenue. **Maya Maha Elkansa** knew or should have known that the soil at the 1778 Frankford Avenue construction site should excavate deeper than the 1780 Frankford Avenue foundation footings.

166.    **Dan Achek** and **Maya Maha Elkansa** owed a duty to the residents of the adjoining two buildings on either side of 1778 Frankford Avenue, and perform the construction work in a fashion like "workman like manner", protect the safety of the neighbors' and avoid injury to neighbors' property and neighbors.

167.    **Dan Achek** and **Maya Maha Elkansa** had a duty to hire experienced contractor to carry demolition and excavation work, intimate City of Philadelphia prior to starting demolition and excavation work, checking the weather conditions on the day of the work in advance and carry out the construction work in safe manner.

168.    **Dan Achek** and **Maya Maha Elkansa** had a duty to hire experienced contractor to carry demolition and excavation work, intimate City of Philadelphia prior to starting demolition and excavation work, checking the weather conditions on the day of the work in advance and carry out the construction work in safe manner.

169.    **Dan Achek** and **Maya Maha Elkansa** knew or should have known of the risk of collapse of 1780 Frankford Avenue apartment building during excavation of the soil by undermining the foundation of 1780 Frankford Avenue.

170. **Dan Achek** and **Maya Maha Elkansa** knew or should have known that the risk of collapse of 1780 Frankford Avenue apartment building increased when excavating the soil without shoring the 1780 Frankford Avenue party wall and without underpinning the foundation of 1780 Frankford Avenue.

171. **Dan Achek** and **Maya Maha Elkansa** knew or should have known that that the excavation work at 1778 Frankford Avenue should be performed as outlined in the Annexure - I, Annexure - II, & Annexure – III.

172. **Dan Achek** and **Maya Maha Elkansa** knew that if the excavation work performed as explained in the Annexure - I, Annexure - II, & Annexure – III, the time and cost of the work would offset the advantage of having a unit in the basement. Having know that this fact, **Dan Achek** and **Maya Maha Elkansa** choose to not to perform the excavation work as outlined in the Annexure - I, Annexure - II, & Annexure – III.

173. It is reasonable to foresee that by failing to do the following, a building, as 1780 Frankford Avenue will collapse and cause damages to 1782 Frankford Avenue.
    i). by failing to hire an experienced contractor to carry demolition and excavation work;
    ii). by failing to intimate City of Philadelphia prior to starting demolition and excavation work;
    iii). by failing to check the weather conditions on the day of the work in advance;
    iv). by failing to carry out the construction work in safe manner

174.     The construction contract between the **Dan Achek** and **Alex Lopez** itself depicts that **Dan Achek** and **Maya Maha Elkansa** has no intention to perform the construction work in a fashion like "workman like manner", protect the safety of the neighbors' and avoid injury to neighbors' property and neighbors. The contractual amount between **Dan Achek** and **Alex Lopez** is $49,000 and the scope of the work mentioned in the construction contract between the **Dan Achek** and **Alex Lopez** do not add-up together. It is impossible for any reasonable person to fulfill the scope of the work mentioned in the construction contract between the **Dan Achek** and **Alex Lopez** for mere $49,000.

175.     **Dan Achek** and **Maya Maha Elkansa** deliberately hired a sub contractor who does not have experience to carry out and perform the demolition work as outlined in the Annexure - I, Annexure - II, & Annexure – III at 1778 Frankford Avenue.

176.     **Dan Achek** and **Maya Maha Elkansa** deliberately started the demolition and excavation work at 1778 Frankford Avenue without intimating City of Philadelphia, because **Dan Achek** and **Maya Maha Elkansa** knew that City of Philadelphia would insist to comply and enforce the Uniform Building Code pertaining to the excavation of foundations.

177.     **Dan Achek** and **Maya Maha Elkansa** deliberately collapsed the building, because it is cheaper to collapse the building and pay the penalties imposed by City of Philadelphia, than perform the demolition and excavation work as explained in the attached Annexure - I, Annexure - II, & Annexure – III.

178.     **Dan Achek** and **Maya Maha Elkansa** deliberately violated and failed to comply with association of general contractor's manual as it related to the excavation of foundations.

179.    **Dan Achek** and **Maya Maha Elkansa** deliberately collapsed the building, because **Dan Achek** and **Maya Maha Elkansa** felt it is cheaper to collapse the building and pay the penalties imposed by City of Philadelphia.

180.    **Dan Achek** and Maya Maha Elkansa' concealment of the known material facts in the zoning application and building permit application demonstrates a substantial lack of concern for whether an injury will result or not.

181.    **Dan Achek** and **Maya Maha Elkansa** deliberately breached their duty to carry construction work in safe manner and recklessly failing to underpin and shore the party walls of 1780 Frankford Avenue.

182.    **Dan Achek** and Maya Maha Elkansa' wanton, willful and reckless disregard for the safety of the neighbors, in particular **Dan Achek** and Maya Maha Elkansa' failure to hire experienced contractor to carry demolition and excavation work; intimate City of Philadelphia prior to starting demolition and excavation work; checking the weather conditions on the day of the work in advance; and carry out the construction work in safe manner or any other reasonable safety precautions to protect the neighbors and neighbor's property; caused damages to 1782 Frankford Avenue building and caused continuing injuries to the Plaintiff.

183.    Therefore, given that the **Dan Achek** and **Maya Maha Elkansa** breached the duty of care and such that gross negligence was the proximate cause of damage to the Plaintiff.

184. Because of **Dan Achek** and **Maya Maha Elkansa** gross negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial. Punitive Damages may be available against individual Defendants. The Supreme Court of Pennsylvania has adopted the restatement (2nd) of Torts, §908 (2) which permits Punitive Damages for "conduct that is outrageous because of the Defendant's evil motive or his reckless indifference to the rights of others." Rizzo v. Hanes, 520 Pa. 484, 555 A. 2d 58, 69 (Pa. 1998) ("Rest.) 2d (Torts §908 2) A Court may award Punitive Damages only if the conduct was malicious, wanton, reckless, willful, or oppressive. Chambers v. Montgomery, 411 Pa. 339, 192 A. 2d 355, 358 (Pa. 1963) The actor's state of mind is also relevant: "The act or omission must be intentional, reckless, or malicious." Id, Feld v. Merriam 506 Pa. 383,485 A. 2d 742, 748 (Pa. 1984).

185. WHEREFORE, Plaintiff, prays this Honorable Court for the entry of a judgment in Plaintiff' favor and against **Dan Achek** and **Maya Maha Elkansa** in the sum not less than $618,000 (Six hundred eighteen thousand dollars) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (IX) FOURTH CAUSE OF ACTION - EMOTIONAL DISTRESS AGAINST DAN ACHEK AND MAYA MAHA ELKANSA:

186. Plaintiff incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

187. **Dan Achek** and **Maya Maha Elkansa** applied for zoning use and building permit to construct seven (7) condominiums, two(2) dwelling units on each 1st, 2nd and 3rd floors and one (1) dwelling unit in the basement of 1778 Frankford Avenue. **Maya Maha Elkansa** knew or should have known that the soil at the 1778 Frankford Avenue construction site should excavate deeper than the 1780 Frankford Avenue foundation footings.

188. **Dan Achek** and **Maya Maha Elkansa** owed a duty to the residents of the adjoining two buildings on either side of 1778 Frankford Avenue, and perform the construction work in a fashion like "workman like manner", protect the safety of the neighbors' and avoid injury to neighbors' property and neighbors.

189. **Dan Achek** and **Maya Maha Elkansa** had a duty to hire experienced contractor to carry demolition and excavation work, intimate City of Philadelphia prior to starting demolition and excavation work, checking the weather conditions on the day of the work in advance and carry out the construction work in safe manner.

190. **Dan Achek** and **Maya Maha Elkansa** knew or should have known that the risk of collapse of 1780 Frankford Avenue during excavating the soil at 1778 Frankford Avenue would undermine the foundation of 1780 Frankford Avenue.

191. **Dan Achek** and **Maya Maha Elkansa** knew or should have known that the risk of collapse of 1780 Frankford Avenue apartment building increased when excavating the soil without shoring the 1780 Frankford Avenue party wall and without underpinning the foundation of 1780 Frankford Avenue apartment building.

192. **Dan Achek** and **Maya Maha Elkansa** knew or should have known that that the excavation work at 1778 Frankford Avenue should perform as outlined in the Annexure - I, Annexure - II, & Annexure – III.

193. **Dan Achek** and **Maya Maha Elkansa** knew that if the excavation work performed as explained in the Annexure - I, Annexure - II, & Annexure – III, the time and cost of the work would offset the advantage of having a unit in the basement. Having know that this fact, **Dan Achek** and **Maya Maha Elkansa** choose to not to perform the excavation work as outlined in the Annexure - I, Annexure - II, & Annexure – III.

194. **Dan Achek** and **Maya Maha Elkansa** intentionally, deliberately, wantonly, and willfully collapsed the building, because it is cheaper to **Dan Achek** and **Maya Maha Elkansa** to collapse the 1780 Frankford Avenue and pay the penalties imposed by City of Philadelphia, rather carry the demolition and excavation work as explained in the Annexure - I, Annexure - II, & Annexure – III.

195. **Dan Achek** and **Maya Maha Elkansa** intentionally, deliberately, wantonly, and willfully started the demolition and excavation work at 1778 Frankford Avenue without informing the City of Philadelphia, because **Dan Achek** and **Maya Maha Elkansa** knew that City of Philadelphia would insist to comply and enforce the Uniform Building Code pertaining to the excavation of foundations.

196. **Dan Achek** and **Maya Maha Elkansa** intentionally, deliberately, wantonly, and willfully hired a sub contractor who does not have an experience to carry out and perform the excavation work as explained in the Annexure - I, Annexure - II, & Annexure – III, because, **Dan Achek** and **Maya Maha Elkansa** felt that it is expensive to follow the rules and easy to flout the rules.

197.    **Dan Achek** and **Maya Maha Elkansa** intentionally, deliberately, wantonly, and willfully violated or failed to comply with Association of General Contractor's manual as it related to the excavation of foundations; intentionally, deliberately, wantonly, and willfully violated or failed to comply Uniform Building Code pertaining to the excavation of foundations;

198.    **Dan Achek** and **Maya Maha Elkansa** intentionally, deliberately, wantonly, and willfully breached their duty to carry construction work in safe manner, recklessly violated, and failed to underpin and shore the party walls of 1780 Frankford Avenue.

199.    **Dan Achek** and **Maya Maha Elkansa** intentional, deliberate, wanton, willful negligent and reckless violations caused a complete collapse of 1780 Frankford Avenue and subsequently caused irreparable personal damage and emotional distress to Plaintiff and Plaintiff's property.

200.    Plaintiff and Wachovia Mortgage FSB had an economic relationship and containing 99.9% probability of future economic benefit to the Plaintiff. Defendants Achek and Elkhansa has the knowledge that Plaintiff and Wachovia Mortgage FSB had an economic relationship and such relationship is in existence.

201.    The following **Dan Achek** and **Maya Maha Elkansa'** actions are intentional and designed to disrupt the relationship between Plaintiff and Wachovia Mortgage FSB.

   i).   Refuse to rectify the damages caused by the demolition of 1780 Frankford Avenue.

   ii).  Refuse to pay the additional expense caused to rectify the damages caused demolition of 1780 Frankford Avenue.

202. In spite of Plaintiff' repeated pleading to rectify the damages, **Dan Achek** and **Maya Maha Elkansa** intentionally and recklessly avoided to rectify the damages to the 1782 Frankford Ave building. It took several months to rectify the damages and Plaintiff suffered severe emotional distress as a result of the disrupt of the relationship between Plaintiff and Wachovia Mortgage FSB, and that Plaintiff has suffered severe physical manifestations of the emotional distress. Plaintiff' stated facts support the requisite evidence for **Dan Achek** and **Maya Maha Elkansa** intentional and reckless disregard to the safety of 1782 Frankford Ave and Plaintiff.

203. **Dan Achek** and **Maya Maha Elkansa** deliberately collapsed the 1782 Frankford Ave is to intentionally inflict pain and emotional distress upon Plaintiff. Third Circuit Court of Appeals and the Pennsylvania Supreme Court adopt Section 46 of the Restatement (2d) of Torts, which provides for recovery where one by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. Brown v. Muhlenberg Township, 269 F.3d 205 (3d Cir. 2001).

204. THEREFORE, **Dan Achek** and **Maya Maha Elkansa'** Tortiously / wrongfully interfere between Plaintiff and Wachovia Mortgage FSB business relationship, and such Tortious / Wrongful Interference were the proximate cause of damage to the Plaintiff.

205. **Plaintiff** suffered severe emotional distress as a result of the disrupt of the relationship between Plaintiff and Wachovia Mortgage FSB, and that Plaintiff has suffered severe physical manifestations of the emotional distress. Plaintiff' stated facts support the requisite evidence for **Dan Achek** and **Maya Maha Elkansa** intentional and reckless disregard to the safety of 1782 Frankford Ave and Plaintiff. **Dan Achek** and **Maya Maha Elkansa** intentional infliction of pain caused for a JOB LOSS to the plaintiff. Further, the allegations are sufficient to survive preliminary objections.

206. By the reason of **Dan Achek** and **Maya Maha Elkansa'** deliberate, wanton, willful, negligent and reckless actions and violations with reckless disregard for the safety of their neighbors' at 1778 Frankford Avenue, 1782 Frankford Avenue and Plaintiff suffered emotional distress, pain and suffering, continuing injury, bills and related costs to rectify the damages and lost work time and income. The long-term effects of Plaintiff's injuries continue to manifest themselves.

207. **Dan Achek** and **Maya Maha Elkansa'** extreme and outrageous conduct was the cause for the emotional distress to Plaintiff. By the reason of **Dan Achek** and Maya Maha Elkansa' extreme and outrageous, conduct, Plaintiff suffered severe emotional distress.

208. Therefore, given that, the **Dan Achek** and **Maya Maha Elkansa** breached the duty of care and intentional, deliberate, wanton, willful, negligent and reckless actions, violations and disregard to the safety of their neighbors' was the proximate cause of severe emotional distress to the Plaintiff.

209. Because, **Dan Achek** and **Maya Maha Elkansa'** breached the duty of care was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial. Punitive Damages may be available against individual Defendants. The Supreme Court of Pennsylvania has adopted the restatement (2nd) of Torts, §908 (2) which permits Punitive Damages for "conduct that is outrageous because of the Defendant's evil motive or his reckless indifference to the rights of others." Rizzo v. Hanes, 520 Pa. 484, 555 A. 2d 58, 69 (Pa. 1998) ("Rest.) 2d (Torts §908 2) A Court may award Punitive Damages only if the conduct was malicious, wanton, reckless, willful, or oppressive. Chambers v. Montgomery, 411 Pa. 339, 192 A. 2d 355, 358 (Pa. 1963) The actor's state of mind is also relevant: "The act or omission must be intentional, reckless, or malicious." Id, Feld v. Merriam 506 Pa. 383,485 A. 2d 742, 748 (Pa. 1984).

210. WHEREFORE, Plaintiff prays this Honorable Court for an entry of a judgment in Plaintiff' favor and against **Dan Achek** and **Maya Maha Elkansa** in the sum not less than $618,000(Six hundred and eighteen thousand dollars) in damages for delay pursuant to Pa R.C.P 238, exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (X)  FIRST CAUSE OF ACTION – NEGLIGENCE AGAINST ADC

211. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

212. **Dan Achek**  is the dominant partner or shareholder of **ADC** and has personal liability for the actions or inactions as dominant partner or shareholder of **ADC**. **Dan Achek** used **ADC** as a mere facade for his operations and is the dominant partner or shareholder in **ADC**.

213. **Dan Achek**  is the Husband of **Maya Maha Elkansa** and **Maya Maha Elkansa** purchased the dilapidated and boarded **1778 Frankford Avenue** from **Henry Langsam , Bart Sacks** and **S & L Investments. Dan Achek** negotiated the transaction.

214. **Dan Achek**  drafted the **1778 Frankford Avenue** building floor plans, and the promoter, developer and General Contractor for the **1778 Frankford Avenue** building project. As dominant partner or shareholder of **ADC**, **Dan Achek**  is the major beneficiary to enjoy the profits from successful development of the **1778 Frankford Avenue** building project.

215. **ADC** is a mere facade for **Dan Achek '** real estate operations. **Dan Achek** is the dominant partner or shareholder of **ADC** and **ADC** has liability for the actions or inactions as the facade for **Dan Achek .**

216. **ADC** owed a duty to the residents of the adjoining two buildings on either side of **1778 Frankford Avenue**, and perform the construction work in a fashion like "workman like manner", protect the safety of the neighbors' and avoid injury to neighbors' property and neighbors.

217. **ADC** owed a duty to hire experienced contractor to carry demolition and excavation work, intimate **City of Philadelphia** prior to starting demolition and excavation work, checking the weather conditions on the day of the work in advance and carry out the construction work in safe manner.

218. **ADC** having undertaken the design, development and supervision of the construction site, owed a duty to the residents of the adjoining two buildings on either side of **1778 Frankford Avenue** and perform the construction work workman like manner, protect the safety of the neighbors' and avoid injury to neighbors' property and neighbors.

219. **ADC** knew or should have known that the soil at the **1778 Frankford Avenue** construction site should excavated deeper than the **1780 Frankford Avenue** foundation footings.

220. **ADC** knew or should have known that the risk of collapse of **1780 Frankford Avenue,** if the excavation of the soil **1778 Frankford Avenue** construction site undermine the foundation of **1780 Frankford Avenue**.

221. **ADC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** increased when excavating the soil without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue**.

222.  **ADC,** having proposed seven (7) dwelling units at **1778 Frankford Avenue,** two (2) dwelling units on 1st, 2nd and 3rd floors and one (1) dwelling unit in the basement, knew should have known that the soil at the **1778 Frankford Avenue** needs to excavate deeper than the **1780 Frankford Avenue'** foundation footings.

223.  **ADC** knew or should have known the risk of collapse of **1780 Frankford Avenue** during the excavation at **1778 Frankford Avenue,** if excavation activity at **1778 Frankford Avenue** undermines the foundation of **1780 Frankford Avenue.**

224.  **ADC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** increased, if the soil at **1778 Frankford Avenue** excavated without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue.**

225.  **ADC** knew or should have known that the **1778 Frankford Avenue** construction site should adequately inspect for hazardous and dangerous conditions. **Dan Achek** knew or should have known that to plan adequately, plot and supervise the construction work.

226.  **ADC** knew or should have known that to co-ordinate with other entities and subcontractors, including, but not limited to, **Alex Lopez, Juliet Whelan** and **City of Philadelphia.**

227.  **ADC** knew or should have known that to train properly his employees. **ADC** knew or should have known that to properly train and instruct the employees of sub contractors on the construction site. **ADC** knew or should have known that to hire competent employees, safety inspectors and sub contractors.

228. **ADC** knew or should have known that to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans at **1778 Frankford Avenue** construction site.

229. **ADC** knew or should have known that to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services were supplied and furnished. **ADC** knew or should have known that to adopt, enact and enforce proper work rules and procedures.

230. **ADC** knew or should have known that to supervise properly the construction work. **ADC** knew or should have known that to perform safety task analysis.

231. **ADC** knew or should have known that **1778 Frankford Avenue** construction site require a policy and **ADC** enforce such policy that required all workers to sign off on safety rules. **ADC** knew or should have known that to implement and enforce an adequate protection and safety plan. **ADC** knew or should have known that to train properly employees and the employees of the sub contractors on construction safety.

232. **ADC** and his respective agents, subcontractors, workers and /or employees knew or should have known that to carry the construction work in a safe manner at **1778 Frankford Avenue**.

233. **ADC** knew or should have known that to obey the applicable OSHA regulations including the sections applicable to demolition. **ADC** knew or should have known that to comply with federal and state statues, local ordinances and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work.

234. **ADC** knew or should have known that to comply with Uniform Building Code pertaining with the excavation of foundations. **ADC** knew or should have known that to comply with association of general contractor's manual as it related to the excavation of foundations.

235. **ADC** knew or should have known that to comply with national association of demolition contractors manual as it related to the excavation of foundations.

236. **ADC** knew or should have known that to consider the implications of excavating adjacent to the rubble stone foundation of an approximately 80 to 90 year old three-story building. **Dan Achek** knew or should have known that excavating soil using heavy machinery would undermine the foundation of the party wall between **1778 Frankford Avenue** and **1780 Frankford Avenue**. **Dan Achek** knew or should have known that to hire prudent subcontractors.

237. **ADC** failed to inspect the construction site adequately for hazardous and conditions. **ADC** failed to plan adequately, plot and supervise the construction work.

238. **ADC** failed to co-ordinate with other entities and subcontractors, including, but not limited to, **Alex Lopez, Juliet Whelan** and **City of Philadelphia. ADC** failed to train properly his employees. **ADC** failed to properly train and instruct the employees of sub contractors on the construction site. **ADC** failed to hire competent employees, safety inspectors and sub contractors.

239. **ADC** failed to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans.

240.   **ADC** failed to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services supplied and furnished. **ADC** failed to adopt, enact and enforce proper work rules and procedures. **ADC** performed and furnished the construction services in a wholly inadequate and negligent manner.

241.   **ADC** failed to properly supervise the construction work. **ADC** failed to perform safety task analysis. **ADC** failed to enforce a policy that required all workers to sign off on safety rules. **ADC** failed to implement and or enforce an adequate safety and protection plan. **ADC** failed to properly train employees and the employees of the sub contractors on construction safety.

242.   **ADC** and his respective agents, subcontractors, workers and /or employees failed to carry the construction work in a safe manner at **1778 Frankford Avenue**. **ADC** violated applicable OSHA regulations including the sections applicable to demolition.

243.   **ADC** violated and failed to comply with federal and state statues, local ordinances and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work. **ADC** failed to hire prudent subcontractors.

244.   **ADC** violated or failed to comply Uniform Building Code pertaining to the excavation of foundations. **ADC** violated or failed to comply with association of general contractor's manual as it related to the excavation of foundations. **ADC** violated or failed to comply with national association of demolition contractors manual as it related to the excavation of foundations.

245. **ADC** failed to consider the implications of excavating adjacent to the rubble stone foundation of a approximately 80 to 90 year old three story building. **ADC** permitted his employees, sub contractors to excavate the soil using heavy machinery and undermine the foundation of the party wall between **1778 Frankford Avenue** and **1780 Frankford Avenue**. **ADC** failed to excavate the soil without undermine the foundation of **1780 Frankford Avenue** apartment building.

246. By the aforementioned **ADC'** carelessness and negligence, **Plaintiff** and **1782 Frankford Avenue** suffered damage, incurred significant expense to rectify the damage, paid additional interest charges towards construction loan, lost rental income, missed an opportunity to convert the construction loan into a permanent mortgage.

247. WHEREFORE, given that the **ADC** breached the duty of care and such that negligence was the proximate cause of damage to the **Plaintiff**.

248. Because of **ADC'** negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

249. WHEREFORE, **Plaintiff** prays this Honorable Court for the entry of a judgment in **Plaintiff'** favor and against **ADC** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XI) <u>SECOND CAUSE OF ACTION - GROSS NEGLIGENCE AGAINST ADC:</u>

250. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

251. **ADC** applied for zoning use and building permit to construct seven (7) condominiums, two(2) dwelling units on each 1st, 2nd and 3rd floors and one (1) dwelling unit in the basement of **1778 Frankford Avenue.  Maya Maha Elkansa** knew or should have known that the soil at the **1778 Frankford Avenue** construction site should excavate deeper than the **1780 Frankford Avenue** foundation footings.

252. **ADC** owed a duty to the residents of the adjoining two buildings on either side of **1778 Frankford Avenue**, and perform the construction work in a fashion like "workman like manner", protect the safety of the neighbors' and  avoid injury to neighbors' property and neighbors.

253. **ADC** had a duty to hire experienced contractor to carry demolition and excavation work, intimate City of Philadelphia prior to starting demolition and excavation work, checking the weather conditions on the day of the work in advance and carry out the construction work in safe manner.

254. **ADC** knew or should have known of the risk of collapse of **1780 Frankford Avenue** apartment building during excavation of the soil by undermining the foundation of **1780 Frankford Avenue.**

255. **ADC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** apartment building increased when excavating the soil without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue**.

256. **ADC** knew or should have known that that the excavation work at **1778 Frankford Avenue** should performed as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

257. **ADC** knew that if the excavation work performed as explained in the **Annexure - I, Annexure - II, & Annexure – III**, the time and cost of the work would offset the advantage of having a unit in the basement. Having know that this fact, **ADC** choose to not to perform the excavation work as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

258. **ADC** deliberately hired a sub contractor who does not have experience to carry out and perform the demolition work as outlined in the **Annexure - I, Annexure - II, & Annexure – III** at **1778 Frankford Avenue**.

259. **ADC** deliberately hired a sub contractor who does not have experience to carry out and perform the excavation work as outlined in the **Annexure - I, Annexure - II, & Annexure – III** at **1778 Frankford Avenue**.

260. **ADC** deliberately started the demolition and excavation work at **1778 Frankford Avenue** without intimating **City of Philadelphia**, because **ADC** knew that **City of Philadelphia** would insist to comply and enforce the Uniform Building Code pertaining to the excavation of foundations.

261. It is reasonable to foresee that by failing to do the following, a building, as **1780 Frankford Avenue** will collapse and cause damages to **1782 Frankford Avenue.**

   i). by failing to hire an experienced contractor to carry demolition and excavation work;

   ii). by failing to intimate City of Philadelphia prior to starting demolition and excavation work;

   iii). by failing to check the weather conditions on the day of the work in advance;

iv). by failing to carry out the construction work in safe manner;

262. **ADC** deliberately violated or failed to comply with association of general contractor's manual as it related to the excavation of foundations.

263. **ADC** deliberately collapsed the building, because **ADC** felt it is cheaper to collapse the building and pay the penalties imposed by City of Philadelphia.

264. **ADC** deliberately breached their duty to carry construction work in safe manner and recklessly failing to underpin and shore the party walls of **1780 Frankford Avenue**.

265. **ADC'** wanton, willful and reckless disregard to the safety of the neighbors, in particular **ADC'** failure to hire experienced contractor to carry demolition and excavation work; intimate City of Philadelphia prior to starting demolition and excavation work; checking the weather conditions on the day of the work in advance; and carry out the construction work in safe manner or any other reasonable safety precautions to protect the neighbors and neighbor's property; caused damages to **1782 Frankford Avenue** building and caused continuing injuries to the **Plaintiff.**

266. Therefore, given that the **ADC** breached the duty of care and such that gross negligence was the proximate cause of damage to the **Plaintiff.**

267. Because of **ADC** gross negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

268. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in **Plaintiff**' favor and against **ADC** in the sum not less than $618,000 (Six hundred eighteen thousand dollars) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XII) THIRD CAUSE OF ACTION - EMOTIONAL DISTRESS AGAINST ADC:

269. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

270. **ADC** applied for zoning use and building permit to construct seven (7) condominiums, two(2) dwelling units on each 1st, 2nd and 3rd floors and one (1) dwelling unit in the basement of **1778 Frankford Avenue**. **Maya Maha Elkansa** knew or should have known that the soil at the **1778 Frankford Avenue** construction site should excavate deeper than the **1780 Frankford Avenue** foundation footings.

271. **ADC** owed a duty to the residents of the adjoining two buildings on either side of **1778 Frankford Avenue**, and perform the construction work in a fashion like "workman like manner", protect the safety of the neighbors' and avoid injury to neighbors' property and neighbors.

272. **ADC** had a duty to hire experienced contractor to carry demolition and excavation work, intimate City of Philadelphia prior to starting demolition and excavation work, checking the weather conditions on the day of the work in advance and carry out the construction work in safe manner.

273. **ADC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** during excavating the soil at **1778 Frankford Avenue** would undermine the foundation of **1780 Frankford Avenue**.

274. **ADC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** apartment building increased when excavating the soil without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue** apartment building.

275. **ADC** knew or should have known that that the excavation work at **1778 Frankford Avenue** should perform as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

276. **ADC** knew that if the excavation work performed as explained in the **Annexure - I, Annexure - II, & Annexure – III**, the time and cost of the work would offset the advantage of having a unit in the basement. Having know that this fact, **Dan Achek** and **Maya Maha Elkansa** choose to not to perform the excavation work as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

277. **ADC** intentionally, deliberately, wantonly, and willfully collapsed the building, because it is cheaper to **ADC** to collapse the **1780 Frankford Avenue** and pay the penalties imposed by City of Philadelphia, rather carry the demolition and excavation work as explained in the **Annexure - I, Annexure - II, & Annexure – III.**

278. **ADC** intentionally, deliberately, wantonly, and willfully started the demolition and excavation work at **1778 Frankford Avenue** without informing the **City of Philadelphia,** because **ADC** knew that **City of Philadelphia** would insist to comply and enforce the Uniform Building Code pertaining to the excavation of foundations.

279. **ADC** intentionally, deliberately, wantonly, and willfully hired a sub contractor who does not have an experience to carry out and perform the excavation work as explained in the **Annexure - I, Annexure - II, & Annexure – III,** because, **Dan Achek** and **Maya Maha Elkansa** felt that it is expensive to follow the rules and easy to flout the rules.

280. **ADC** intentionally, deliberately, wantonly, and willfully violated or failed to comply with Association of General Contractor's manual as it related to the excavation of foundations; intentionally, deliberately, wantonly, and willfully violated or failed to comply Uniform Building Code pertaining to the excavation of foundations;

281. **ADC** intentionally, deliberately, wantonly, and willfully breached their duty to carry construction work in safe manner, recklessly violated, and failed to underpin and shore the party walls of **1780 Frankford Avenue**.

282. **ADC'** intentional, deliberate, wanton, willful negligent and reckless violations caused a complete collapse of **1780 Frankford Avenue** and subsequently caused irreparable personal damage and emotional distress to Plaintiff and Plaintiff's property.

283. **ADC'** extreme and outrageous conduct was the cause for the emotional distress to **Plaintiff.** By the reason of **ADC'** extreme and outrageous, conduct, **Plaintiff** suffered severe emotional distress.

284. Therefore, given that, the **ADC** breached the duty of care and intentional, deliberate, wanton, willful, negligent and reckless actions, violations and disregard to the safety of their neighbors' was the proximate cause of severe emotional distress to the **Plaintiff.**

285. Because**, ADC'** breached the duty of care was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

286. WHEREFORE, **Plaintiff** prays this Honorable Court for an entry of a judgment in **Plaintiff**' favor and against **ADC** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages for delay pursuant to Pa R.C.P 238, exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XIII)  **FIRST CAUSE OF ACTION – NEGLIGENCE AGAINST  ALEX LOPEZ AND ALX-GC :**

287. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

288. **ALX-GC**  is a mere facade for **Alex Lopez'** construction operations.  **Alex Lopez** is the sole partner or shareholder of **ALX-GC**  and **ALX-GC**  has liability for the actions or inactions as the facade for **Alex Lopez.**

289. **Alex Lopez** and **ALX-GC**  owed a duty to the residents of the adjoining two buildings on either side of **1778 Frankford Avenue**, and perform the construction work in a fashion like "workman like manner", protect the safety of the neighbors' and  avoid injury to neighbors' property and neighbors.

290. **Alex Lopez** and **ALX-GC**   owed a duty to hire experienced contractor to carry demolition and excavation work, intimate **City of Philadelphia** prior to starting demolition and excavation work, checking the weather conditions on the day of the work in advance and carry out the construction work in safe manner.

291. **Alex Lopez** and **ALX-GC** undertook to demolish the **1778 Frankford Avenue** and excavate the **1778 Frankford Avenue** construction site, owed a duty to the residents of the adjoining two buildings on either side of **1778 Frankford Avenue** and perform the construction work workman like manner, protect the safety of the neighbors' and avoid injury to neighbors' property and neighbors.

292. **Alex Lopez** and **ALX-GC** knew or should have known that the soil at the **1778 Frankford Avenue** construction site should excavated deeper than the **1780 Frankford Avenue** foundation footings.

293. **Alex Lopez** and **ALX-GC** knew or should have known that the risk of collapse of **1780 Frankford Avenue,** if the excavation of the soil **1778 Frankford Avenue** construction site undermine the foundation of **1780 Frankford Avenue**.

294. **Alex Lopez** and **ALX-GC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** increased when excavating the soil without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue**.

295. **Alex Lopez** and **ALX-GC** having reviewed the **1778 Frankford Avenue** floor plans, knew should have known that the soil at the **1778 Frankford Avenue** needs to excavate deeper than the **1780 Frankford Avenue'** foundation footings.

296. **Alex Lopez** and **ALX-GC** knew or should have known the risk of collapse of **1780 Frankford Avenue** during the excavation at **1778 Frankford Avenue,** if excavation activity at **1778 Frankford Avenue** undermines the foundation of **1780 Frankford Avenue.**

297. **Alex Lopez** and **ALX-GC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** increased, if the soil at **1778 Frankford Avenue** excavated without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue.**

298. **Alex Lopez** and **ALX-GC** knew or should have known that the **1778 Frankford Avenue** construction site should adequately inspect for hazardous and dangerous conditions. **Dan Achek** knew or should have known that to plan adequately, plot and supervise the construction work.

299. **Alex Lopez** and **ALX-GC** knew or should have known that to co-ordinate with other entities and subcontractors, including, but not limited to, **Alex Lopez, Juliet Whelan** and **City of Philadelphia.**

300. **Alex Lopez** and **ALX-GC** knew or should have known that to train properly his employees. **Alex Lopez** and **ALX-GC** knew or should have known that to properly train and instruct the employees of sub contractors on the construction site. **Alex Lopez** and **ALX-GC** knew or should have known that to hire competent employees, safety inspectors and sub contractors.

301. **Alex Lopez** and **ALX-GC** knew or should have known that to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans at **1778 Frankford Avenue** construction site.

302. **Alex Lopez** and **ALX-GC** knew or should have known that to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services were supplied and furnished. **Alex Lopez** and **ALX-GC** knew or should have known that to adopt, enact and enforce proper work rules and procedures.

303. **Alex Lopez** and **ALX-GC** knew or should have known that to supervise properly the construction work. **ADC** knew or should have known that to perform safety task analysis.

304. **Alex Lopez** and **ALX-GC** knew or should have known that **1778 Frankford Avenue** construction site require a policy and **Alex Lopez** and **ALX-GC** enforce such policy that required all workers to sign off on safety rules. **Alex Lopez** and **ALX-GC** knew or should have known that to implement and enforce an adequate protection and safety plan. **Alex Lopez** and **ALX-GC** knew or should have known that to train properly employees and the employees of the sub contractors on construction safety.

305. **Alex Lopez** and **ALX-GC** and his respective agents, subcontractors, workers and /or employees knew or should have known that to carry the construction work in a safe manner at **1778 Frankford Avenue**.

306. **Alex Lopez** and **ALX-GC** knew or should have known that to obey the applicable OSHA regulations including the sections applicable to demolition. **Alex Lopez** and **ALX-GC** knew or should have known that to comply with federal and state statues, local ordinances and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work.

307. **Alex Lopez** and **ALX-GC** knew or should have known that to comply with Uniform Building Code pertaining with the excavation of foundations. **Alex Lopez** and **ALX-GC** knew or should have known that to comply with association of general contractor's manual as it related to the excavation of foundations.

308. **Alex Lopez** and **ALX-GC** knew or should have known that to comply with national association of demolition contractor's manual as it related to the excavation of foundations.

309. **Alex Lopez** and **ALX-GC** knew or should have known that to consider the implications of excavating adjacent to the rubble stone foundation of an approximately 80 to 90 year old three-story building. **Alex Lopez** and **ALX-GC** knew or should have known that excavating soil using heavy machinery would undermine the foundation of the party wall between **1778 Frankford Avenue** and **1780 Frankford Avenue**. **Dan Achek** knew or should have known that to hire prudent subcontractors.

310. **Alex Lopez** and **ALX-GC** failed to inspect the construction site adequately for hazardous and conditions. **Alex Lopez** and **ALX-GC** failed to plan adequately, plot and supervise the construction work.

311. **Alex Lopez** and **ALX-GC** failed to co-ordinate with other entities and subcontractors, including, but not limited to, **Dan Achek , Juliet Whelan** and **City of Philadelphia. ADC** failed to train properly his employees. **Alex Lopez** and **ALX-GC** failed to properly train and instruct the employees of sub contractors on the construction site. **Alex Lopez** and **ALX-GC** failed to hire competent employees, safety inspectors and sub contractors.

312. **Alex Lopez** and **ALX-GC** failed to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans.

313. **Alex Lopez** and **ALX-GC** failed to perform or furnish construction services in conformity with the standard of care in the construction industry at the time the services supplied and furnished. **ADC** failed to adopt, enact and enforce proper work rules and procedures. **ADC** performed and furnished the construction services in a wholly inadequate and negligent manner.

314. **Alex Lopez** and **ALX-GC** failed to properly supervise the construction work. **ADC** failed to perform safety task analysis. **Alex Lopez** and **ALX-GC** failed to enforce a policy that required all workers to sign off on safety rules. **Alex Lopez** and **ALX-GC** failed to implement and or enforce an adequate safety and protection plan. **Alex Lopez** and **ALX-GC** failed to properly train employees and the employees of the sub contractors on construction safety.

315. **Alex Lopez** and **ALX-GC** and his respective agents, subcontractors, workers and /or employees failed to carry the construction work in a safe manner at **1778 Frankford Avenue**. **ADC** violated applicable OSHA regulations including the sections applicable to demolition.

316. **Alex Lopez** and **ALX-GC** violated and failed to comply with federal and state statues, local ordinances and all other rules, enactments or regulations applicable or in effect, be they administrative, industry wide or otherwise pertaining to the performance of construction work. **Alex Lopez** and **ALX-GC** failed to hire prudent subcontractors.

317. **Alex Lopez** and **ALX-GC** violated or failed to comply Uniform Building Code pertaining with the excavation of foundations. **Alex Lopez** and **ALX-GC** violated or failed to comply with association of general contractor's manual as it related to the excavation of foundations. **Alex Lopez** and **ALX-GC** violated or failed to comply with national association of demolition contractors manual as it related to the excavation of foundations.

318.  **Alex Lopez** and **ALX-GC** failed to consider the implications of excavating adjacent to the rubble stone foundation of a approximately 80 to 90 year old three story building. **Alex Lopez** and **ALX-GC** permitted his employees, sub contractors to excavate the soil using heavy machinery and undermine the foundation of the party wall between **1778 Frankford Avenue** and **1780 Frankford Avenue**. **Alex Lopez** and **ALX-GC** failed to excavate the soil without undermine the foundation of **1780 Frankford Avenue** apartment building.

319.  By the aforementioned **Alex Lopez** and **ALX-GC** ' carelessness and negligence, **Plaintiff** and **1782 Frankford Avenue** suffered damage, incurred significant expense to rectify the damage, paid additional interest charges towards construction loan, lost rental income, missed an opportunity to convert the construction loan into a permanent mortgage.

320.  WHEREFORE, given that the **Alex Lopez** and **ALX-GC** breached the duty of care and such that negligence was the proximate cause of damage to the **Plaintiff**.

321.  Because of **Alex Lopez** and **ALX-GC** ' negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

322.  WHEREFORE, **Plaintiff** prays this Honorable Court for the entry of a judgment in **Plaintiff**' favor and against **Alex Lopez** and **ALX-GC** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

**(XIV)** **SECOND CAUSE OF ACTION - GROSS NEGLIGENCE AGAINST ALEX LOPEZ AND ALX-GC**

323.   **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

324.   **Alex Lopez** and **ALX-GC** knew that **Dan Achek** and **Maya Maha Elkansa** applied for zoning use and building permit to construct seven (7) condominiums, two(2) dwelling units on each 1st, 2nd and 3rd floors and one (1) dwelling unit in the basement of **1778 Frankford Avenue.** **Alex Lopez** and **ALX-GC** knew or should have known that the soil at the **1778 Frankford Avenue** construction site should excavate deeper than the **1780 Frankford Avenue** foundation footings.

325.   **Alex Lopez** and **ALX-GC** owed a duty to the residents of the adjoining two buildings on either side of **1778 Frankford Avenue**, and perform the construction work in a fashion like "workman like manner", protect the safety of the neighbors' and avoid injury to neighbors' property and neighbors.

326.   **Alex Lopez** and **ALX-GC** had a duty to intimate City of Philadelphia prior to starting demolition and excavation work, checking the weather conditions on the day of the work in advance and carry out the construction work in safe manner.

327.   **Alex Lopez** and **ALX-GC** knew or should have known of the risk of collapse of **1780 Frankford Avenue** apartment building during excavation of the soil by undermining the foundation of **1780 Frankford Avenue.**

328. **Alex Lopez** and **ALX-GC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** apartment building increased when excavating the soil without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue**.

329. **Alex Lopez** and **ALX-GC** knew or should have known that that the excavation work at **1778 Frankford Avenue** should performed as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

330. **Alex Lopez** and **ALX-GC** knew that if the excavation work performed as explained in the **Annexure - I, Annexure - II, & Annexure – III**, the time and cost of the work would offset the advantage of having a unit in the basement. Having know that this fact, **ADC** choose to not to perform the excavation work as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

331. **Alex Lopez** and **ALX-GC** deliberately accepted to carry out and perform the demolition work at **1778 Frankford Avenue** while **Alex Lopez** and **ALX-GC** does not have experience as outlined in the **Annexure - I, Annexure - II, & Annexure – III .**

332. **Alex Lopez** and **ALX-GC** deliberately accepted to carry out and perform the excavation work at **1778 Frankford Avenue** while **Alex Lopez** and **ALX-GC** does not have experience as outlined in the **Annexure - I, Annexure - II, & Annexure – III .**

333. **Alex Lopez** and **ALX-GC** deliberately started the demolition and excavation work at **1778 Frankford Avenue** without intimating **City of Philadelphia**, because **Alex Lopez** and **ALX-GC** knew that **City of Philadelphia** would insist to comply and enforce the Uniform Building Code pertaining to the excavation of foundations.

334. It is reasonable to foresee that by failing to do the following, a building, as **1780 Frankford Avenue** will collapse and cause damages to **1782 Frankford Avenue.**

    i). by failing to hire an experienced contractor to carry demolition and excavation work;

    ii). by failing to intimate City of Philadelphia prior to starting demolition and excavation work;

    iii). by failing to check the weather conditions on the day of the work in advance;

    iv). by failing to carry out the construction work in safe manner;

335. **Alex Lopez** and **ALX-GC** deliberately violated or failed to comply with association of general contractor's manual as it related to the excavation of foundations.

336. **Alex Lopez** and **ALX-GC** deliberately collapsed the building, because **Dan Achek** and **ADC** felt it is cheaper to collapse the building and pay the penalties imposed by City of Philadelphia.

337. **Alex Lopez** and **ALX-GC** deliberately breached their duty to carry construction work in safe manner and recklessly failing to underpin and shore the party walls of **1780 Frankford Avenue**.

338. **Alex Lopez** and **ALX-GC** ' wanton, willful and reckless disregard to the safety of the neighbors, in particular **Alex Lopez** and **ALX-GC** ' failure to hire experienced contractor to carry demolition and excavation work; intimate City of Philadelphia prior to starting demolition and excavation work; checking the weather conditions on the day of the work in advance; and carry out the construction work in safe manner or any other reasonable safety precautions to protect the neighbors and neighbor's property; caused damages to **1782 Frankford Avenue** building and caused continuing injuries to the **Plaintiff.**

339. Therefore, given that the **Alex Lopez** and **ALX-GC** breached the duty of care and such that gross negligence was the proximate cause of damage to the **Plaintiff.**

340. Because of **Alex Lopez** and **ALX-GC** gross negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

341. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in **Plaintiff**' favor and against **Alex Lopez** and **ALX-GC** in the sum not less than $618,000 (Six hundred eighteen thousand dollars) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XV) THIRD CAUSE OF ACTION - EMOTIONAL DISTRESS AGAINST ALEX LOPEZ AND ALX-GC :

342. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

343. **Alex Lopez** and **ALX-GC** knew that **Dan Achek** and **Maya Maha Elkansa** applied for zoning use and building permit to construct seven (7) condominiums, two(2) dwelling units on each 1st, 2nd and 3rd floors and one (1) dwelling unit in the basement of **1778 Frankford Avenue.** **Alex Lopez** and **ALX-GC** knew or should have known that the soil at the **1778 Frankford Avenue** construction site should excavate deeper than the **1780 Frankford Avenue** foundation footings.

344. **Alex Lopez** and **ALX-GC** owed a duty to the residents of the adjoining two buildings on either side of **1778 Frankford Avenue**, and perform the construction work in a fashion like "workman like manner", protect the safety of the neighbors' and avoid injury to neighbors' property and neighbors.

345. **Alex Lopez** and **ALX-GC** had a duty to hire experienced contractor to carry demolition and excavation work, intimate City of Philadelphia prior to starting demolition and excavation work, checking the weather conditions on the day of the work in advance and carry out the construction work in safe manner.

346. **Alex Lopez** and **ALX-GC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** during excavating the soil at **1778 Frankford Avenue** would undermine the foundation of **1780 Frankford Avenue**.

347. **Alex Lopez** and **ALX-GC** knew or should have known that the risk of collapse of **1780 Frankford Avenue** apartment building increased when excavating the soil without shoring the **1780 Frankford Avenue** party wall and without underpinning the foundation of **1780 Frankford Avenue** apartment building.

348. **Alex Lopez** and **ALX-GC** knew or should have known that that the excavation work at **1778 Frankford Avenue** should perform as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

349. **Alex Lopez** and **ALX-GC** knew that if the excavation work performed as explained in the **Annexure - I, Annexure - II, & Annexure – III**, the time and cost of the work would offset the advantage of having a unit in the basement. Having know that this fact, **Dan Achek** and **Maya Maha Elkansa** choose to not to perform the excavation work as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

350. **Alex Lopez** and **ALX-GC** intentionally, deliberately, wantonly, and willfully collapsed the building, because it is cheaper to **ADC** to collapse the **1780 Frankford Avenue** and pay the penalties imposed by City of Philadelphia, rather carry the demolition and excavation work as explained in the **Annexure - I, Annexure - II, & Annexure – III.**

351. **Alex Lopez** and **ALX-GC** intentionally, deliberately, wantonly, and willfully started the demolition and excavation work at **1778 Frankford Avenue** without informing the **City of Philadelphia,** because **ADC** knew that **City of Philadelphia** would insist to comply and enforce the Uniform Building Code pertaining to the excavation of foundations.

352. **Alex Lopez** and **ALX-GC** intentionally, deliberately, wantonly, and willfully hired a sub contractor who does not have an experience to carry out and perform the excavation work as explained in the **Annexure - I, Annexure - II, & Annexure – III,** because, **Dan Achek** and **Maya Maha Elkansa** felt that it is expensive to follow the rules and easy to flout the rules.

353. **Alex Lopez** and **ALX-GC** intentionally, deliberately, wantonly, and willfully violated or failed to comply with Association of General Contractor's manual as it related to the excavation of foundations; intentionally, deliberately, wantonly, and willfully violated or failed to comply Uniform Building Code pertaining to the excavation of foundations;

354. **Alex Lopez** and **ALX-GC** intentionally, deliberately, wantonly, and willfully breached their duty to carry construction work in safe manner, recklessly violated, and failed to underpin and shore the party walls of **1780 Frankford Avenue**.

355. **Alex Lopez** and **ALX-GC '** intentional, deliberate, wanton, willful negligent and reckless violations caused a complete collapse of **1780 Frankford Avenue** and subsequently caused irreparable personal damage and emotional distress to Plaintiff and Plaintiff's property.

356. By the reason of **Alex Lopez** and **ALX-GC '** deliberate, wanton, willful, negligent and reckless actions and violations with reckless disregard for the safety of their neighbors' at **1778 Frankford Avenue**, **1782 Frankford Avenue** and **Plaintiff** suffered emotional distress, pain and suffering, continuing injury, bills and related costs to rectify the damages and lost work time and income. The long-term effects of **Plaintiff's** injuries continue to manifest themselves.

357. **Alex Lopez** and **ALX-GC '** extreme and outrageous conduct was the cause for the emotional distress to **Plaintiff.** By the reason of **Alex Lopez** and **ALX-GC '** extreme and outrageous, conduct, **Plaintiff** suffered severe emotional distress.

358. Therefore, given that, the **Alex Lopez** and **ALX-GC** breached the duty of care and intentional, deliberate, wanton, willful, negligent and reckless actions, violations and disregard to the safety of their neighbors' was the proximate cause of severe emotional distress to the **Plaintiff.**

359. Because**, Alex Lopez** and **ALX-GC '** breached the duty of care was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

360. WHEREFORE, **Plaintiff** prays this Honorable Court for an entry of a judgment in **Plaintiff**' favor and against **Alex Lopez** and **ALX-GC** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages for delay pursuant to Pa R.C.P 238, exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XVI) FIRST CAUSE OF ACTION – NEGLIGENCE AGAINST HENRY LANGSAM AND BART SACKS:

361. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

362. **Henry Langsam** and **Bart Sacks** are dominant partners/shareholders of **S & L Investments. Henry Langsam** and **Bart Sacks** used **S&L Investments** as a mere facade for their real estate business operations.

363. **Henry Langsam** and **Bart Sacks** neglected to treat the building for asbestos and post a safety precautionary notice. While 1780 Frankford Ave building collapsed, the asbestos and residual lead from the **1780 Frankford Ave** contaminated the **1782 Frankford Ave.** As per OSHA regulations, every pre-1981 structure must be treated as if it does contain asbestos, because exposure to asbestos cause Mesothelioma, Lung Cancer, Larynx Cancer, Esophageal Cancer, and Colon Cancer.

364. **Henry Langsam** and **Bart Sacks** neglected to treat the treat the **1780 Frankford Ave** foundation with water proofing material and this caused to decay the **1780 Frankford Ave** building foundation and collapsed for slightest disturbance in the soil. As per 2006 ICC Building code and Philadelphia Building code, **Henry Langsam** and **Bart Sacks** must treat the foundations with water proofing material to avoid rot and decay.

365. **Henry Langsam** and **Bart Sacks** profited by renting the five (5) apartments at 1780 Frankford Ave and as partners and operators of **S & L Investments**, **Henry Langsam** and **Bart Sacks** received insurance loss claim money towards the damage of the 1780 Frankford Ave.

366. **Henry Langsam** insisted upon **Plaintiff** to sign a waiver of liability and indemnification for any damage including costs and attorneys fees to install scaffolding in the back yard of the **1780 Frankford Ave** to stucco the south sidewall of **1782 Frankford Ave.** **Henry Langsam** and **Bart Sacks** negotiated with **Plaintiff** to sell the **1780 Frankford Ave** prior and after collapse of the building as a building and as a vacant lot.

367. **Henry Langsam** and **Bart Sacks** as dominant partners/shareholders in **S&L Investments** sold **1778 Frankford Ave** and negotiated to sell the **1780 Frankford Ave** to **Dan Achek** and **Maya Maha Elkansa**. **Henry Langsam** and **Bart Sacks** fully aware about **Dan Achek** and **Maya Maha Elkansa'** development plans for **1778 Frankford Ave**.

368. **Henry Langsam** and **Bart Sacks** knew that **1780 Frankford Ave** and **1782 Frankford Ave** building shared the party wall and its foundation. Similarly, **Henry Langsam** and **Bart Sacks** knew that **1778 Frankford Ave** and **1780 Frankford Ave** building shared the party wall and its foundation.

369. Between 2nd week of August 2008 and 2nd week of September 2008, **Dan Achek** and **Alex Lopez** used heavy engineering equipment to demolish and excavate the **1778 Frankford Ave**. Between 2nd week of August 2008 and 2nd week of September 2008, **Henry Langsam** and **Bart Sacks** collected rental checks from the tenants of 1780 Frankford Ave.

370. As per common law duty, **Henry Langsam** and **Bart Sacks** have the following duties of care:

   i). Protect the lives of tenants and adjoining properties by taking all necessary precautions including by asking **Dan Achek , Maya Maha Elkansa** and **ADC** to employ safety standards to protect the **1780 Frankford Avenue.**

   ii). Protect, maintain and sustain t**he** party wall betwe**en 1780 Frankford Avenue** an**d 1782 Frankford Avenue.**

   iii). Protect the foundation of the party wall betwee**n 1780 Frankford Avenue** and **1782 Frankford Avenue**.

   iv). Rebuild or support the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue.**

371. **Henry Langsam** and **Bart Sacks** knew or should have known from experience that there is likelihood that a new building will be erected at **1778 Frankford Ave**, because recently **Plaintiff** constructed a new building at **1782 Frankford Ave** and **Henry Langsam** expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1782 Frankford Ave**. Similarly, **Henry Langsam** and **Bart Sacks** should have expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1778 Frankford Ave**

372. **Henry Langsam** and **Bart Sacks** knew or should have known that **Dan Achek** , **Maya Maha Elkansa** and **ADC** conducting the demolition and excavation activity pose an imminent danger to **1780 Frankford Ave** building and should have protected the **1780 Frankford Ave** building out of collapse.

373. **Henry Langsam** and **Bart Sacks** knew or should have known to insist **Dan Achek** and **Maya Maha Elkansa** to sign a waiver of liability and indemnification for any damage including costs and attorneys fees to undermine the foundation of **1780 Frankford Ave**.

374. **Henry Langsam** and **Bart Sacks** knew or should have known the dangerous condition to the **1780 Frankford Avenue**, because the building was more than 80-year-old-plus property and built on simple stone foundation.

375. **Henry Langsam** and **Bart Sacks** knew or should have known that due to the building height restrictions, often developers dig the cellars deep to get more usable space even bellow the stone foundation and hit dirt.

376. **Henry Langsam** and **Bart Sacks** knew or should have known that during August and September months there is a chance of heavy down pour and even little bit of rain, wash out the dirt under the foundation and could cause to collapse the **1780 Frankford Ave** building.

377. **Henry Langsam** and **Bart Sacks** knew or should have known that they should take all necessary precautions including demanding the **Dan Achek** , **Maya Maha Elkansa** and **ADC** to employ safe demolition and excavation standards to protect the **1780 Frankford Ave**.

378.  **Henry Langsam** and **Bart Sacks** should reasonably have appreciated the danger to the **Plaintiffs'** property from the dry rot and from the lack of repair of the **1780 Frankford Ave.**

379.  **Henry Langsam** and **Bart Sacks** knew or should have known that the precarious state of **1780 Frankford Ave** building and **Henry Langsam** and **Bart Sacks** should have reasonably taken some steps, to prevent the damage occurring to **1782 Frankford Ave**.

380.  Between 2nd week of August 2008 and 2nd week of September 2008, **Henry Langsam** and **Bart Sacks** or their authorized property maintenance company failed to inform to intervene and insist **Dan Achek , Maya Maha Elkansa** and **ADC** to employ safety standards to protect the **1780 Frankford Avenue.**

381.  **Henry Langsam** and **Bart Sacks** maintained the property in such a condition that, even door bells are not working. On 13th September 2008, the day of the accident, rescue workers through rocks towards the windows of the **1780 Frankford Ave** building to alert the inmates of the four apartments. **Henry Langsam** and **Bart Sacks** allowed deteriorating the **1780 Frankford Ave** building badly, such that **1780 Frankford Ave** collapses even for a slightest disturbance.

382.  **Henry Langsam** and **Bart Sacks** are non-compliance to the 2006 ICC Building Code and OSHA regulations and knew or should have known that such non-compliance tantamount to negligence, recklessness, and endangerment to the public safety.

383.  **Henry Langsam** and **Bart Sacks** knew or should have known that such non-compliance to the OSHA regulations and 2006 ICC Building Code could cause to collapse of **1780 Frankford Ave**, displace the five (5) tenants and cause serious injury to the **1782 Frankford Ave**.

384. **Henry Langsam** and **Bart Sacks** are aware about the OSHA and 2006 ICC Building code, but choose not to meet the requirements at the expense of the public safety.

385. As per common law duty, **Henry Langsam** and **Bart Sacks** are liable to the **Plaintiff** for damages caused by dangerous conditions existing at the time the **1780 Frankford Avenue** building collapsed for the following reasons:

    i). There is a hidden dangerous condition to the **1780 Frankford**, of which **Henry Langsam** and **Bart Sacks** are aware, but the **Plaintiff** is not.

    ii). The **1780 Frankford Avenue** building shared the foundation of the party wall with **1782 Frankford Avenue**.

    iii). The **1780 Frankford Avenue** is still in control of the **Henry Langsam** and **Bart Sacks.**

    iv). **Henry Langsam** and **Bart Sacks** negligently breached the duty of care towards the **1782 Frankford Avenue.**

386. Plaintiff has notified **Henry Langsam** and **Bart Sacks**, that the **1780 Frankford Ave** building collapse cause serious damage to **1782 Frankford Ave**. **Henry Langsam** and **Bart Sacks** failed to respond to the Plaintiff's requests for compensation for the damages to the **1782 Frankford Avenue** building caused by the collapse of **1780 Frankford Avenue**.

387. **Henry Langsam** and **Bart Sacks** claimed loss and collected money through insurance loss claim for the damages to **1780 Frankford Ave**.

388. **Henry Langsam** and **Bart Sacks** must know to compensate the **Plaintiff** for the damages caused by the collapse of **1780 Frankford Ave** building to the **1782 Frankford Ave**, because **Henry Langsam** and **Bart Sacks** claimed loss from **Dan Achek** , **Maya Maha Elkansa** and **ADC**.

389. However, **Henry Langsam** and **Bart Sacks** failed to respond and further refused to compensate the damages to the **1782 Frankford Ave.**

390. **Henry Langsam** and **Bart Sacks** further wanted to maximize their profit through selling **1780 Frankford Avenue** vacant lot for $150,000 to the **Plaintiff** without paying compensation for the damages caused to the **1782 Frankford Avenue.**

391. **Henry Langsam** and **Bart Sacks** emotionally abused the **Plaintiff** by negotiating the vacant piece of land for $150,000, when Defendants received $600,000 towards the collapse of house from the insurance company, while rejecting to compensate the damages caused by **1780 Frankford Ave**. Further, **Henry Langsam** and **Bart Sacks** emotionally abused the Plaintiff by denying a duty to the **Plaintiff** to restore the damages to the **1782 Frankford Ave** within a reasonable time.

392. The damages caused due to collapse of **1780 Frankford Ave,** an inordinate delay to secure a Certificate of Occupancy (CO) to **1782 Frankford Ave** by **City of Philadelphia**. This inordinate delay caused emotional injury to the Plaintiff, such injury leads to the low productivity in Plaintiff' job and such low productivity caused to lose the job.

393. The recovery from the emotional injury may take longer than to recover from a limb injury and the effects of emotional injury is far greater than the limb injury. Further, the cost to restore emotional injury is much higher than the injured limb.

394. Further, **Henry Langsam** and **Bart Sacks** did not provide the following information:

    i). **S&L Investments** adequately capitalized or not.

    ii). Assets of **S&L Investments** diverted after the collapse of the **1780 Frankford Ave** or not.

    iii). **S&L Investments** is solvent or not.

    iv). **S&L Investments** and its members/shareholder/partners commingled the funds or not.

    v). **S&L Investments** and its members/shareholder/partners maintained an arm's length relationship between **S&L Investments** and their other related entities.

395. Hence, **Henry Langsam** and **Bart Sacks** breached duty of care to take the minimum necessary precautions to protect the **1780 Frankford Ave** building from collapse and further failed to compensate for the damages caused by **1780 Frankford Ave**.

396. WHEREFORE, given that the **Henry Langsam** and **Bart Sacks** breached their duty of care and such that negligence was the proximate cause of damage to the Plaintiff.

397. Because**, Henry Langsam** and **Bart Sacks** negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

398. WHEREFORE, **Plaintiff** prays this Honorable Court for an entry of a judgment in **Plaintiff'** favor and against **Henry Langsam** and **Bart Sacks** in the sum not less than $618,000 (Six hundred eighteen thousand dollars) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XVII) SECOND CAUSE OF ACTION – GROSS NEGLIGENCE AGAINST HENRY LANGSAM AND BART SACKS:

399. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

400. **Henry Langsam** and **Bart Sacks** are dominant partners/shareholders of **S & L Investments. Henry Langsam** and **Bart Sacks** used **S&L Investments** as a mere facade for their real estate business operations.

401. **Henry Langsam** and **Bart Sacks** neglected to treat the building for asbestos and post a safety precautionary notice. While 1780 Frankford Ave building collapsed the asbestos and residual lead from the **1780 Frankford Ave** contaminated the **1782 Frankford Ave.** As per OSHA regulations, every pre-1981 structure must be treated as if it does contain asbestos, because exposure to asbestos cause Mesothelioma, Lung Cancer, Larynx Cancer, Esophageal Cancer, and Colon Cancer.

402. **Henry Langsam** and **Bart Sacks** neglected to treat the treat the **1780 Frankford Ave** foundation with water proofing material and this caused to decay the **1780 Frankford Ave** building foundation and collapsed for slightest disturbance in the soil. As per 2006 ICC Building code and Philadelphia Building code, **Henry Langsam** and **Bart Sacks** must treat the foundations with water proofing material to avoid rot and decay.

403. **Henry Langsam** and **Bart Sacks** profited by renting the five (5) apartments at 1780 Frankford Ave and as partners and operators of **S & L Investments**, **Henry Langsam** and **Bart Sacks** received insurance loss claim money towards the damage of the 1780 Frankford Ave.

404. **Henry Langsam** insisted upon **Plaintiff** to sign a waiver of liability and indemnification for any damage including costs and attorneys fees to install scaffolding in the back yard of the **1780 Frankford Ave** to stucco the south sidewall of **1782 Frankford Ave.** **Henry Langsam** and **Bart Sacks** negotiated with **Plaintiff** to sell the **1780 Frankford Ave** prior and after collapse of the building as a building and as a vacant lot.

405. **Henry Langsam** and **Bart Sacks** as dominant partners/shareholders in **S&L Investments** sold **1778 Frankford Ave** and negotiated to sell the **1780 Frankford Ave** to **Dan Achek** and **Maya Maha Elkansa.** **Henry Langsam** and **Bart Sacks** fully aware about **Dan Achek** and **Maya Maha Elkansa'** development plans for **1778 Frankford Ave**.

406. **Henry Langsam** and **Bart Sacks** knew that **1780 Frankford Ave** and **1782 Frankford Ave** building shared the party wall and its foundation. Similarly, **Henry Langsam** and **Bart Sacks** knew that **1778 Frankford Ave** and **1780 Frankford Ave** building shared the party wall and its foundation.

407. Between 2nd week of August 2008 and 2nd week of September 2008, **Dan Achek** and **Alex Lopez** used heavy engineering equipment to demolish and excavate the **1778 Frankford Ave**. Between 2nd week of August 2008 and 2nd week of September 2008, **Henry Langsam** and **Bart Sacks** collected rental checks from the tenants of 1780 Frankford Ave.

408. As per common law duty, **Henry Langsam** and **Bart Sacks** have the following duties of care:

   i).   Protect the lives of tenants and adjoining properties by taking all necessary precautions including by asking **Dan Achek , Maya Maha Elkansa and ADC** to employ safety standards to protect the **1780 Frankford Avenue**

   ii).  Protect, maintain and sustain the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue**

   iii). Protect the foundation of the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue**

   iv).  Rebuild or support the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue.**

409.  **Henry Langsam**  an**d Bart Sacks** knew or should have known from experience that there is likelihood that a new building will be erected a**t 1778 Frankford Ave**, because recentl**y Plaintiff** constructed a new building a**t 1782 Frankford Ave** an**d Henry Langsam**  expressed and anticipated danger t**o 1780 Frankford Ave** building due to activity a**t 1782 Frankford Ave**.  Similarl**y, Henry Langsam**  an**d Bart Sacks** should have expressed and anticipated danger t**o 1780 Frankford Ave** building due to activity a**t 1778 Frankford Ave**.

410.  **Henry Langsam**  and **Bart Sacks** knew or should have known that **Dan Achek** , **Maya Maha Elkansa** and **ADC** conducting the demolition and excavation activity pose an imminent danger to **1780 Frankford Ave** building and should have protected the **1780 Frankford Ave** building out of collapse.

411.  **Henry Langsam**  and **Bart Sacks** knew or should have known to insist **Dan Achek**  and **Maya Maha Elkansa** to sign a waiver of liability and indemnification for any damage including costs and attorneys fees to undermine the foundation of **1780 Frankford Ave**.

412.  **Henry Langsam**  and **Bart Sacks** knew or should have known the dangerous condition to the **1780 Frankford Avenue**, because the building was more than 80-year-old-plus property and built on simple stone foundation.

413.  **Henry Langsam**  and **Bart Sacks** knew or should have known that due to the building height restrictions, often developers dig the cellars deep to get more usable space even bellow the stone foundation and hit dirt.

414. **Henry Langsam** and **Bart Sacks** knew or should have known that during August and September months there is a chance of heavy down pour and even little bit of rain, wash out the dirt under the foundation and could cause to collapse the **1780 Frankford Ave** building.

415. **Henry Langsam** and **Bart Sacks** knew or should have known that they should take all necessary precautions including demanding the **Dan Achek** , **Maya Maha Elkansa** and **ADC** to employ safe demolition and excavation standards to protect the **1780 Frankford Ave**.

416. **Henry Langsam** and **Bart Sacks** should reasonably have appreciated the danger to the **Plaintiffs'** property from the dry rot and from the lack of repair of the **1780 Frankford Ave.**

417. **Henry Langsam** and **Bart Sacks** knew or should have known that the precarious state of **1780 Frankford Ave** building and **Henry Langsam** and **Bart Sacks** should have reasonably taken some steps, to prevent the damage occurring to **1782 Frankford Ave**.

418. Between 2nd week of August 2008 and 2nd week of September 2008, **Henry Langsam** and **Bart Sacks** or their authorized property maintenance company failed to inform to intervene and insist **Dan Achek , Maya Maha Elkansa** and **ADC** to employ safety standards to protect the **1780 Frankford Avenue.**

419. **Henry Langsam** and **Bart Sacks** maintained the property in such a condition that, even door bells are not working. On 13th September 2008, the day of the accident, rescue workers through rocks towards the windows of the **1780 Frankford Ave** building to alert the inmates of the four apartments. **Henry Langsam** and **Bart Sacks** allowed deteriorating the **1780 Frankford Ave** building badly, such that **1780 Frankford Ave** collapses even for a slightest disturbance.

420. **Henry Langsam** and **Bart Sacks** are non-compliance to the 2006 ICC Building Code and OSHA regulations and knew or should have known that such non-compliance tantamount to negligence, recklessness, and endangerment to the public safety.

421. **Henry Langsam** and **Bart Sacks** knew or should have known that such non-compliance to the OSHA regulations and 2006 ICC Building Code could cause to collapse of **1780 Frankford Ave**, displace the five (5) tenants and cause serious injury to the **1782 Frankford Ave**.

422. **Henry Langsam** and **Bart Sacks** are aware about the OSHA and 2006 ICC Building code, but choose not to meet the requirements at the expense of the public safety.

423. As per common law duty, **Henry Langsam** and **Bart Sacks** are liable to the **Plaintiff** for damages caused by dangerous conditions existing at the time the **1780 Frankford Avenue** building collapsed for the following reasons:

   i). There is a hidden dangerous condition to the **1780 Frankford**, of which **Henry Langsam** and **Bart Sacks** are aware, but the **Plaintiff** is not.
   ii). The **1780 Frankford Avenue** building shared the foundation of the party wall with **1782 Frankford Avenue**.
   iii). The **1780 Frankford Avenue** is still in control of the **Henry Langsam** and **Bart Sacks.**
   iv). **Henry Langsam** and **Bart Sacks** negligently breached the duty of care towards the **1782 Frankford Avenue**.

424. **Plaintiff** has notified **Henry Langsam** and **Bart Sacks**, that the **1780 Frankford Ave** building collapse cause serious damage to **1782 Frankford Ave**. **Henry Langsam** and **Bart Sacks** failed to respond to the Plaintiff's requests for compensation for the damages to the **1782 Frankford Avenue** building caused by the collapse of **1780 Frankford Avenue**.

425. **Henry Langsam** and **Bart Sacks** claimed loss and collected money through insurance loss claim for the damages to **1780 Frankford Ave**.

426. **Henry Langsam** and **Bart Sacks** must know to compensate the **Plaintiff** for the damages caused by the collapse of **1780 Frankford Ave** building to the **1782 Frankford Ave**, because **Henry Langsam** and **Bart Sacks** claimed loss from **Dan Achek** , **Maya Maha Elkansa** and **ADC**.

427. However, **Henry Langsam** and **Bart Sacks** failed to respond and further refused to compensate the damages to the **1782 Frankford Ave.**

428. **Henry Langsam** and **Bart Sacks** further wanted to maximize their profit through selling **1780 Frankford Avenue** vacant lot for $150,000 to the **Plaintiff** without paying compensation for the damages caused to the **1782 Frankford Avenue.**

429. **Henry Langsam** and **Bart Sacks** emotionally abused the **Plaintiff** by negotiating the vacant piece of land for $150,000, when Defendants received $600,000 towards the collapse of house from the insurance company, while rejecting to compensate the damages caused by **1780 Frankford Ave**. Further, **Henry Langsam** and **Bart Sacks** emotionally abused the Plaintiff by denying a duty to the **Plaintiff** to restore the damages to the **1782 Frankford Ave** within a reasonable time.

430. The damages caused due to collapse of **1780 Frankford Ave,** an inordinate delay to secure a Certificate of Occupancy (CO) to **1782 Frankford Ave** by **City of Philadelphia**. This inordinate delay caused emotional injury to the Plaintiff, such injury leads to the low productivity in Plaintiff' job and such low productivity caused to lose the job.

431. The recovery from the emotional injury may take longer than to recover from a limb injury and the effects of emotional injury is far greater than the limb injury. Further, the cost to restore emotional injury is much higher than the injured limb.

432. Further, **Henry Langsam**  and **Bart Sacks** did not provide the following information:
   i). **S&L Investments** adequately capitalized or not.
   ii). Assets of **S&L Investments** diverted after the collapse of the **1780 Frankford Ave** or not.
   iii). **S&L Investments** is solvent or not.
   iv). **S&L Investments** and its members/shareholder/partners commingled the funds or not.
   v). **S&L Investments** and its members/shareholder/partners maintained an arm's length relationship between **S&L Investments** and their other related entities.

433. Hence, **Henry Langsam**  and **Bart Sacks** breached duty of care to take the minimum necessary precautions to protect the **1780 Frankford Ave** building from collapse and further failed to compensate for the damages caused by **1780 Frankford Ave**.

434. WHEREFORE, given that the **Henry Langsam**  and **Bart Sacks** breached their duty of care and such that gross negligence was the proximate cause of damage to the Plaintiff.

435. Because**, Henry Langsam** and **Bart Sacks** gross negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

436. WHEREFORE, **Plaintiff** prays this Honorable Court for an entry of a judgment in **Plaintiff'** favor and against **Henry Langsam** and **Bart Sacks,** in the sum not less than $618,000 (Six hundred eighteen thousand dollars) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XVIII) THIRD CAUSE OF ACTION – EMOTIONAL DISTRESS AGAINST HENRY LANGSAM  AND BART SACKS:

437. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

438. **Henry Langsam**  and **Bart Sacks** are dominant partners/shareholders of **S & L Investments.  Henry Langsam**  and **Bart Sacks** used **S&L Investments** as a mere facade for their real estate business operations.

439. **Henry Langsam**  and **Bart Sacks** neglected to treat the building for asbestos and post a safety precautionary notice. While 1780 Frankford Ave building collapsed, the asbestos and residual lead from the **1780 Frankford Ave** contaminated the **1782 Frankford Ave.** As per OSHA regulations, every pre-1981 structure must be treated as if it does contain asbestos, because exposure to asbestos cause Mesothelioma, Lung Cancer, Larynx Cancer, Esophageal Cancer, and Colon Cancer.

440. **Henry Langsam** and **Bart Sacks** neglected to treat the treat the **1780 Frankford Ave** foundation with water proofing material and this caused to decay the **1780 Frankford Ave** building foundation and collapsed for slightest disturbance in the soil. As per 2006 ICC Building code and Philadelphia Building code, **Henry Langsam** and **Bart Sacks** must treat the foundations with water proofing material to avoid rot and decay.

441. **Henry Langsam** and **Bart Sacks** profited by renting the five (5) apartments at 1780 Frankford Ave and as partners and operators of **S & L Investments**, **Henry Langsam** and **Bart Sacks** received insurance loss claim money towards the damage of the 1780 Frankford Ave.

442. **Henry Langsam** insisted upon **Plaintiff** to sign a waiver of liability and indemnification for any damage including costs and attorneys fees to install scaffolding in the back yard of the **1780 Frankford Ave** to stucco the south sidewall of **1782 Frankford Ave.** **Henry Langsam** and **Bart Sacks** negotiated with **Plaintiff** to sell the **1780 Frankford Ave** prior and after collapse of the building as a building and as a vacant lot.

443. **Henry Langsam** and **Bart Sacks** as dominant partners/shareholders in **S&L Investments** sold **1778 Frankford Ave** and negotiated to sell the **1780 Frankford Ave** to **Dan Achek** and **Maya Maha Elkansa**. **Henry Langsam** and **Bart Sacks** fully aware about **Dan Achek** and **Maya Maha Elkansa'** development plans for **1778 Frankford Ave**.

444. **Henry Langsam** and **Bart Sacks** knew that **1780 Frankford Ave** and **1782 Frankford Ave** building shared the party wall and its foundation. Similarly, **Henry Langsam** and **Bart Sacks** knew that **1778 Frankford Ave** and **1780 Frankford Ave** building shared the party wall and its foundation.

445. Between 2nd week of August 2008 and 2nd week of September 2008, **Dan Achek** and **Alex Lopez** used heavy engineering equipment to demolish and excavate the **1778 Frankford Ave**. Between 2nd week of August 2008 and 2nd week of September 2008, **Henry Langsam** and **Bart Sacks** collected rental checks from the tenants of 1780 Frankford Ave.

446. As per common law duty, **Henry Langsam** and **Bart Sacks** have the following duties of care:

    i). Protect the lives of tenants and adjoining properties by taking all necessary precautions including by asking **Dan Achek , Maya Maha Elkansa and ADC** to employ safety standards to protect the **1780 Frankford Avenue**

    ii). Protect, maintain and sustain the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue**

    iii). Protect the foundation of the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue**

    iv). Rebuild or support the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue**

447. **Henry Langsam** and **Bart Sacks** knew or should have known from experience that there is likelihood that a new building will be erected at **1778 Frankford Ave**, because recently **Plaintiff** constructed a new building at **1782 Frankford Ave** and **Henry Langsam** expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1782 Frankford Ave**. Similarly, **Henry Langsam** and **Bart Sacks** should have expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1778 Frankford Ave**.

448. **Henry Langsam** and **Bart Sacks** knew or should have known that **Dan Achek**, **Maya Maha Elkansa** and **ADC** conducting the demolition and excavation activity pose an imminent danger to **1780 Frankford Ave** building and should have protected the **1780 Frankford Ave** building out of collapse.

449. **Henry Langsam** and **Bart Sacks** knew or should have known to insist **Dan Achek** and **Maya Maha Elkansa** to sign a waiver of liability and indemnification for any damage including costs and attorneys fees to undermine the foundation of **1780 Frankford Ave**.

450. **Henry Langsam** and **Bart Sacks** knew or should have known the dangerous condition to the **1780 Frankford Avenue**, because the building was more than 80-year-old-plus property and built on simple stone foundation.

451. **Henry Langsam** and **Bart Sacks** knew or should have known that due to the building height restrictions, often developers dig the cellars deep to get more usable space even bellow the stone foundation and hit dirt.

452. **Henry Langsam** and **Bart Sacks** knew or should have known that during August and September months there is a chance of heavy down pour and even little bit of rain, wash out the dirt under the foundation and could cause to collapse the **1780 Frankford Ave** building.

453. **Henry Langsam** and **Bart Sacks** knew or should have known that they should take all necessary precautions including demanding the **Dan Achek** , **Maya Maha Elkansa** and **ADC** to employ safe demolition and excavation standards to protect the **1780 Frankford Ave**.

454. **Henry Langsam** and **Bart Sacks** should reasonably have appreciated the danger to the **Plaintiffs'** property from the dry rot and from the lack of repair of the **1780 Frankford Ave.**

455. **Henry Langsam** and **Bart Sacks** knew or should have known that the precarious state of **1780 Frankford Ave** building and **Henry Langsam** and **Bart Sacks** should have reasonably taken some steps, to prevent the damage occurring to **1782 Frankford Ave**.

456. Between 2nd week of August 2008 and 2nd week of September 2008, **Henry Langsam** and **Bart Sacks** or their authorized property maintenance company failed to inform to intervene and insist **Dan Achek , Maya Maha Elkansa** and **ADC** to employ safety standards to protect the **1780 Frankford Avenue.**

457. **Henry Langsam** and **Bart Sacks** maintained the property in such a condition that, even door bells are not working. On 13th September 2008, the day of the accident, rescue workers through rocks towards the windows of the **1780 Frankford Ave** building to alert the inmates of the four apartments. **Henry Langsam** and **Bart Sacks** allowed deteriorating the **1780 Frankford Ave** building badly, such that **1780 Frankford Ave** collapses even for a slightest disturbance.

458. **Henry Langsam** and **Bart Sacks** are non-compliance to the 2006 ICC Building Code and OSHA regulations and knew or should have known that such non-compliance tantamount to negligence, recklessness, and endangerment to the public safety.

459. **Henry Langsam** and **Bart Sacks** knew or should have known that such non-compliance to the OSHA regulations and 2006 ICC Building Code could cause to collapse of **1780 Frankford Ave**, displace the five (5) tenants and cause serious injury to the **1782 Frankford Ave**.

460. **Henry Langsam** and **Bart Sacks** are aware about the OSHA and 2006 ICC Building code, but choose not to meet the requirements at the expense of the public safety.

461. As per common law duty, **Henry Langsam** and **Bart Sacks** are liable to the **Plaintiff** for damages caused by dangerous conditions existing at the time the **1780 Frankford Avenue** building collapsed for the following reasons:

   i). There is a hidden dangerous condition to the **1780 Frankford**, of which **Henry Langsam** and **Bart Sacks** are aware, but the **Plaintiff** is not.

   ii). The **1780 Frankford Avenue** building shared the foundation of the party wall with **1782 Frankford Avenue**.

   iii). The **1780 Frankford Avenue** is still in control of the **Henry Langsam** and **Bart Sacks.**

   iv). **Henry Langsam** and **Bart Sacks** negligently breached the duty of care towards the **1782 Frankford Avenue**.

462. **Plaintiff** has notified **Henry Langsam** and **Bart Sacks**, that the **1780 Frankford Ave** building collapse cause serious damage to **1782 Frankford Ave**. **Henry Langsam** and **Bart Sacks** failed to respond to the Plaintiff's requests for compensation for the damages to the **1782 Frankford Avenue** building caused by the collapse of **1780 Frankford Avenue**.

463. **Henry Langsam** and **Bart Sacks** claimed loss and collected money through insurance loss claim for the damages to **1780 Frankford Ave**.

464. **Henry Langsam** and **Bart Sacks** must know to compensate the **Plaintiff** for the damages caused by the collapse of **1780 Frankford Ave** building to the **1782 Frankford Ave**, because **Henry Langsam** and **Bart Sacks** claimed loss from **Dan Achek**, **Maya Maha Elkansa** and **ADC**.

465. However, **Henry Langsam** and **Bart Sacks** failed to respond and further refused to compensate the damages to the **1782 Frankford Ave.**

466. **Henry Langsam** and **Bart Sacks** further wanted to maximize their profit through selling **1780 Frankford Avenue** vacant lot for $150,000 to the **Plaintiff** without paying compensation for the damages caused to the **1782 Frankford Avenue.**

467. **Henry Langsam** and **Bart Sacks** emotionally abused the **Plaintiff** by negotiating the vacant piece of land for $150,000, when Defendants received $600,000 towards the collapse of house from the insurance company, while rejecting to compensate the damages caused by **1780 Frankford Ave**. Further, **Henry Langsam** and **Bart Sacks** emotionally abused the Plaintiff by denying a duty to the **Plaintiff** to restore the damages to the **1782 Frankford Ave** within a reasonable time.

468. The damages caused due to collapse of **1780 Frankford Ave,** an inordinate delay to secure a Certificate of Occupancy (CO) to **1782 Frankford Ave** by **City of Philadelphia**. This inordinate delay caused emotional injury to the Plaintiff, such injury leads to the low productivity in Plaintiff' job and such low productivity caused to lose the job.

469. The recovery from the emotional injury may take longer than to recover from a limb injury and the effects of emotional injury is far greater than the limb injury. Further, the cost to restore emotional injury is much higher than the injured limb.

470. Further, **Henry Langsam** and **Bart Sacks** did not provide the following information:
    i). **S&L Investments** adequately capitalized or not.
    ii). Assets of **S&L Investments** diverted after the collapse of the **1780 Frankford Ave** or not.
    iii). **S&L Investments** is solvent or not.
    iv). **S&L Investments** and its members/shareholder/partners commingled the funds or not.
    v). **S&L Investments** and its members/shareholder/partners maintained an arm's length relationship between **S&L Investments** and their other related entities.

471. **Henry Langsam** and **Bart Sacks** intentionally, deliberately, wantonly, and willfully violated the OSHA and 2006 ICC Building code regulations.

472. **Henry Langsam** and **Bart Sacks** intentionally, deliberately, wantonly, and willfully breached their duty to restore the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue** and refused to compensate towards the loss to the **1782 Frankford Avenue.**

473. **Henry Langsam** and **Bart Sacks** intentional, deliberate, wanton, willful negligent and reckless violations caused a complete collapse of **1780 Frankford Avenue** and subsequently caused irreparable personal damage and emotional distress to Plaintiff and Plaintiff's property.

474. By the reason of **Henry Langsam** and **Bart Sacks'** deliberate, wanton, willful, negligent and reckless actions and violations with reckless disregard for the safety of **1782 Frankford Avenue, Plaintiff** suffered emotional distress, pain and suffering, continuing injury, bills and related costs to rectify the damages and lost work time and income. The long-term effects of **Plaintiff's** injuries continue to manifest themselves.

475. **Henry Langsam** and **Bart Sacks'** extreme and outrageous conduct was the cause for the emotional distress to **Plaintiff.** By the reason of **Henry Langsam** and **Bart Sacks'** extreme and outrageous, conduct, **Plaintiff** suffered severe emotional distress.

476. Therefore, given that, the **Henry Langsam** and **Bart Sacks** breached the duty of care and intentional, deliberate, wanton, willful, negligent and reckless actions, violations and disregard to the safety of their neighbors' was the proximate cause of severe emotional distress to the **Plaintiff.**

477. Because**, Henry Langsam** and **Bart Sacks'** breached the duty of care was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

478.    WHEREFORE, **Plaintiff** prays this Honorable Court for an entry of a judgment in **Plaintiff**' favor and against **Henry Langsam** and **Bart Sacks** in the sum not less than $618,000(Six hundred and eighteen thousand dollars) in damages for delay pursuant to Pa R.C.P 238, exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XIX)   FIRST CAUSE OF ACTION – NEGLIGENCE AGAINST S & L INVESTMENTS

479.    **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

480.    **S&L Investments** is the owner of the **1780 Frankford Ave. S&L Investments** neglected to treat the building for asbestos and post a safety precautionary notice. While 1780 Frankford Ave building collapsed the asbestos and residual lead from the **1780 Frankford Ave** contaminated the **1782 Frankford Ave.** As per OSHA regulations, every pre-1981 structure must be treated as if it does contain asbestos, because exposure to asbestos cause Mesothelioma, Lung Cancer, Larynx Cancer, Esophageal Cancer, and Colon Cancer.

481.    **S&L Investments** neglected to treat the treat the **1780 Frankford Ave** foundation with water proofing material and this caused to decay the **1780 Frankford Ave** building foundation and collapsed for slightest disturbance in the soil. As per 2006 ICC Building code and Philadelphia Building code, **S&L Investments** must treat the foundations with water proofing material to avoid rot and decay.

482. **S&L Investments** profited by renting the five (5) apartments at 1780 Frankford Ave and received insurance loss claim money towards the damage of the 1780 Frankford Ave.

483. **S&L Investments** knew that **1780 Frankford Ave** and **1782 Frankford Ave** building shared the party wall and its foundation. Similarly, **S&L Investments** knew that **1778 Frankford Ave** and **1780 Frankford Ave** building shared the party wall and its foundation.

484. Between 2nd week of August 2008 and 2nd week of September 2008, **Dan Achek** and **Alex Lopez** used heavy engineering equipment to demolish and excavate the **1778 Frankford Ave**. Between 2nd week of August 2008 and 2nd week of September 2008, **S&L Investments** collected rental checks from the tenants of 1780 Frankford Ave.

485. As per common law duty, **S&L Investments** have the following duties of care:

   i). Protect the lives of tenants and adjoining properties by taking all necessary precautions including by asking **Dan Achek , Maya Maha Elkansa and ADC** to employ safety standards to protect the **1780 Frankford Avenue**.

   ii). Protect, maintain and sustain the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue.**

   iii). Protect the foundation of the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue**.

   iv). Rebuild or support the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue.**

486. **S&L Investments** knew or should have known from experience that there is likelihood that a new building will be erected at **1778 Frankford Ave**, because recently **Plaintiff** constructed a new building at **1782 Frankford Ave** and **Henry Langsam** expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1782 Frankford Ave**. Similarly, **S&L Investments** should have expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1778 Frankford Ave**.

487. **S&L Investments** knew or should have known that **Dan Achek** , **Maya Maha Elkansa** and **ADC** conducting the demolition and excavation activity pose an imminent danger to **1780 Frankford Ave** building and should have protected the **1780 Frankford Ave** building out of collapse.

488. **S&L Investments** knew or should have known to insist **Dan Achek** and **Maya Maha Elkansa** to sign a waiver of liability and indemnification for any damage including costs and attorneys fees to undermine the foundation of **1780 Frankford Ave**.

489. **S&L Investments** knew or should have known the dangerous condition to the **1780 Frankford Avenue**, because the building was more than 80-year-old-plus property and built on simple stone foundation.

490. **S&L Investments** knew or should have known that due to the building height restrictions, often developers dig the cellars deep to get more usable space even bellow the stone foundation and hit dirt.

491. **S&L Investments** knew or should have known that during August and September months there is a chance of heavy down pour and even little bit of rain, washes out the dirt under the foundation and could cause to collapse the **1780 Frankford Ave** building.

492. **S&L Investments** knew or should have known that they should take all necessary precautions including demanding the **Dan Achek** , **Maya Maha Elkansa** and **ADC** to employ safe demolition and excavation standards to protect the **1780 Frankford Ave**.

493. **S&L Investments** should reasonably have appreciated the danger to the **Plaintiffs'** property from the dry rot and from the lack of repair of the **1780 Frankford Ave.**

494. **S&L Investments** knew or should have known that the precarious state of **1780 Frankford Ave** building and **S&L Investments** should have reasonably taken some steps, to prevent the damage occurring to **1782 Frankford Ave**.

495. Between 2nd week of August 2008 and 2nd week of September 2008, **S&L Investments** or their authorized property maintenance company failed to inform to intervene and insist **Dan Achek , Maya Maha Elkansa** and **ADC** to employ safety standards to protect the **1780 Frankford Avenue.**

496. **S&L Investments** maintained the property in such a condition that, even door bells are not working. On 13th September 2008, the day of the accident, rescue workers through rocks towards the windows of the **1780 Frankford Ave** building to alert the inmates of the four apartments. **Henry Langsam** and **Bart Sacks** allowed deteriorating the **1780 Frankford Ave** building badly, such that **1780 Frankford Ave** collapses even for a slightest disturbance.

497. **S&L Investments** are non-compliance to the 2006 ICC Building Code and OSHA regulations and knew or should have known that such non-compliance tantamount to negligence, recklessness, and endangerment to the public safety.

498. **S&L Investments** knew or should have known that such non-compliance to the OSHA regulations and 2006 ICC Building Code could cause to collapse of **1780 Frankford Ave**, displace the five (5) tenants and cause serious injury to the **1782 Frankford Ave**.

499. **S&L Investments** is aware about the OSHA regulations and 2006 ICC Building code, but chooses not to meet the requirements at the expense of the public safety.

500. As per common law duty, **S&L Investments** is liable to the **Plaintiff** for damages caused by dangerous conditions existing at the time the **1780 Frankford Avenue** building collapsed for the following reasons:

    i). There is a hidden dangerous condition to the **1780 Frankford**, of which **S&L Investments** is aware, but the **Plaintiff** is not.

    ii). The **1780 Frankford Avenue** building shared the foundation of the party wall with **1782 Frankford Avenue**.

    iii). The **1780 Frankford Avenue** is still in control of the **S & L Investments.**

    iv). **S&L Investments** negligently breached the duty of care towards the **1782 Frankford Avenue**.

501. **Plaintiff** has notified **S & L Investments**, that the **1780 Frankford Ave** building collapse cause serious damage to **1782 Frankford Ave**. **S&L Investments** failed to respond to the Plaintiff's requests for compensation for the damages to the **1782 Frankford Avenue** building caused by the collapse of **1780 Frankford Avenue**.

502. **S&L Investments** claimed loss and collected money through insurance loss claim for the damages to **1780 Frankford Ave**.

503. **S&L Investments** must know to compensate the **Plaintiff** for the damages caused by the collapse of **1780 Frankford Ave** building to the **1782 Frankford Ave**, because **S&L Investments** claimed loss from **Dan Achek** , **Maya Maha Elkansa** and **ADC**.

504. However, **S&L Investments** failed to respond and further refused to compensate the damages to the **1782 Frankford Ave.**

505. **S&L Investments** further wanted to maximize their profit through selling **1780 Frankford Avenue** vacant lot for $150,000 to the **Plaintiff** without paying compensation for the damages caused to the **1782 Frankford Avenue.**

506. **S&L Investments** emotionally abused the **Plaintiff** by negotiating the vacant piece of land for $150,000, when Defendants received $600,000 towards the collapse of house from the insurance company, while rejecting to compensate the damages caused by **1780 Frankford Ave**. Further, **S&L Investments** emotionally abused the Plaintiff by denying a duty to the **Plaintiff** to restore the damages to the **1782 Frankford Ave** within a reasonable time.

507. The damages caused due to collapse of **1780 Frankford Ave,** an inordinate delay to secure a Certificate of Occupancy (CO) to **1782 Frankford Ave** by **City of Philadelphia**. This inordinate delay caused emotional injury to the Plaintiff, such injury leads to the low productivity in Plaintiff' job and such low productivity caused to lose the job.

508. The recovery from the emotional injury may take longer than to recover from a limb injury and the effects of emotional injury is far greater than the limb injury. Further, the cost to restore emotional injury is much higher than the injured limb.

509. Further, **S&L Investments** did not provide the following information:
   i). **S&L Investments** adequately capitalized or not.
   ii). Assets of **S&L Investments** diverted after the collapse of the **1780 Frankford Ave** or not.
   iii). **S&L Investments** is solvent or not.
   iv). **S&L Investments** and its members/shareholder/partners commingled the funds or not.
   v). **S&L Investments** and its members/shareholder/partners maintained an arm's length relationship between **S&L Investments** and their other related entities.

510. Hence, **S&L Investments** breached duty of care to take the minimum necessary precautions to protect the **1780 Frankford Ave** building from collapse and further failed to compensate for the damages caused by **1780 Frankford Ave**.

511. WHEREFORE, given that the **S&L Investments** breached its duty of care and such that negligence was the proximate cause of damage to the **Plaintiff**.

512. Because**, S&L Investments** negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

513. WHEREFORE, **Plaintiff** prays this Honorable Court for an entry of a judgment in **Plaintiff'** favor and against **S&L Investments** in the sum not less than $618,000 (Six hundred eighteen thousand dollars) ) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XX) SECOND CAUSE OF ACTION – GROSS NEGLIGENCE AGAINST S & L INVESTMENTS:

514. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

515. **S&L Investments** neglected to treat the building for asbestos and post a safety precautionary notice. While 1780 Frankford Ave building collapsed, the asbestos and residual lead from the **1780 Frankford Ave** contaminated the **1782 Frankford Ave.** As per OSHA regulations, every pre-1981 structure must be treated as if it does contain asbestos, because exposure to asbestos cause Mesothelioma, Lung Cancer, Larynx Cancer, Esophageal Cancer, and Colon Cancer.

516. **S&L Investments** neglected to treat the treat the **1780 Frankford Ave** foundation with water proofing material and this caused to decay the **1780 Frankford Ave** building foundation and collapsed for slightest disturbance in the soil. As per 2006 ICC Building code and Philadelphia Building code, **Henry Langsam** and **Bart Sacks** must treat the foundations with water proofing material to avoid rot and decay.

517. **S&L Investments** profited by renting the five (5) apartments at 1780 Frankford Ave and as partners and operators of **S & L Investments**, **Henry Langsam** and **Bart Sacks** received insurance loss claim money towards the damage of the 1780 Frankford Ave.

518. **S&L Investments** knew that **1780 Frankford Ave** and **1782 Frankford Ave** building shared the party wall and its foundation. Similarly, **S&L Investments** knew that **1778 Frankford Ave** and **1780 Frankford Ave** building shared the party wall and its foundation.

519. Between 2nd week of August 2008 and 2nd week of September 2008, **Dan Achek** and **Alex Lopez** used heavy engineering equipment to demolish and excavate the **1778 Frankford Ave**. Between 2nd week of August 2008 and 2nd week of September 2008, **S&L Investments** collected rental checks from the tenants of 1780 Frankford Ave.

520. As per common law duty, **S&L Investments** have the following duties of care:

i). Protect the lives of tenants and adjoining properties by taking all necessary precautions including by asking **Dan Achek , Maya Maha Elkansa and ADC** to employ safety standards to protect the **1780 Frankford Avenue**.

ii). Protect, maintain and sustain the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue.**

iii). Protect the foundation of the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue**.

iv). Rebuild or support the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue.**

521. **S&L Investments** knew or should have known from experience that there is likelihood that a new building will be erected at **1778 Frankford Ave**, because recently **Plaintiff** constructed a new building at **1782 Frankford Ave** and **Henry Langsam** expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1782 Frankford Ave**. Similarly, **S&L Investments** should have expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1778 Frankford Ave**.

522. **S&L Investments** knew or should have known that **Dan Achek**, **Maya Maha Elkansa** and **ADC** conducting the demolition and excavation activity pose an imminent danger to **1780 Frankford Ave** building and should have protected the **1780 Frankford Ave** building out of collapse.

523. **S&L Investments** knew or should have known to insist **Dan Achek** and **Maya Maha Elkansa** to sign a waiver of liability and indemnification for any damage including costs and attorneys fees to undermine the foundation of **1780 Frankford Ave**.

524. **S&L Investments** knew or should have known the dangerous condition to the **1780 Frankford Avenue**, because the building was more than 80-year-old-plus property and built on simple stone foundation.

525. **S&L Investments** knew or should have known that due to the building height restrictions, often developers dig the cellars deep to get more usable space even bellow the stone foundation and hit dirt.

526. **S&L Investments** knew or should have known that during August and September months there is a chance of heavy down pour and even little bit of rain, washes out the dirt under the foundation and could cause to collapse the **1780 Frankford Ave** building.

527. **S&L Investments** knew or should have known that they should take all necessary precautions including demanding the **Dan Achek** , **Maya Maha Elkansa** and **ADC** to employ safe demolition and excavation standards to protect the **1780 Frankford Ave**.

528. **S&L Investments** should reasonably have appreciated the danger to the **Plaintiffs'** property from the dry rot and from the lack of repair of the **1780 Frankford Ave.**

529. **S&L Investments** knew or should have known that the precarious state of **1780 Frankford Ave** building and **Henry Langsam** and **Bart Sacks** should have reasonably taken some steps, to prevent the damage occurring to **1782 Frankford Ave**.

530. Between 2nd week of August 2008 and 2nd week of September 2008, **S&L Investments** or their authorized property maintenance company failed to inform to intervene and insist **Dan Achek , Maya Maha Elkansa** and **ADC** to employ safety standards to protect the **1780 Frankford Avenue.**

531. **S&L Investments** maintained the property in such a condition that, even door bells are not working. On 13th September 2008, the day of the accident, rescue workers through rocks towards the windows of the **1780 Frankford Ave** building to alert the inmates of the four apartments. **S&L Investments** allowed deteriorating the **1780 Frankford Ave** building badly, such that **1780 Frankford Ave** collapses even for a slightest disturbance.

532. **S&L Investments** are non-compliance to the 2006 ICC Building Code and OSHA regulations and knew or should have known that such non-compliance tantamount to negligence, recklessness, and endangerment to the public safety.

533.   **S&L Investments** knew or should have known that such non-compliance to the OSHA regulations and 2006 ICC Building Code could cause to collapse of **1780 Frankford Ave**, displace the five (5) tenants and cause serious injury to the **1782 Frankford Ave**.

534.   **S&L Investments** is aware about the OSHA and 2006 ICC Building code, but chooses not to meet the requirements at the expense of the public safety.

535.   As per common law duty, **S&L Investments** is liable to the **Plaintiff** for damages caused by dangerous conditions existing at the time the **1780 Frankford Avenue** building collapsed for the following reasons:

  i).   There is a hidden dangerous condition to the **1780 Frankford**, of which **S&L Investments** is aware, but the **Plaintiff** is not.

  ii).   The **1780 Frankford Avenue** building shared the foundation of the party wall with **1782 Frankford Avenue**.

  iii).   The **1780 Frankford Avenue** is still in control of the **S & L Investments.**

  iv).   **S&L Investments** negligently breached the duty of care towards the **1782 Frankford Avenue**.

536. **Plaintiff** has notified **S & L Investments**, that the **1780 Frankford Ave** building collapse cause serious damage to **1782 Frankford Ave**. **S&L Investments** failed to respond to the Plaintiff's requests for compensation for the damages to the **1782 Frankford Avenue** building caused by the collapse of **1780 Frankford Avenue**.

537. **S&L Investments** claimed loss and collected money through insurance loss claim for the damages to **1780 Frankford Ave**.

538. **S&L Investments** must know to compensate the **Plaintiff** for the damages caused by the collapse of **1780 Frankford Ave** building to the **1782 Frankford Ave**, because **S&L Investments** claimed loss from **Dan Achek** , **Maya Maha Elkansa** and **ADC**.

539. However, **S&L Investments** failed to respond and further refused to compensate the damages to the **1782 Frankford Ave.**

540. **S&L Investments** further wanted to maximize their profit through selling **1780 Frankford Avenue** vacant lot for $150,000 to the **Plaintiff** without paying compensation for the damages caused to the **1782 Frankford Avenue.**

541. **S&L Investments** emotionally abused the **Plaintiff** by negotiating the vacant piece of land for $150,000, when Defendants received $600,000 towards the collapse of house from the insurance company, while rejecting to compensate the damages caused by **1780 Frankford Ave**. Further, **S&L Investments** emotionally abused the Plaintiff by denying a duty to the **Plaintiff** to restore the damages to the **1782 Frankford Ave** within a reasonable time.

542. The damages caused due to collapse of **1780 Frankford Ave,** an inordinate delay to secure a Certificate of Occupancy (CO) to **1782 Frankford Ave** by **City of Philadelphia**. This inordinate delay caused emotional injury to the Plaintiff, such injury leads to the low productivity in Plaintiff' job and such low productivity caused to lose the job.

543. The recovery from the emotional injury may take longer than to recover from a limb injury and the effects of emotional injury is far greater than the limb injury. Further, the cost to restore emotional injury is much higher than the injured limb.

544. Further, **S&L Investments** did not provide the following information:

   i). **S&L Investments** adequately capitalized or not.
   ii). Assets of **S&L Investments** diverted after the collapse of the **1780 Frankford Ave** or not.
   iii). **S&L Investments** is solvent or not.
   iv). **S&L Investments** and its members/shareholder/partners commingled the funds or not.
   v). **S&L Investments** and its members/shareholder/partners maintained an arm's length relationship between **S&L Investments** and their other related entities.

545. Hence, **S&L Investments** breached duty of care to take the minimum necessary precautions to protect the **1780 Frankford Ave** building from collapse and further failed to compensate for the damages caused by **1780 Frankford Ave**.

546. WHEREFORE, given that the **S&L Investments** breached their duty of care and such that gross negligence was the proximate cause of damage to the Plaintiff.

547. Because**, S&L Investments** gross negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

548. WHEREFORE, **Plaintiff** prays this Honorable Court for an entry of a judgment in **Plaintiff'** favor and against **S&L Investments** in the sum not less than $618,000 (Six hundred eighteen thousand dollars) ) in damages exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XXI) <u>THIRD CAUSE OF ACTION – EMOTIONAL DISTRESS AGAINST S & L INVESTMENTS:</u>

549. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

550. **S&L Investments** neglected to treat the building for asbestos and post a safety precautionary notice. While 1780 Frankford Ave building collapsed, the asbestos and residual lead from the **1780 Frankford Ave** contaminated the **1782 Frankford Ave.** As per OSHA regulations, every pre-1981 structure must be treated as if it does contain asbestos, because exposure to asbestos cause Mesothelioma, Lung Cancer, Larynx Cancer, Esophageal Cancer, and Colon Cancer.

551. **S&L Investments** neglected to treat the treat the **1780 Frankford Ave** foundation with water proofing material and this caused to decay the **1780 Frankford Ave** building foundation and collapsed for slightest disturbance in the soil. As per 2006 ICC Building code and Philadelphia Building code, **Henry Langsam** and **Bart Sacks** must treat the foundations with water proofing material to avoid rot and decay.

552. **S&L Investments** profited by renting the five (5) apartments at 1780 Frankford Ave and received insurance loss claim money towards the damage of the 1780 Frankford Ave.

553. **S&L Investments** knew that **1780 Frankford Ave** and **1782 Frankford Ave** building shared the party wall and its foundation. Similarly, **S&L Investments** knew that **1778 Frankford Ave** and **1780 Frankford Ave** building shared the party wall and its foundation.

554. Between 2nd week of August 2008 and 2nd week of September 2008, **Dan Achek** and **Alex Lopez** used heavy engineering equipment to demolish and excavate the **1778 Frankford Ave**. Between 2nd week of August 2008 and 2nd week of September 2008, **S&L Investments** collected rental checks from the tenants of 1780 Frankford Ave.

555. As per common law duty, **S&L Investments** have the following duties of care:

   i). Protect the lives of tenants and adjoining properties by taking all necessary precautions including by asking **Dan Achek , Maya Maha Elkansa and ADC** to employ safety standards to protect the **1780 Frankford Avenue**.

   ii). Protect, maintain and sustain the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue.**

   iii). Protect the foundation of the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue**.

   iv). Rebuild or support the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue.**

556. **S&L Investments** knew or should have known from experience that there is likelihood that a new building will be erected at **1778 Frankford Ave**, because recently **Plaintiff** constructed a new building at **1782 Frankford Ave** and **S&L Investments** expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1782 Frankford Ave**. Similarly, **S&L Investments** should have expressed and anticipated danger to **1780 Frankford Ave** building due to activity at **1778 Frankford Ave**.

557. **S&L Investments** knew or should have known that **Dan Achek** , **Maya Maha Elkansa** and **ADC** conducting the demolition and excavation activity pose an imminent danger to **1780 Frankford Ave** building and should have protected the **1780 Frankford Ave** building out of collapse.

558. **S&L Investments** knew or should have known to insist **Dan Achek** and **Maya Maha Elkansa** to sign a waiver of liability and indemnification for any damage including costs and attorneys fees to undermine the foundation of **1780 Frankford Ave**.

559. **S&L Investments** knew or should have known the dangerous condition to the **1780 Frankford Avenue**, because the building was more than 80-year-old-plus property and built on simple stone foundation.

560. **S&L Investments** knew or should have known that due to the building height restrictions, often developers dig the cellars deep to get more usable space even bellow the stone foundation and hit dirt.

561. **S&L Investments** knew or should have known that during August and September months there is a chance of heavy down pour and even little bit of rain, washes out the dirt under the foundation and could cause to collapse the **1780 Frankford Ave** building.

562. **S&L Investments** knew or should have known that they should take all necessary precautions including demanding the **Dan Achek** , **Maya Maha Elkansa** and **ADC** to employ safe demolition and excavation standards to protect the **1780 Frankford Ave**.

563. **S&L Investments** should reasonably have appreciated the danger to the **Plaintiffs'** property from the dry rot and from the lack of repair of the **1780 Frankford Ave.**

564. **S&L Investments** knew or should have known that the precarious state of **1780 Frankford Ave** building and **S&L Investments** should have reasonably taken some steps, to prevent the damage occurring to **1782 Frankford Ave**.

565. Between 2nd week of August 2008 and 2nd week of September 2008, **S&L Investments** or their authorized property maintenance company failed to inform to intervene and insist **Dan Achek , Maya Maha Elkansa** and **ADC** to employ safety standards to protect the **1780 Frankford Avenue.**

566. **S&L Investments** maintained the property in such a condition that, even door bells are not working. On 13th September 2008, the day of the accident, rescue workers through rocks towards the windows of the **1780 Frankford Ave** building to alert the inmates of the four apartments. **S&L Investments** allowed deteriorating the **1780 Frankford Ave** building badly, such that **1780 Frankford Ave** collapses even for a slightest disturbance.

567. **S&L Investments** are non-compliance to the 2006 ICC Building Code and OSHA regulations and knew or should have known that such non-compliance tantamount to negligence, recklessness, and endangerment to the public safety.

568. **S&L Investments** knew or should have known that such non-compliance to the OSHA regulations and 2006 ICC Building Code could cause to collapse of **1780 Frankford Ave**, displace the five (5) tenants and cause serious injury to the **1782 Frankford Ave**.

569.   **S&L Investments** is aware about the OSHA and 2006 ICC Building code, but chooses not to meet the requirements at the expense of the public safety.

570.   As per common law duty, **S&L Investments** are liable to the **Plaintiff** for damages caused by dangerous conditions existing at the time the **1780 Frankford Avenue** building collapsed for the following reasons:

   i).     There is a hidden dangerous condition to the **1780 Frankford**, of which **S&L Investments** is aware, but the **Plaintiff** is not.

   ii).    The **1780 Frankford Avenue** building shared the foundation of the party wall with **1782 Frankford Avenue**.

   iii).   The **1780 Frankford Avenue** is still in control of the **S & L Investments.**

   iv).    **S&L Investments** negligently breached the duty of care towards the **1782 Frankford Avenue**.

571.   **Plaintiff** has notified **S&L Investments** that the **1780 Frankford Ave** building collapses cause serious damage to **1782 Frankford Ave**.  **S&L Investments** failed to respond to the Plaintiff's requests for compensation for the damages to the **1782 Frankford Avenue** building caused by the collapse of **1780 Frankford Avenue**.

572.   **S&L Investments** claimed loss and collected money through insurance loss claim for the damages to **1780 Frankford Ave**.

573.   **S&L Investments** must know to compensate the **Plaintiff** for the damages caused by the collapse of **1780 Frankford Ave** building to the **1782 Frankford Ave**, because **S&L Investments** claimed loss from **Dan Achek** , **Maya Maha Elkansa** and **ADC**.

574.   However, **S&L Investments** failed to respond and further refused to compensate the damages to the **1782 Frankford Ave.**

575. **S&L Investments** further wanted to maximize their profit through selling **1780 Frankford Avenue** vacant lot for $150,000 to the **Plaintiff** without paying compensation for the damages caused to the **1782 Frankford Avenue.**

576. **S&L Investments** emotionally abused the **Plaintiff** by negotiating the vacant piece of land for $150,000, when Defendants received $600,000 towards the collapse of house from the insurance company, while rejecting to compensate the damages caused by **1780 Frankford Ave**. Further, **S&L Investments** emotionally abused the Plaintiff by denying a duty to the **Plaintiff** to restore the damages to the **1782 Frankford Ave** within a reasonable time.

577. The damages caused due to collapse of **1780 Frankford Ave,** an inordinate delay to secure a Certificate of Occupancy (CO) to **1782 Frankford Ave** by **City of Philadelphia**. This inordinate delay caused emotional injury to the Plaintiff, such injury leads to the low productivity in Plaintiff' job and such low productivity caused to lose the job.

578. The recovery from the emotional injury may take longer than to recover from a limb injury and the effects of emotional injury is far greater than the limb injury. Further, the cost to restore emotional injury is much higher than the injured limb.

579. Further, **S&L Investments** did not provide the following information:

    i). **S&L Investments** adequately capitalized or not.

    ii). Assets of **S&L Investments** diverted after the collapse of the **1780 Frankford Ave** or not.

    iii). **S&L Investments** is solvent or not.

    iv). **S&L Investments** and its members/shareholder/partners commingled the funds or not.

v). **S&L Investments** and its members/shareholder/partners maintained an arm's length relationship between **S&L Investments** and their other related entities.

580. **S&L Investments** intentionally, deliberately, wantonly, and willfully violated the OSHA and 2006 ICC Building code regulations.

581. **S&L Investments** intentionally, deliberately, wantonly, and willfully breached their duty to restore the party wall between **1780 Frankford Avenue** and **1782 Frankford Avenue** and refused to compensate towards the loss to the **1782 Frankford Avenue.**

582. **S&L Investments** intentional, deliberate, wanton, willful  negligent and reckless violations caused a complete collapse of **1780 Frankford Avenue** and subsequently caused irreparable personal damage and emotional distress to Plaintiff and Plaintiff's property.

583. By the reason of **S & L Investments'** deliberate, wanton, willful, negligent and reckless actions and violations with reckless disregard for the safety of **1782 Frankford Avenue, Plaintiff** suffered emotional distress, pain and suffering, continuing injury, bills and related costs to rectify the damages and lost work time and income. The long-term effects of **Plaintiff's** injuries continue to manifest themselves.

584. **S & L Investments'** extreme and outrageous conduct was the cause for the emotional distress to **Plaintiff.** By the reason of **S & L Investments'** extreme and outrageous, conduct, **Plaintiff** suffered severe emotional distress.

585. Therefore, given that, the **S&L Investments** breached the duty of care and intentional, deliberate, wanton, willful, negligent and reckless actions, violations and disregard to the safety of their neighbors' was the proximate cause of severe emotional distress to the **Plaintiff.**

586. Because**, S & L Investments'** breached the duty of care was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

587. WHEREFORE, **Plaintiff** prays this Honorable Court for an entry of a judgment in **Plaintiff**' favor and against **S&L Investments** in the sum not less than $618,000(Six hundred and eighteen thousand dollars) ) in damages for delay pursuant to Pa R.C.P 238, exclusive of Compensatory damages according to proof; Punitive damages; Exemplary damages; Interest as allowed by law; Costs of suit; and Such other and further relief as this court may deem just and proper and brings this action to recover the same.

## (XXII) FIRST CAUSE OF ACTION – PROFESSIONAL NEGLIGENCE  AGAINST JULIET WHELAN

588. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

589. **Juliet Whelan** entered into an architectural service agreement with **Dan Achek**  to provide architectural services for six (6) residential dwellings and **Juliet Whelan** agreed to provide the following services to **Dan Achek .**

  (1) Preparing Schematic Design Drawings
  (2) Design & Development of Permit Drawings
     (a) Site Plan
     (b) Basement Plan
     (c) 1st Floor Plan

(d) 2nd Floor Plan
　　　　　(e) 3rd Floor Plan
　　　　　(f) Roof Plan
　　　　　(g) Structural Foundation Plan
　　　　　(h) Structural Framing Plans for Floors 1, 2, 3 and Roof
　　　　　(i) Building Section
　　　　　(j) Exterior Building Elevations
　　　　(3) Structural Drawings in consultation with Structural Engineer
　　　　(4) Expediting the permits from City of Philadelphia

590. In fact, **Juliet Whelan** designed and developed architectural plans for seven (7) residential dwellings to be constructed at **1778 Frankford Avenue**. **Juliet Whelan** applied for zoning use permit on 22nd July 2008 for **1778 Frankford Avenue** and in zoning use permit application the section of "Proposed Use of Building" stated as follows:

- Basement　: Storage; 1 Residential Unit
- 1st Floor　: 2 Residential Units
- 2nd Floor　: 2 Residential Units
- 3rd Floor　: 2 Residential Units

591. **Juliet Whelan** signed architectural drawings and floor plans on 21st July 2008 and submitted the signed architectural drawings and floor plans along with the zoning use permit application. The signed architectural drawings and floor plans clearly depicts that **Juliet Whelan** provided architectural services for seven (7) residential dwellings.

592. **Juliet Whelan** stated in the Section General Building Data of the Site Plan as follows:

- Applicable Codes　　　　　: International Building Code 2006;
　　　　　　　　　　　　　　　　 International Existing Building Code 2006
- Construction Materials　　: Masonry
- Construction Classification : Not legible from the printout
- Use　　　　　　　　　　　　 : 7 Residential Condominiums
- Occupancy Group　　　　　: R2
- Fire Suppression　　　　　 : Fully Sprinkled to NFPA 23R

593. **Juliet Whelan** stated in the Elevations A2.1, that the height of the basement is 2 feet 6 inches above grade and 6 feet 10 inches below grade. The basement foundation and footings are further deep. Hence, **Juliet Whelan** knew or should have known that excavation **1778 Frankford Avenue** up to this depth would undermine the foundation of the **1780 Frankford Avenue** and subsequently damage **1782 Frankford Avenue**.

594. As per Department of Licenses and Inspections, Code Bulletin of Information No. 0503, Excavations and the Protection of Foundations, **Juliet Whelan** knew or should have known that, when underpinning or structural support is specified or required, Special Inspections by a registered professional engineer should be performed at **1778 Frankford Avenue** and a Building Permit shall not be issued unless the required Special Inspection Form(s) are submitted.

595. As per Department of Licenses and Inspections, Code Bulletin of Information No. 0702, Party Wall Extensions (Horizontal or Vertical), **Juliet Whelan** knew or should have known that, an Engineer's Report shall be submitted to the plans examiner stating that the existing **1780 Frankford Avenue** party wall can adequately support the additional loads caused by **1778 Frankford Avenue**. The report shall include a statement that the proposed construction at **1778 Frankford Avenue** will not adversely affect the existing adjoining structure at **1780 Frankford Avenue**.

596. As per Department of Licenses and Inspections, Code Bulletin of Information No. 0702, Party Wall Extensions (Horizontal or Vertical), **Juliet Whelan** knew or should have known that, construction at **1778 Frankford Avenue** will be an addition in which the **1780 Frankford Avenue** party wall will be extended horizontally. The proposed construction at **1778 Frankford Avenue** is not permitted to encroach over the property line unless the adjoining **1780 Frankford Avenue** owner, **Henry Langsam , Bart Sacks** and **S&L Investments** provides express written consent. A copy of this consent shall be submitted to the plans examiner to be made a part of the permanent record.

597. As Per Administrative Code 2004 , Sub code "A" of Title 4, The Building Construction and Occupancy Code of The City Of Philadelphia, Conforming to The Pennsylvania Uniform Construction Code (Act 45 of 1999),  A-304.3,  **Juliet Whelan** knew or should have known that to **Juliet Whelan** as design professional in responsible charge for **1778 Frankford Avenue.**

598. **Juliet Whelan** owe a duty of reasonable care to all who might foreseeably rely on **Juliet Whelan** drawings and plans, even when they are not in contractual privity with the **Juliet Whelan.** ( Bilt-Rite Contractors, Inc. v. The Architect Studio, Case No. 74 MAP 2002, slip op. (Pa. Jan. 19, 2005),)

599. **Juliet Whelan** owed to a duty to **Plaintiff** when **Juliet Whelan** provided architectural design services to Dan Achek for pecuniary gains.   **Juliet Whelan** knew that the information will be used and relied upon by **Plaintiff** in the course of **Plaintiff'** own business activities.

600. **Juliet Whelan** has a duty to foreseeable third parties flows from **Juliet Whelan** contractual duties to **Dan Achek.** Hence, **Juliet Whelan** has a duty to **Plaintiff** as foreseeable third party flows from **Juliet Whelan** contractual duties to **Dan Achek.**

601. **Juliet Whelan** knew or should have known that, **Juliet Whelan** as registered design professional acting as the registered design professional in responsible charge for **1778 Frankford Avenue.**

602. **Juliet Whelan** knew or should have known that, **Dan Achek** should notify **James Gabriel, Edward Devlin, Frances Burns** and **City of Philadelphia** in writing if the **Juliet Whelan** as registered design professional in responsible charge is unable to continue to perform the duties. **Juliet Whelan** as registered design professional in responsible charge shall be responsible for reviewing and coordinating submittal documents prepared by others, including phased and deferred submittal items, for compatibility with the design of the building at **1778 Frankford Avenue**.

603. **Juliet Whelan** knew or should have known that, the person causing work to be made that will affect an adjoining property shall provide written notice and a copy of the relevant proposed construction plan to the owners of adjoining buildings advising them of the intended work and that the adjoining buildings should be protected. If afforded the necessary written permission to enter the adjoining lot, building or structure, the person causing the construction, excavation, remodeling or demolition to be made shall at all times and at his or her own expense preserve and protect the adjoining lot, building or structure from damage or injury. In the event that owners of adjoining buildings fail to provide permission for access to the adjoining lot, it shall then be the duty of the owner of the adjoining lot, building or structure to make safe his or her own property.

604. **Juliet Whelan** knew or should have known that, it is not practically possible not to underpin the **1780 Frankford Avenue** foundation without extending horizontally or cross the property line of **1778 Frankford Avenue**. This insight should have warranted a written consent from **1780 Frankford Avenue** and forced **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez** and **ALX-GC** to excavate the foundation with proper care or should have abandoned the greedy idea to build a residential unit in the basement.

605. **Juliet Whelan** knew or should have known that, to dig a test pit to perform a soils investigation at **1778 Frankford Avenue** during foundation excavation and should notify the appropriate Department of Licenses and Inspections District Office at least 48 hours in advance, so that the excavation can be witnessed by the Building Inspector. Upon completion of soils investigation **Juliet Whelan** should prepare a professionally sealed report of **Juliet Whelan** findings, which will include a conclusion as to the ability of the soil to support the proposed construction.

606. **Juliet Whelan** knew or should have known that to follow the standard City of Philadelphia procedures to design the multifamily residential buildings and avoid residential dwelling unit in the basement of **1778 Frankford Avenue**.

607. **Juliet Whelan** knew or should have known that to insist upon **Dan Achek , Maya Maha Elkansa,** and **ADC** to employ skillful demolition contractor and further instruct **Dan Achek , Maya Maha Elkansa,** and **ADC** to brace the **1780 Frankford Avenue** party wall during the demolition of **1778 Frankford Avenue** as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

608. **Juliet Whelan** knew or should have known that to insist upon **Dan Achek , Maya Maha Elkansa,** and **ADC** to employ skillful excavator and further instruct **Dan Achek , Maya Maha Elkansa,** and **ADC** to underpin the **1780 Frankford Avenue** foundation during the demolition of 1778 Frankford **Avenue** Philadelphia, PA 19125 as outlined in the **Annexure - I, Annexure - II, & Annexure – III.**

609. **Juliet Whelan** knew or should have known that to present at the **1778 Frankford Avenue** during the excavation inspect the underpinning work and insist upon **Dan Achek** to take minimum care to protect the foundation of the **1780 Frankford Avenue**.

610. **Juliet Whelan** knew or should have known to delegate the responsibility of underpinning the **1778 Frankford Avenue** only to a prudent contractor who has experience to carry the bracing, excavation, needling and underpinning work.

611. **Juliet Whelan** knew or should have known that to provide the direction to carry the bracing, excavation, needling and underpinning work at **1778 Frankford Avenue**.

612. **Juliet Whelan** knew or should have known that to enforce **Dan Achek , Maya Maha Elkansa,** and **ADC** to take proper care and precautions for the safety of the beams or posts to have ample strength for the loads they have to support the bracing, excavation, needling and underpinning work at **1778 Frankford Avenue**.

613. **Juliet Whelan** knew or should have known that, adjoining public and private property shall be protected from damage during construction, remodeling or demolition work. Protection shall be provided for all building systems and components on the adjoining property including but not limited to footings, foundations, party walls, chimneys, skylights, and roofs. Provisions shall be made to control water run-off and erosion during construction or demolition activities.

614. **Juliet Whelan** knew or should have known that to have a moral duty toward the well-being of adjoining buildings, and should avoid designing unbuildable design at **1778 Frankford Avenue.**

615. **Juliet Whelan** knew or should have known that to have reasonable foresight that **Juliet Whelan'** design should not cause damage or injure the adjoining buildings.

616. **Juliet Whelan** knew or should have known that **Juliet Whelan** owe a duty of reasonable care to all who might foreseeably rely on **Juliet Whelan** drawings and plans, even when they are not in contractual privity with the **Juliet Whelan.**

617. **Juliet Whelan** knew or should have known that **Juliet Whelan** owed a duty when **Juliet Whelan** provided architectural design services to **Dan Achek , Maya Maha Elkansa,** and **ADC** for pecuniary gains. And further, **Juliet Whelan** knew or should have known that that the information will be used and relied upon by **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez, ALX-GC , Henry Langsam , Bart Sacks, S & L Investments, James Gabriel, Edward Devlin, Frances Burns, City of Philadelphia and Plaintiff** in the course of their own business activities.

618. **Juliet Whelan** knew or should have known that, with the above conditions, **Juliet Whelan** has a duty to foreseeable third parties flows from **Juliet Whelan** contractual duties to **Dan Achek , Maya Maha Elkansa,** and **ADC.**

619. **Juliet Whelan** knew or should have known that, **Juliet Whelan** has a duty to **Plaintiff** as foreseeable third party flows from **Juliet Whelan** contractual duties to **Dan Achek , Maya Maha Elkansa,** and **ADC.**

620. **Juliet Whelan** breached the duty of care to **Plaintiff** as foreseeable third party flows from **Juliet Whelan** contractual duties to **Dan Achek , Maya Maha Elkansa,** and **ADC.**

621. As Per Administrative Code 2004 , Sub code "A" of Title 4, The Building Construction and Occupancy Code of The City Of Philadelphia, Conforming to The Pennsylvania Uniform Construction Code (Act 45 of 1999),  A-304.3,  **Juliet Whelan** is the  design professional in responsible charge for **1778 Frankford Avenue.**

622. As per Department of Licenses and Inspections, Code Bulletin of Information No. 0702, Party Wall Extensions (Horizontal or Vertical), **Juliet Whelan** knew that, an Engineer's Report shall be submitted to the plans examiner stating that the existing **1780 Frankford Avenue** party wall can adequately support the additional loads caused by **1778 Frankford Avenue**. The report shall include a statement that the proposed construction at **1778 Frankford Avenue** will not adversely affect the existing adjoining structure at **1780 Frankford Avenue**.

623. As per Department of Licenses and Inspections, Code Bulletin of Information No. 0702, Party Wall Extensions (Horizontal or Vertical), **Juliet Whelan** knew that, construction at **1778 Frankford Avenue** will be an addition in which the **1780 Frankford Avenue** party wall will be extended horizontally. The proposed construction at **1778 Frankford Avenue** is not permitted to encroach over the property line unless the adjoining **1780 Frankford Avenue** owner, **Henry Langsam , Bart Sacks** and **S&L Investments** provides express written consent. A copy of this consent shall be submitted to the plans examiner to be made a part of the permanent record.

624. As per Department of Licenses and Inspections, Code Bulletin of Information No. 0503, Excavations and the Protection of Foundations, **Juliet Whelan** knew that, when underpinning or structural support is specified or required, Special Inspections by a registered professional engineer should be performed at **1778 Frankford Avenue** and a Building Permit shall not be issued unless the required Special Inspection Form(s) are submitted.

625. **Juliet Whelan** knew that, **Dan Achek** should notify the **City of Philadelphia** in writing if **Juliet Whelan** as registered design professional in responsible charge is unable to continue to perform the duties. **Juliet Whelan** as registered design professional in responsible charge shall be responsible for reviewing and coordinating submittal documents prepared by others, including phased and deferred submittal items, for compatibility with the design of the building at **1778 Frankford Avenue**.

626. **Juliet Whelan** knew that, the person causing work to be made that will affect an adjoining property shall provide written notice and a copy of the relevant proposed construction plan to the owners of adjoining buildings advising them of the intended work and that the adjoining buildings should be protected. If afforded the necessary written permission to enter the adjoining lot, building or structure, the person causing the construction, excavation, remodeling or demolition to be made shall at all times and at his or her own expense preserve and protect the adjoining lot, building or structure from damage or injury. In the event that owners of adjoining buildings fail to provide permission for access to the adjoining lot, it shall then be the duty of the owner of the adjoining lot, building or structure to make safe his or her own property.

627. **Juliet Whelan** knew that, it is not practically possible not to underpin the **1780 Frankford Avenue** foundation without extending horizontally or cross the property line of **1778 Frankford Avenue**. This insight should have warranted a written consent from **1780 Frankford Avenue** and forced **Dan Achek** to excavate the foundation with proper care or should have abandoned the greedy idea to build a residential unit in the basement. Hence, as mentioned above **Juliet Whelan** violated the standard of care.

628. **Juliet Whelan** committed fraud and by an intentional misrepresentation in the APPLICATION FOR ZONING/ USE REGISTRATION PERMIT for **1778 Frankford Ave** is as follows:

   (i) **Juliet Whelan** made a representation about the past and existing material fact pertaining to **1778 Frankford Ave.**

   (ii) **Juliet Whelan** representation about **1778 Frankford Ave** is false.

   (iii) **Juliet Whelan** know that the representation was false about **1778 Frankford Ave.**

   (iv) **Juliet Whelan** have made the representation with an intent to defraud the City of Philadelphia and subsequently the Plaintiff.

(v) The City of Philadelphia unaware of the falsity of the representation and acted in reliance upon the truth of the representation and issued a Zoning Use Permit # 165814 on 13th August 2008 to construct seven (7) residential dwellings at 1778 Frankford Avenue, which is against The Philadelphia Code, § 14-104. (5) (b)  and § 14-104. (6) (c) .

(vi) And, finally, as a result of the reliance upon the truth of the representation, the **City of Philadelphia** issued the permit, Defendants Achek and  Elkhansa excavated **1778 Frankford Ave**  and subsequently Plaintiff sustained damage. (See, Cal.Civ.Code § 1572; Stansfield v. Starkey (1990) 220 Cal.App.3d 59.)

629. **Juliet Whelan** further committed fraud by concealment and suppression of known material fact about the **1778 Frankford Ave** .  **Juliet Whelan** have been under a duty to disclose the fact to the Plaintiff and City of Philadelphia; **Juliet Whelan** intentionally concealed and  suppressed the fact with the intent to defraud the **Plaintiff** and **City of Philadelphia**; The **Plaintiff** and **City of Philadelphia** are unaware of the fact and **City of Philadelphia** would not have issued a Zoning Use Permit # 165814 on 13th August 2008, if **City of Philadelphia** know the concealed and suppressed facts; **Juliet Whelan** concealment or suppression of the facts caused the Plaintiff to sustain damage.

630. **Juliet Whelan'** outrageous conduct, reckless indifference to the rights of others are malicious, wanton, reckless, willful and oppressive to the Plaintiff.

631. **Juliet Whelan** recklessly inflicted pain and emotional distress on Plaintiff and Plaintiff suffered severe emotional distress. Hence the damages for the delay and attorney fees are recoverable.

632. **Plaintiff** suffered severe emotional distress as a result of the disrupt of the relationship between **Plaintiff** and **Wachovia Mortgage FSB**, and that Plaintiff has suffered severe physical manifestations of the emotional distress. Plaintiff' stated facts support the requisite evidence for **Juliet Whelan'** reckless disregard to the safety of 1782 Frankford Ave and Plaintiff. **Juliet Whelan'** infliction of pain on Plaintiff caused for a JOB LOSS to the Plaintiff.

633. **Juliet Whelan** recklessly inflicted pain and emotional distress on Plaintiff and Plaintiff suffered severe emotional distress. Hence the damages for the delay and attorney fees are recoverable.

634. **Juliet Whelan'** outrageous conduct, reckless indifference to the rights of others are willful and oppressive to the **Plaintiff**.

635. By reason of the carelessness and negligence of the **Juliet Whelan**, **Plaintiff** suffered an injury to health, damage to the 1782 Frankford Avenue, incurred significant expense to rectify the damage, lost rental income; paid additional interest charges towards construction loan, miss a window of opportunity to convert the construction loan into a permanent mortgage;

636. WHEREFORE, given that the **Juliet Whelan** breached the duty of care and such that negligence was the proximate cause of damage to the plaintiff.

637. Because**, Juliet Whelan** negligence was wanton, willful and in reckless disregard to the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial. Punitive Damages may be available against individual Defendants. The Supreme Court of Pennsylvania has adopted the restatement (2nd) of Torts, §908 (2) which permits Punitive Damages for "conduct that is outrageous because of the Defendant's evil motive or his reckless indifference to the rights of others." Rizzo v. Hanes, 520 Pa. 484, 555 A. 2d 58, 69 (Pa. 1998) ("Rest.) 2d (Torts §908 2) A Court may award Punitive Damages only if the conduct was malicious, wanton, reckless, willful, or oppressive. Chambers v. Montgomery, 411 Pa. 339, 192 A. 2d 355, 358 (Pa. 1963) The actor's state of mind is also relevant: "The act or omission must be intentional, reckless, or malicious." Id, Feld v. Merriam 506 Pa. 383,485 A. 2d 742, 748 (Pa. 1984).

638. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in its favor and against **Juliet Whelan** in the sum of not less than of $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXIII) FIRST CAUSE OF ACTION –FRAUD AGAINST JAMES GABRIEL

639. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

640. **James Gabriel** as an employee of **City of Philadelphia** knew or should have known that as per, "Title 4. The Philadelphia Building Construction and Occupancy Code, Sub code "A" (The Philadelphia Administrative Code), Section A-202.0 Duties and Powers of The Code Official "have the duties and powers.

641. **James Gabriel** as an employee of **City of Philadelphia** has a to administer and enforce the City's code requirements for the enhancement of public safety, including building, plumbing, electrical, mechanical, fire, property maintenance, business, and zoning regulations.

642. **James Gabriel** as an employee of **City of Philadelphia** is responsible for regulating the conduct of businesses and persons by issuing licenses, by conducting inspections, and by enforcing applicable codes and regulations.

643. **James Gabriel** as an employee of **City of Philadelphia**, is empowered to take lawful actions necessary to correct dangerous and unlawful conditions, including making necessary emergency repairs to properties, cleaning and sealing abandoned buildings, and demolishing vacant buildings that pose a threat to public safety.

644. **James Gabriel** as an employee of **City of Philadelphia**, per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, have the duty and power to administer and to enforce the provisions of The Philadelphia Code , Chapters 14-100 through 14-2000.

645. **James Gabriel** as an employee of **City of Philadelphia** per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, shall issue a Zoning or Use Registration Permit upon the granting of a Zoning Board of Adjustment Certificate when all the other applicable provisions of The Philadelphia Code, Title 14. Zoning and Planning has been met.

646.  **James Gabriel** as an employee of **City of Philadelphia,** knew that per The Philadelphia Code, § 14-104. Non-Conforming Structures and Uses (5) Discontinued Use. (a) (b) (c) as follows:

( a )  A non-conforming when discontinued for a period of three consecutive years or less may be resumed as the same non-conforming use and no other.

( b )  A non-conforming use when discontinued for a period of more than three consecutive years shall be considered abandoned and may not be resumed, and any subsequent use of the land or structure must comply with the use requirements of the district in which it is located.

( c )  Any use authorized by the Zoning Board of Adjustment, when discontinued for a period of three consecutive years, shall be considered abandoned and may not be resumed without further approval from the Zoning Board of Adjustment.

647.  **James Gabriel** as an employee of **City of Philadelphia,** knew or should have known that **Maya Maha Elkansa** purchased the **1778 Frankford Avenue** on 15th September 2004 and building have been sealed since then. The Zoning Use Permit # 165814 issued 13th August 2008. Hence the **1778 Frankford Avenue** discontinued in use more than three consecutive. As per The Philadelphia Code, § 14-104. Non-Conforming Structures and Uses (5) Discontinued Use. (b), **1778 Frankford Avenue** is a Non-Conforming Structure and discontinued in use more than three consecutive years, hence **1778 Frankford Avenue** should be considered abandoned and should not be resumed to prior use. Any new Zoning Use Permit for **1778 Frankford Avenue** must comply with the use requirements of the district in which it is located.

648. **James Gabriel** as an employee of **City of Philadelphia,** have full access to the information systems of **City of Philadelphia** and knew that **1778 Frankford Avenue** is a Non-Conforming Structure and discontinued in use more than three consecutive years.

649. **1778 Frankford Avenue** outside condition in Year 2005 depicted in **Annexure VI, Figure 9** to **Figure 12,** and the interior condition depicted in **Annexure VII, Figure 13** to **Figure 22.** The pictures in **Annexure VI** and **Annexure VII** proves that **1778 Frankford Avenue** has been abandoned or not in use by more than three (3) consecutive years.

650. **James Gabriel** as an employee of **City of Philadelphia** conduct was intentional, malicious, wanton, reckless, willful, oppressive, outrageous, and reckless indifference to the rights of others, because **James Gabriel** fraudulently issued a Zoning Use Permit to **1778 Frankford Avenue** for personal gains by violating The Philadelphia Code, § 14-104. Non-Conforming Structures and Uses (5) Discontinued Use. (b).

651. **James Gabriel** as an employee of **City of Philadelphia** has plenty and sufficient time to do the due diligence prior to issue a Zoning Use Permit to **1778 Frankford Avenue,** because **Juliet Whelan filed a** Zoning Use Permit application on 22nd July 2008 and **James Gabriel** issued Zoning Use Permit on 13th August 2008. Between 22nd July 2008 and 13th August 2008 **James Gabriel'** is in a normal state of mind, hence **James Gabriel** acted and omitted the facts intentionally.

652. **James Gabriel** as an employee of **City of Philadelphia,** committed fraud by colluding with **Dan Achek , Maya Maha Elkansa, ADC** and **Juliet Whelan** and issued a Zoning Use Permit on 13th August 2008 to construct Seven (7) residential dwellings at **1778 Frankford Avenue,** including one (1) residential dwelling in the basement.

653. **James Gabriel** as an employee of **City of Philadelphia** and by the reason of the fraud of the **James Gabriel** along with **Dan Achek , Maya Maha Elkansa , ADC** and **Juliet Whelan** and harming the **Plaintiff**, **Plaintiff** suffered a loss by extensive and irreparable damage to the health; Further **Plaintiff** incurred time and money to rectify the damage to the **1782 Frankford Avenue;** Further **Plaintiff** incurred loss through lost rental income; Further **Plaintiff** incurred loss by paying additional interest charges towards construction loan; Further **Plaintiff** incurred loss by missing a window of opportunity to convert the construction loan into a permanent mortgage;

654. WHEREFORE, given that, the **James Gabriel'** conduct was intentional, malicious, wanton, reckless, willful, oppressive, outrageous, and reckless indifference to the rights of others and committed fraud; and such fraud was the proximate cause of damage to the **Plaintiff**.

655. Because**, James Gabriel** negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

656. WHEREFORE, **Plaintiff** prays this Honorable Court for the entry of a judgment in its favor and against **James Gabriel** in the sum of not less than of $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXIV) FIRST CAUSE OF ACTION – GROSS NEGLIGENCE AGAINST JAMES GABRIEL

657. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

658.   **James Gabriel** as an employee of **City of Philadelphia** knew or should have known that as per, "Title 4. The Philadelphia Building Construction and Occupancy Code, Sub code "A" (The Philadelphia Administrative Code), Section A-202.0 Duties and Powers of The Code Official "have the duties and powers.

659.   **James Gabriel**  as an employee of **City of Philadelphia** has to administer and enforce the City's code requirements for the enhancement of public safety, including building, plumbing, electrical, mechanical, fire, property maintenance, business, and zoning regulations.

660.   **James Gabriel** as an employee of **City of Philadelphia** is responsible for regulating the conduct of businesses and persons by issuing licenses, by conducting inspections, and by enforcing applicable codes and regulations.

661. **James Gabriel** as an employee of **City of Philadelphia**, is empowered to take lawful actions necessary to correct dangerous and unlawful conditions, including making necessary emergency repairs to properties, cleaning and sealing abandoned buildings, and demolishing vacant buildings that pose a threat to public safety.

662. **James Gabriel** as an employee of **City of Philadelphia**, per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, have the duty and power to administer and to enforce the provisions of The Philadelphia Code , Chapters 14-100 through 14-2000.

663. **James Gabriel** as an employee of **City of Philadelphia** per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, shall issue a Zoning or Use Registration Permit upon the granting of a Zoning Board of Adjustment Certificate when all the other applicable provisions of The Philadelphia Code, Title 14. Zoning and Planning has been met.

664. **James Gabriel** as an employee of **City of Philadelphia,** knew that per The Philadelphia Code, § 14-104. Non-Conforming Structures and Uses (5) Discontinued Use. (a) (b) (c) as follows:

( a ) A non-conforming when discontinued for a period of three consecutive years or less may be resumed as the same non-conforming use and no other.

( b ) A non-conforming use when discontinued for a period of more than three consecutive years shall be considered abandoned and may not be resumed, and any subsequent use of the land or structure must comply with the use requirements of the district in which it is located.

( c )   Any use authorized by the Zoning Board of Adjustment, when discontinued for a period of three consecutive years, shall be considered abandoned and may not be resumed without further approval from the Zoning Board of Adjustment.

665.  **James Gabriel** as an employee of **City of Philadelphia** knew that **Maya Maha Elkansa** purchased the **1778 Frankford Avenue** on 15th September 2004 and building have been sealed since then. Hence, the **1778 Frankford Avenue** discontinued in use more than three consecutive until the Zoning Use Permit # 165814 issue date 13th August 2008.  As per The Philadelphia Code, § 14-104. Non-Conforming Structures and Uses (5) Discontinued Use. (b), **1778 Frankford Avenue**  is a Non-Conforming Structure and discontinued in use more than three consecutive years, hence **1778 Frankford Avenue** should be considered abandoned and should not be resumed to prior use. Any new Zoning Use Permit for **1778 Frankford Avenue** must comply with the use requirements of the district in which it is located.

666.  **James Gabriel** as an employee of **City of Philadelphia,** have full access to the information systems of **City of Philadelphia** and knew that **1778 Frankford Avenue** is a Non-Conforming Structure and discontinued in use more than three consecutive years. **1778 Frankford Avenue** outside condition in Year 2005 depicted in **Annexure VI, Figure 9** to **Figure 12, and** the interior condition depicted in **Annexure VII Figure 13** to **Figure 22**.  The pictures in **Annexure VI** and **Annexure VII proves** that **1778 Frankford Avenue** has been abandoned or not in use by more than three (3) consecutive years.

667.  **James Gabriel** as an employee of **City of Philadelphia** conduct was reckless indifference to the rights of others, because **James Gabriel** negligently issued a Zoning Use Permit to **1778 Frankford Avenue** by violating The Philadelphia Code, § 14-104. Non-Conforming Structures and Uses (5) Discontinued Use. (b).

668. **James Gabriel** as an employee of **City of Philadelphia** has plenty and sufficient time to do the due diligence prior to issue a Zoning Use Permit to **1778 Frankford Avenue,** because **Juliet Whelan** filed a Zoning Use Permit application on 22nd July 2008 and **James Gabriel** issued Zoning Use Permit on 13th August 2008. Between 22nd July 2008 and 13th August 2008 **James Gabriel'** is in a normal state of mind and omitted the facts intentionally.

669. **James Gabriel** as an employee of **City of Philadelphia,** issued a Zoning Use Permit # 165814 on 13th August 2008 to construct seven (7) residential dwellings at **1778 Frankford Avenue,** which is against The Philadelphia Code, § 14-104. Non-Conforming Structures and Uses (5) Discontinued Use. (b).

670. **James Gabriel** as an employee of **City of Philadelphia** was gross negligent to issue a Zoning Use Permit on 13th August 2008 to construct Seven (7) residential dwellings at **1778 Frankford Avenue,** including one (1) residential dwelling in the basement, because **1778 Frankford Avenue** is a Non-Conforming Structure and discontinued in use more than three consecutive years.

671. By reason of the gross negligence of the **James Gabriel** and cooperated with **Dan Achek , Maya Maha Elkansa , ADC** and **Juliet Whelan** to over exploit **FAR** of **1778 Frankford Avenue, Plaintiff** suffered a loss by extensive and irreparable damage to the health; Further **Plaintiff** incurred time and money to rectify the damage to the **1782 Frankford Avenue;** Further **Plaintiff** incurred loss through lost rental income; Further **Plaintiff** incurred loss by paying additional interest charges towards construction loan; Further **Plaintiff** incurred loss by missing a window of opportunity to convert the construction loan into a permanent mortgage;

672. WHEREFORE, given that the **James Gabriel** is gross negligence t and such that negligence was the proximate cause of damage to the **Plaintiff**.

673. Because**, James Gabriel** negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

674. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in its favor and against **James Gabriel** in the sum of not less than of $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXV) <u>FIRST CAUSE OF ACTION –GROSS NEGLIGENCE AGAINST EDWARD DEVLIN</u>

675. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

676. **Edward Devlin** as an employee of **City of Philadelphia,** per Administrative Code 2004 (Sub code "A" of Title 4, The Building Construction and Occupancy Code of The City of Philadelphia) Conforming to the Pennsylvania Uniform Construction Code (Act 45 of 1999), Section A-202 Duties and Powers of the Code Official, **Edward Devlin,** shall enforce all of the provisions of this code and the technical codes and shall act on any question relative to the following items, except as otherwise specifically provided for by statutory requirements or as provided for in this code or the technical codes:

    i. The mode or manner of construction and materials to be used in the erection, addition to, alteration, repair, removal and demolition of structures;

    ii. The location, occupancy and maintenance of structures;

    iii. The installation of service equipment;

    iv.   The installation, alteration, repair, maintenance or operation of all mechanical, electrical and plumbing systems devices and equipment; and

    v.   The installation, alteration, repair, maintenance or operation of all fire protection systems, devices and equipment.

677.   **Edward Devlin** as an employee of **City of Philadelphia** knew that per**,** The Philadelphia Code, Title 4. The Philadelphia Building Construction and Occupancy Code Sub code "A" (The Philadelphia Administrative Code) Chapter 3 Permits, Section A-303 Demolitions and Relocation of Structures A-303.1, A-303.2, **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez,** and **ALX-GC** should notify all utilities having service connections within the **1778 Frankford Avenue** such as water, electric, gas, sewer and other connections. Service connections and appurtenant equipment, such as meters and regulators shall be removed or sealed and plugged in a safe manner.

678.   **Edward Devlin** as an employee of **City of Philadelphia** knew that per**,** The Philadelphia Code, Title 4. The Philadelphia Building Construction and Occupancy Code, Sub code "A" (The Philadelphia Administrative Code) Chapter 3 Permits, Section A-303 Demolitions and Relocation of Structures A-303.1, A-303.2, **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez,** and **ALX-GC ,** prior to the demolition of **1778 Frankford Avenue** by **Maya Maha Elkansa**, or should post a notice on the structure to be demolished and distribute an informational bulletin indicating that the **Maya Maha Elkansa** intends to demolish **1778 Frankford Avenue**. **Maya Maha Elkansa** shall distribute the informational bulletin to the front doors of the following properties:

    i.   To the three nearest properties on each side of the subject property.

    ii.   To the seven nearest properties across the street from the subject property.

    iii.   To the seven nearest properties to the rear of the subject property.

679. **Edward Devlin** as an employee of **City of Philadelphia** knew or should have known that a zoning use permit, a demolition permit, and a building permit, has been issued to **1778 Frankford Avenue.**

680. **Edward Devlin** as an employee of **City of Philadelphia** knew or should have known that, **Dan Achek , Maya Maha Elkansa , ADC, Alex Lopez , ALX-GC** and **Juliet Whelan** start or started operations at **1778 Frankford Avenue.**

681. **Edward Devlin** as an employee of **City of Philadelphia** failed to enforce the code and cease operations at **1778 Frankford Avenue** on or before 9th September 2008 and averted the collapse of **1780 Frankford Avenue** and **1782 Frankford Avenue.**

682. **Edward Devlin** as an employee of **City of Philadelphia** visited the **1778 Frankford Avenue** on 13th September 2008 after the collapse of **1780 Frankford Avenue** and knew or should have known to issue violation(s) notice(s) to **Dan Achek , Maya Maha Elkansa , ADC, Alex Lopez , ALX-GC** and **Juliet Whelan** for demolishing the **1778 Frankford Avenue** without a permit; for without a notice to the **City of Philadelphia;** for without a notice to the **Henry Langsam , Bart Sacks , S&L Investments** and **Plaintiff;** for not bracing the **1780 Frankford Avenue;** for not complying with OSHA regulations; for collapsing the **1780 Frankford Avenue**; for collapsing the **1782 Frankford Avenue;** not complying with OSHA regulations;

683. **Edward Devlin** as an employee of **City of Philadelphia** visited the **1778 Frankford Avenue** on 13th September 2008 after the collapse of **1780 Frankford Avenue** and knew or should have known to file a Complaint with Police against **Dan Achek , Maya Maha Elkansa, ADC, Alex Lopez , ALX-GC** and **Juliet Whelan** for Criminal Recklessness, endangerment, willful violation, willful non-compliance, criminal negligence**,** carelessness**,** omission, or failure to act, the decision to bring about a prohibited consequence" malice aforethought , imputation or attribution.

684. **Edward Devlin** as an employee of **City of Philadelphia** failed to act and enforce The Philadelphia code to cease operations at **1778 Frankford Avenue** after the collapse of **1780 Frankford Avenue.**

685. **Edward Devlin** as an employee of **City of Philadelphia** knew that **Maya Maha Elkansa** purchased the **1778 Frankford Avenue** on 15th September 2004 and building have been sealed since then. Hence the **1778 Frankford Avenue** discontinued in use more than three consecutive until the Zoning Use Permit # 165814 issue date 13th August 2008. As per The Philadelphia Code, § 14-104. Non-Conforming Structures and Uses (5) Discontinued Use. (b), **1778 Frankford Avenue** is a Non-Conforming Structure and discontinued in use more than three consecutive years, hence **1778 Frankford Avenue** should be considered abandoned and should not be resumed to prior use. Any new Zoning Use Permit for **1778 Frankford Avenue** must comply with the use requirements of the district in which it is located.

686. **Edward Devlin** as an employee of **City of Philadelphia** failed to correct the issued zoning use permit, after the collapse of **1780 Frankford Avenue.**

687. **Edward Devlin** as an employee of **City of Philadelphia** was gross negligent by not to issuing violation(s) notice(s) to **Dan Achek , Maya Maha Elkansa , ADC, Alex Lopez , ALX-GC** and **Juliet Whelan** for demolishing the **1778 Frankford Avenue** without a permit; for without a notice to the **City of Philadelphia;** for without a notice to the **Henry Langsam , Bart Sacks , S&L Investments** and **Plaintiff;** for not bracing the **1780 Frankford Avenue;** for not complying with OSHA regulations; for collapsing the **1780 Frankford Avenue**; for collapsing the **1782 Frankford Avenue;** not complying with OSHA regulations;

688. By reason of the gross negligence of the **Edward Devlin** and cooperated with **Dan Achek , Maya Maha Elkansa , ADC , Juliet Whelan,** and **James Gabriel** to over exploit **FAR** of **1778 Frankford Avenue, Plaintiff** suffered a loss by extensive and irreparable damage to the health; Further **Plaintiff** incurred time and money to rectify the damage to the **1782 Frankford Avenue;** Further **Plaintiff** incurred loss through lost rental income; Further **Plaintiff** incurred loss by paying additional interest charges towards construction loan; Further **Plaintiff** incurred loss by missing a window of opportunity to convert the construction loan into a permanent mortgage;

689. WHEREFORE, given that the **Edward Devlin** is gross negligence and such that negligence was the proximate cause of damage to the **Plaintiff**.

690. Because**, Edward Devlin** negligence was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

691. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in **Plaintiff**' favor and against **Edward Devlin** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXVI) <u>FIRST CAUSE OF ACTION – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS AGAINST FRANCES BURNS</u>

692. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

693. **Frances Burns** as an employee of **City of Philadelphia** knew or should have known that as per, Title 4. The Philadelphia Building Construction and Occupancy Code, Sub code "A" (The Philadelphia Administrative Code), Section A-202.0 Duties and Powers of The Code Official, have the duties and powers.

694. **Frances Burns** as an employee of **City of Philadelphia** has a to administer and enforce the City's code requirements for the enhancement of public safety, including building, plumbing, electrical, mechanical, fire, property maintenance, business, and zoning regulations.

695. **Frances Burns** as an employee of **City of Philadelphia** is responsible for regulating the conduct of businesses and persons by issuing licenses, by conducting inspections, and by enforcing applicable codes and regulations.

696. **Frances Burns** as an employee of **City of Philadelphia**, is empowered to take lawful actions necessary to correct dangerous and unlawful conditions, including making necessary emergency repairs to properties, cleaning and sealing abandoned buildings, and demolishing vacant buildings that pose a threat to public safety.

697. **Frances Burns** as an employee of **City of Philadelphia**, per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, have the duty and power to administer and to enforce the provisions of The Philadelphia Code, Chapters 14-100 through 14-2000.

698. **Frances Burns** as an employee of **City of Philadelphia** per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, shall issue a Zoning or Use Registration Permit upon the granting of a Zoning Board of Adjustment Certificate when all the other applicable provisions of The Philadelphia Code, Title 14. Zoning and Planning has been met.

699. **Frances Burns** as an employee of **City of Philadelphia,** per Administrative Code 2004 (Sub code "A" of Title 4, The Building Construction and Occupancy Code of The City of Philadelphia) Conforming to the Pennsylvania Uniform Construction Code (Act 45 of 1999), Section A-202 Duties and Powers of the Code Official, **Edward Devlin,** shall enforce all of the provisions of this code and the technical codes and shall act on any question relative to the following items, except as otherwise specifically provided for by statutory requirements or as provided for in this code or the technical codes:

    (i) The mode or manner of construction and materials to be used in the erection, addition to, alteration, repair, removal and demolition of structures;

    (ii) The location, occupancy and maintenance of structures;

    (iii) The installation of service equipment;

    (iv) The installation, alteration, repair, maintenance or operation of all mechanical, electrical and plumbing systems devices and equipment; and

    (v) The installation, alteration, repair, maintenance or operation of all fire protection systems, devices and equipment.

700. **Plaintiff,** wrote several emails, letters, faxes and brought to the attention of **Frances Burns** regarding the following**:**

    (i) Gross negligence of the **Dan Achek , Maya Maha Elkansa , James Gabriel, Edward Devlin,** and **City of Philadelphia'** Contractual services Unit, Department License & Inspections;

    (ii) Gross negligence of  Gross negligence of  **City of Philadelphia'** demolition contractor**;**

    (iii) Refusal by **City of Philadelphia'** Contractual services Unit to rectify the damages caused by the demolition of the **1780 Frankford Avenue**.

701. **Frances Burns** refused to rectify the damages caused by the demolition of the **1780 Frankford Avenue** and refused to pay the cost to restore the damages.

702. **Frances Burns** disguised the **City of Philadelphia** about the damages caused by the demolition of the **1780 Frankford Avenue** for the purpose of depriving **Plaintiff'** equal protection of the laws and equal privileges and immunities under the laws.

703. **Frances Burns** conspire to prevent **Plaintiff'** lawfully entitled equal protection of the laws and equal privileges and immunities under the laws by force, intimidation and threat.

704. **Frances Burns** conspire against **Plaintiff** and deprived the rights of the **Plaintiff** by refusing to take a petition from **Plaintiff**, where **Plaintiff** is seeking redress for the grievances caused by **James Gabriel, Edward Devlin** and **City of Philadelphia'** Contractual services Unit, Department License & Inspection.

705. **Frances Burns** is vindictive and retaliatory to the **Plaintiff,** by withholding the Certificate of Occupancy (CO) to **1782 Frankford Avenue.**

706. **Frances Burns** is vindictive and retaliatory to the **Plaintiff,** by issuing several petty nuisance citations, withholding the zoning permits for **Plaintiff'** other property **1510 E Palmer Street.**

707. **Frances Burns** is vindictive and retaliatory to the **Plaintiff,** by slandering against **Plaintiff** as a member of the Zoning Board of Adjustments and falsely accused the **Plaintiff** illegally constructed a triplex, when **Plaintiff** did not construct a triplex. Further, **Frances Burns** made a false accusation against the **Plaintiff**, when such a comment is not necessary at all.

708. **Frances Burns** is vindictive, retaliatory to the **Plaintiff** and abused the position for personnel gratification and ego satisfaction.

709. By the aforementioned **Frances Burns'** outrageous conduct, evil motive, carelessness and reckless indifference to the rights of **Plaintiff** and **1782 Frankford Avenue, Plaintiff** suffered a damage, incurred significant expense to rectify the damage, paid additional interest charges towards construction loan, lost rental income, missed an opportunity to convert the construction loan into a permanent mortgage.

710. WHEREFORE, given that the **Frances Burns'** conspiracy to interfere with civil rights of **Plaintiff** was the proximate cause of damage to the **Plaintiff**.

711. Because**, Frances Burns' conspiracy** to interfere with civil rights of **Plaintiff** was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

712. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in **Plaintiff'** favor and against **Frances Burns** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXVII)  SECOND CAUSE OF ACTION – CONSPIRACY AGAINST RIGHTS OF CITIZENS AGAINST FRANCES BURNS:

713. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

714.   **Frances Burns** as an employee of **City of Philadelphia** knew or should have known that as per, Title 4. The Philadelphia Building Construction and Occupancy Code, Sub code "A" (The Philadelphia Administrative Code), Section A-202.0 Duties and Powers of The Code Official, have the duties and powers.

715.   **Frances Burns** as an employee of **City of Philadelphia** has a to administer and enforce the City's code requirements for the enhancement of public safety, including building, plumbing, electrical, mechanical, fire, property maintenance, business, and zoning regulations.

716.   **Frances Burns** as an employee of **City of Philadelphia** is responsible for regulating the conduct of businesses and persons by issuing licenses, by conducting inspections, and by enforcing applicable codes and regulations.

717.   **Frances Burns** as an employee of **City of Philadelphia**, is empowered to take lawful actions necessary to correct dangerous and unlawful conditions, including making necessary emergency repairs to properties, cleaning and sealing abandoned buildings, and demolishing vacant buildings that pose a threat to public safety.

718.   **Frances Burns** as an employee of **City of Philadelphia**, per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, have the duty and power to administer and to enforce the provisions of The Philadelphia Code, Chapters 14-100 through 14-2000.

719.   **Frances Burns** as an employee of **City of Philadelphia** per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, shall issue a Zoning or Use Registration Permit upon the granting of a Zoning Board of Adjustment Certificate when all the other applicable provisions of The Philadelphia Code, Title 14. Zoning and Planning has been met.

720. **Frances Burns** as an employee of **City of Philadelphia,** per Administrative Code 2004 (Sub code "A" of Title 4, The Building Construction and Occupancy Code of The City of Philadelphia) Conforming to the Pennsylvania Uniform Construction Code (Act 45 of 1999), Section A-202 Duties and Powers of the Code Official, **Edward Devlin,** shall enforce all of the provisions of this code and the technical codes and shall act on any question relative to the following items, except as otherwise specifically provided for by statutory requirements or as provided for in this code or the technical codes:

   (i)  The mode or manner of construction and materials to be used in the erection, addition to, alteration, repair, removal and demolition of structures;

   (ii)  The location, occupancy and maintenance of structures;

   (iii)  The installation of service equipment;

   (iv)  The installation, alteration, repair, maintenance or operation of all mechanical, electrical and plumbing systems devices and equipment; and

   (v)  The installation, alteration, repair, maintenance or operation of all fire protection systems, devices and equipment.

721. On 24th September 2008, at, 2:00 PM, **Plaintiff** attended a hearing scheduled by Board of Building Standards. The hearing caused by the refusal to issue a building permit to install a kitchen in the 3rd Floor of **1782 Frankford Avenue**.

722. On 24th September 2008, at, 3:30 PM, Board of Building Standards refused to grant a variance to **1782 Frankford Avenue.**

723. **Plaintiff** requested the Board of Building Standards to provide the documents pertain to the past decisions made by Board of Building Standards on similar situations to the **Plaintiff's** situation.  All five (5) members in the Board of Building Standards suggested to the **Plaintiff** to get such information from **Frances Burns.**

724. Hence, **Plaintiff** approached the Security at front desk of MSB, 1401 JFK Blvd to get a pass to go to the **Frances Burns'** office or anyone else who can help me to provide the information about Board of Building Standards past decisions.

725. **Plaintiff,** requested the security at front desk of MSB, 1401 JFK Blvd to speak with someone in the **Frances Burns'** department, so that **Plaintiff** will get the required information.

726. Nevertheless, **Frances Burns** suggested to the Security person of MSB, 1401 JFK Blvd not to allow **Plaintiff** into the building without a prior appointment. In addition, **Frances Burns** made the security person of MSB, 1401 JFK Blvd call police and made the police to use excessive force and handcuff the **Plaintiff.**

727. Police handcuffed the **Plaintiff** and paraded in front of the **Frances Burns'** and other employees of the **Frances Burns'** department. The employees from the **Frances Burns'** department by directly looking at the **Plaintiff** and commented that, **"**Police did a good job". The security system at MSB, 1401 JFK Blvd captured the footage of the aggressive behavior of the police and the footage of the employees from the **Frances Burns'** department who made comments that, **"**Police did a good job".

728. In retaliation to the **Plaintiff'** complaint against **Frances Burns, Frances Burns** conspired with intent to prevent and hinder the **Plaintiff** from free exercise or enjoyment of right and privilege secured by the **Plaintiff.**

729. By the aforementioned **Frances Burns'** outrageous conduct, evil motive, carelessness and reckless indifference to the rights of **Plaintiff** and **1782 Frankford Avenue, Plaintiff** suffered a damage, incurred significant expense to rectify the damage, paid additional interest charges towards construction loan, lost rental income, missed an opportunity to convert the construction loan into a permanent mortgage.

730. WHEREFORE, given that the **Frances Burns'** conspiracy to interfere with civil rights of **Plaintiff** was the proximate cause of damage to the **Plaintiff**.

731. Because**, Frances Burns'** conspiracy to interfere with civil rights of **Plaintiff** was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

732. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in **Plaintiff'** favor and against **Frances Burns** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXVIII) THIRD CAUSE OF ACTION– TORTIOUS INTERFERENCE AGAINST FRANCES BURNS:

733. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

734. **Plaintiff** and **Wachovia Mortgage FSB** had an economic relationship and containing 99.9% probability of future economic benefit to the **Plaintiff**.

735. **Frances Burns** has the knowledge that **Plaintiff** and **Wachovia Mortgage FSB** had an economic relationship and such relationship is in existence.

736. The following **Frances Burns'** actions are intentional and designed to disrupt the relationship between **Plaintiff** and **Wachovia Mortgage FSB**. (1) Refuse to rectify the damages caused by the demolition of **1780 Frankford Avenue.** (2) Refuse to pay the additional expense caused to rectify the damages caused demolition of **1780 Frankford Avenue.** (3) Make false accusation against **Plaintiff.** (4) Slander against **Plaintiff.** (5) Withhold Certificate of Occupancy (CO) to **1782 Frankford Avenue.** (6) Deprive the **Plaintiff** by not offering due process.

737. **Frances Burns'** intentional acts caused **Plaintiff** not to fulfill the stipulations laid out by **Wachovia Mortgage FSB**. Hence, **Wachovia Mortgage FSB** refused to convert the construction loan into a permanent mortgage, which is a disruption of the relationship.

738. By the reason of Tortious / Wrongful Interference (in business relationship) by **Frances Burns**, **Plaintiff** and **1782 Frankford Avenue** suffered damage and incurred significant expense to rectify the damage, lost rental income; paid additional interest charges towards construction loan, miss a window of opportunity to convert the construction loan into a permanent mortgage.

739. WHEREFORE, given that the **Frances Burns'** Tortiously / wrongfully interference between **Plaintiff** and **Wachovia Mortgage FSB** business relationship, and such Tortious / Wrongful Interference were the proximate cause of damage to the **Plaintiff**.

740. Because, **Frances Burns'** Tortious / Wrongful Interference was wanton, willful and in reckless disregard for the safety and financial wellbeing of the **Plaintiff**, punitive damages should be awarded against it in an amount to be determined at trial.

741. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in **Plaintiff'** favor and against **Frances Burns** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXIX) <u>FIRST CAUSE OF ACTION – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS AGAINST CITY OF PHILADELPHIA</u>

742. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

743. **City of Philadelphia** knew or should have known that as per, Title 4. The Philadelphia Building Construction and Occupancy Code, Sub code "A" (The Philadelphia Administrative Code), Section A-202.0 Duties and Powers of The Code Official, have the duties and powers.

744. **City of Philadelphia** has a to administer and enforce the City's code requirements for the enhancement of public safety, including building, plumbing, electrical, mechanical, fire, property maintenance, business, and zoning regulations.

745. **City of Philadelphia** is responsible for regulating the conduct of businesses and persons by issuing licenses, by conducting inspections, and by enforcing applicable codes and regulations.

746. **City of Philadelphia**, is empowered to take lawful actions necessary to correct dangerous and unlawful conditions, including making necessary emergency repairs to properties, cleaning and sealing abandoned buildings, and demolishing vacant buildings that pose a threat to public safety.

747. **Frances Burns** as an employee of **City of Philadelphia** per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, shall issue a Zoning or Use Registration Permit upon the granting of a Zoning Board of Adjustment Certificate when all the other applicable provisions of The Philadelphia Code, Title 14. Zoning and Planning has been met.

748. As per Administrative Code 2004 (Sub code "A" of Title 4, The Building Construction and Occupancy Code of The City of Philadelphia) Conforming to the Pennsylvania Uniform Construction Code (Act 45 of 1999), Section A-202 Duties and Powers of the Code Official, **City of Philadelphia,** shall enforce all of the provisions of this code and the technical codes and shall act on any question relative to the following items, except as otherwise specifically provided for by statutory requirements or as provided for in this code or the technical codes:

   (i) The mode or manner of construction and materials to be used in the erection, addition to, alteration, repair, removal and demolition of structures;

   (ii) The location, occupancy and maintenance of structures;

   (iii) The installation of service equipment;

   (iv) The installation, alteration, repair, maintenance or operation of all mechanical, electrical and plumbing systems devices and equipment; and

   (v) The installation, alteration, repair, maintenance or operation of all fire protection systems, devices and equipment.

749. **Plaintiff,** wrote several emails, letters, faxes and brought to the attention of **Frances Burns** regarding the following**:**

   (i)    Gross negligence of the **Dan Achek , Maya Maha Elkansa , James Gabriel, Edward Devlin,** and **City of Philadelphia'** Contractual services Unit, Department License & Inspections;

   (ii)   Gross negligence of   Gross negligence of  **City of Philadelphia'**  demolition contractor**;**

  (iii)   Refusal by **City of Philadelphia'** Contractual services Unit to rectify the damages caused by the demolition of the **1780 Frankford Avenue**.

750. **City of Philadelphia** refused to rectify the damages caused by the demolition of the **1780 Frankford Avenue** and refused to pay the cost to restore the damages.

751. **City of Philadelphia** disguised about the damages caused by the demolition of the **1780 Frankford Avenue** for the purpose to deprive the **Plaintiff** to enjoy the equal protection of the laws and equal privileges and immunities under the laws.

752. **City of Philadelphia** conspire to prevent **Plaintiff'** lawfully entitled equal protection of the laws and equal privileges and immunities under the laws by force, intimidation and threat.

753. **City of Philadelphia** conspire against **Plaintiff** and deprived the rights of the **Plaintiff** by refusing to take a petition from **Plaintiff**, where **Plaintiff** is seeking redress for the grievances caused by **James Gabriel, Edward Devlin** and **City of Philadelphia'** Contractual services Unit, Department License & Inspection.

754. **City of Philadelphia** is vindictive and retaliatory to the **Plaintiff,** by withholding the Certificate of Occupancy (CO) to **1782 Frankford Avenue.**

755. **City of Philadelphia** is vindictive and retaliatory to the **Plaintiff,** by issuing several petty nuisance citations, withholding the zoning permits for **Plaintiff'** other property **1510 E Palmer Street.**

756. **City of Philadelphia** is vindictive and retaliatory to the **Plaintiff,** by slandering against **Plaintiff** as a member of the Zoning Board of Adjustments and falsely accused the **Plaintiff** illegally constructed a triplex, when **Plaintiff** did not construct a triplex. Further, **City of Philadelphia** made a false accusation against the **Plaintiff**, when such a comment is not necessary at all.

757. **City of Philadelphia** is vindictive, retaliatory to the **Plaintiff** and abused the position for personnel gratification and ego satisfaction.

758. By the aforementioned **City of Philadelphia'** outrageous conduct, evil motive, carelessness and reckless indifference to the rights of **Plaintiff** and **1782 Frankford Avenue, Plaintiff** suffered a damage, incurred significant expense to rectify the damage, paid additional interest charges towards construction loan, lost rental income, missed an opportunity to convert the construction loan into a permanent mortgage.

759. WHEREFORE, given that the **City of Philadelphia'** conspiracy to interfere with civil rights of **Plaintiff** was the proximate cause of damage to the **Plaintiff**.

760. Because**, City of Philadelphia'** conspiracy to interfere with civil rights of **Plaintiff** was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

761. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in **Plaintiff'** favor and against **City of Philadelphia** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXX) <u>SECOND CAUSE OF ACTION – CONSPIRACY AGAINST RIGHTS OF CITIZENS AGAINST CITY OF PHILADELPHIA:</u>

762. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

763.   **City of Philadelphia** knew or should have known that as per, Title 4. The Philadelphia Building Construction and Occupancy Code, Sub code "A" (The Philadelphia Administrative Code), Section A-202.0 Duties and Powers of The Code Official, have the duties and powers.

764.   **City of Philadelphia** has a to administer and enforce the City's code requirements for the enhancement of public safety, including building, plumbing, electrical, mechanical, fire, property maintenance, business, and zoning regulations.

765.   **City of Philadelphia** is responsible for regulating the conduct of businesses and persons by issuing licenses, by conducting inspections, and by enforcing applicable codes and regulations.

766.   **City of Philadelphia**, is empowered to take lawful actions necessary to correct dangerous and unlawful conditions, including making necessary emergency repairs to properties, cleaning and sealing abandoned buildings, and demolishing vacant buildings that pose a threat to public safety.

767.   As per The Philadelphia Code  § 14-1702,  Duties and Powers of Department of Licenses and Inspections, have the duty and power to administer and to enforce the provisions of The Philadelphia Code , Chapters 14-100 through 14-2000.

768.   As per The Philadelphia Code § 14-1702, Duties and Powers of Department of Licenses and Inspections, shall issue a Zoning or Use Registration Permit upon the granting of a Zoning Board of Adjustment Certificate when all the other applicable provisions of The Philadelphia Code, Title 14. Zoning and Planning has been met.

769. As per Administrative Code 2004 (Sub code "A" of Title 4, The Building Construction and Occupancy Code of The City of Philadelphia) Conforming to the Pennsylvania Uniform Construction Code (Act 45 of 1999), Section A-202 Duties and Powers of the Code Official, **City of Philadelphia,** shall enforce all of the provisions of this code and the technical codes and shall act on any question relative to the following items, except as otherwise specifically provided for by statutory requirements or as provided for in this code or the technical codes:

   (i)   The mode or manner of construction and materials to be used in the erection, addition to, alteration, repair, removal and demolition of structures;

   (ii)   The location, occupancy and maintenance of structures;

   (iii)   The installation of service equipment;

   (iv)   The installation, alteration, repair, maintenance or operation of all mechanical, electrical and plumbing systems devices and equipment; and

   (v)   The installation, alteration, repair, maintenance or operation of all fire protection systems, devices and equipment.

770. On 24th September 2008, at, 2:00 PM, **Plaintiff** attended a hearing scheduled by Board of Building Standards. The hearing caused by the refusal to issue a building permit to install a kitchen in the 3rd Floor of **1782 Frankford Avenue**.

771. On 24th September 2008, at, 3:30 PM, Board of Building Standards refused to grant a variance to **1782 Frankford Avenue.**

772. **Plaintiff** requested the Board of Building Standards to provide the documents pertain to the past decisions made by Board of Building Standards on similar situations to the **Plaintiff's** situation.  All five (5) members in the Board of Building Standards suggested to the **Plaintiff** to get such information from **Frances Burns.**

773. Hence, **Plaintiff** approached the Security at front desk of MSB, 1401 JFK Blvd to get a pass to go to the **Frances Burns'** office or anyone else who can help me to provide the information about Board of Building Standards past decisions.

774. **Plaintiff,** requested the security at front desk of MSB, 1401 JFK Blvd to speak with someone in the **Frances Burns'** department, so that **Plaintiff** will get the required information.

775. Nevertheless, **Frances Burns** suggested to the Security person of MSB, 1401 JFK Blvd not to allow **Plaintiff** into the building without a prior appointment. In addition, **Frances Burns** made the security person of MSB, 1401 JFK Blvd call police and made the police to use excessive force and handcuff the **Plaintiff.**

776. Police handcuffed the **Plaintiff** and paraded in front of the employees of the **Frances Burns'** department. The employees from the **Frances Burns'** department by directly looking at the **Plaintiff** and commented that, **"**Police did a good job". The security system at MSB, 1401 JFK Blvd captured the footage of the aggressive behavior of the police and the footage of the employees from the **Frances Burns'** department who made comments that, **"**Police did a good job".

777. In retaliation to the **Plaintiff'** complaint against **Frances Burns, City of Philadelphia** conspired with intent to prevent and hinder the **Plaintiff** from free exercise or enjoyment of right and privilege secured by the **Plaintiff.**

778. By the aforementioned **City of Philadelphia'** outrageous conduct, evil motive, carelessness and reckless indifference to the rights of **Plaintiff** and **1782 Frankford Avenue, Plaintiff** suffered a damage, incurred significant expense to rectify the damage, paid additional interest charges towards construction loan, lost rental income, missed an opportunity to convert the construction loan into a permanent mortgage.

779. WHEREFORE, given that the **City of Philadelphia'** conspiracy to interfere with civil rights of **Plaintiff** was the proximate cause of damage to the **Plaintiff**.

780. Because**, City of Philadelphia'** conspiracy to interfere with civil rights of **Plaintiff** was wanton, willful and in reckless disregard for the safety of the neighbors, punitive damages should be awarded against it in an amount to be determined at trial.

781. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in **Plaintiff'** favor and against **City of Philadelphia** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXXI) <u>THIRD CAUSE OF ACTION– TORTIOUS INTERFERENCE AGAINST CITY OF PHILADELPHIA:</u>

782. **Plaintiff** incorporates herein by reference all preceding paragraphs 01 through 83 of this Complaint the same as if fully set forth hereinafter.

783. **Plaintiff** and **Wachovia Mortgage FSB** had an economic relationship and containing 99.9% probability of future economic benefit to the **Plaintiff**.

784. **City of Philadelphia** has the knowledge that **Plaintiff** and **Wachovia Mortgage FSB** had an economic relationship and such relationship is in existence.

785.    The following **City of Philadelphia'** actions are intentional and designed to disrupt the relationship between **Plaintiff** and **Wachovia Mortgage FSB**. (1) Refuse to rectify the damages caused by the demolition of **1780 Frankford Avenue.** (2) Refuse to pay the additional expense caused to rectify the damages caused demolition of **1780 Frankford Avenue.** (3) Make false accusation against **Plaintiff.** (4) Slander against **Plaintiff.** (5) Withhold Certificate of Occupancy (CO) to **1782 Frankford Avenue.** (6) Deprive the **Plaintiff** by not offering due process.

786.    **City of Philadelphia'** intentional acts caused **Plaintiff** not to fulfill the stipulations laid out by **Wachovia Mortgage FSB**. Hence, **Wachovia Mortgage FSB** refused to convert the construction loan into a permanent mortgage, which is a disruption of the relationship.

787.    By the reason of Tortious / Wrongful Interference (in business relationship) by **City of Philadelphia**, **Plaintiff** and **1782 Frankford Avenue** suffered damage and incurred significant expense to rectify the damage, lost rental income; paid additional interest charges towards construction loan, miss a window of opportunity to convert the construction loan into a permanent mortgage.

788.    WHEREFORE, given that the **City of Philadelphia'** Tortiously / wrongfully interference between **Plaintiff** and **Wachovia Mortgage FSB** business relationship, and such Tortious / Wrongful Interference were the proximate cause of damage to the **Plaintiff**.

789.    Because, **City of Philadelphia'** Tortious / Wrongful Interference was wanton, willful and in reckless disregard for the safety and financial wellbeing of the **Plaintiff**, punitive damages should be awarded against it in an amount to be determined at trial.

790. WHEREFORE, **Plaintiff**, prays this Honorable Court for the entry of a judgment in **Plaintiff'** favor and against **City of Philadelphia** in the sum not less than $618,000 (Six hundred and eighteen thousand dollars) in damages, exclusive of interest, costs of suit, damages for delay pursuant to Pa R.C.P 238 and attorney fees and brings this action to recover the same.

## (XXXII)  <u>CONCLUSION:</u>

791. **Plaintiff** further alleges that, all **Defendants** breached that their respective duty of due care by failing to use due care by bracing, shoring and underpinning to protect the adjoining buildings to avoid a collapse of **1782 Frankford Avenue**.

792. As a direct and proximate result of the various actions and inactions of the **Defendants**, **Plaintiff** suffered severe monetary loss and mental anguish. **Plaintiff** incurred expenses towards rectifying the damages and incurred a huge financial loss by losing a high paying job. **Plaintiff** also lost wages and will continue to lose such wages in the future. **Plaintiff** continues to suffer mental discomfort from this accident. All the above damages directly caused by the aforementioned various actions and inactions of the **Defendants** and were incurred without contributory negligence or assumption of the risk on the part of the **Plaintiff**. **Plaintiff** also did not have the opportunity to avoid this accident.

793. WHEREFORE, the Plaintiff demands judgment against the **Defendants** as plead above.

794. Plaintiff demands a trial by jury.

| DATED: December 23, 2009 | *Vamsidhar Vurimindi* |
|---|---|
|  | Name: VAMSIDHAR REDDY VURIMINDI |

## **VERIFICATION**

I, Vamsidhar Reddy Vurimindi, am a Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Philadelphia, Pennsylvania.

DATED: December 23, 2009

Name: VAMSIDHAR REDDY VURIMINDI

# CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2009, I electronically filed the PLAINTIFFS' objection to the Motion to "Petition of Counsel of Plaintiff for Leave to withdraw" with the Clerk of the Court using the Electronic Filing System which will send notification of such filing to the following:

1. **Melissa A Montgomery, Esq.**
   1500 Market Street, Suite#2920
   Philadelphia, PA 19102

2. **Sean Kirby, Esq**
   City of Philadelphia
   1515 Arch St, Law Department
   Philadelphia, PA 19102

3. **Paul Cottrell**
   One Customs House, Suite#500
   704 King Street
   P. O. Box 1031
   Wilmington, DE 19899

4. **Douglas Evan Ress**
   1717 Arch Street, Suite#3710
   Philadelphia, PA 19103

| | |
|---|---|
| | Respectfully, |
| | *Vamsidhar R Vurimindi,* **Plaintiff** |
| DATED: December 24, 2009 | *Vamsidhar Vurimindi* |
| | (Signature) |